E-FILED
Thursday, 24 May, 2007 03:44:23 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS

FILED

MAY 2 2 2007

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

STEVEN P. HIBBERD,                )
                                  )
_____           )
                                  )
          Plaintiff,              )
                                  )
     vs.                          )     No. 07-3131
                                  )     (Supplied by Clerk)
JOSEPH JENNINGS et al.            )
                                  )
_____           )
                                  )
          Defendant(s).           )

### PETITION AND AFFIDAVIT FOR LEAVE TO PROCEED
### WITHOUT PREPAYMENT OF FEES AND COSTS

I, _Steven P. Hibberd_____, plaintiff, move the court for leave to proceed without prepayment of fees and costs in the above action. I declare under penalty of perjury that the following facts are true:

1. I am the party initiating this action and I believe I am entitled to redress.

2. I am unable to prepay the fees and costs of this proceeding, or to give security, because of my poverty.

3. I am (check one) Single ✓  Married _____ Separated _____
Divorced _____

4. My responses to the following questions are true:

A. Are you presently employed in any capacity including a paying position while incarcerated as an inmate in a correctional center? Yes ( ✓ ) No ( )

B. If so, by whom, what is your position, and what is your pay?

I am a student in the Vocational Horticulture class, and, periodically take night college academic courses. The assignment(s) pay $15.00 per month.

C. If not, when were you last employed and what was your pay? This includes prior inmate positions?

N/A
_____

_____

1

D.  Have you received money from any other source, including judgments, in the last 6 months?  Yes ( ✓ )  No (   )  If yes, describe each source and state how much you received.

I received a $499.00 settlement from an action (Hibberd v. Walker, No. 5-c-50008) in December, 2006. The money was only available for a period of 90 days, whereafter, my DOC debt would be reinstated. I also received $100.00 from Paula Hibberd. After 90 days, left over money went toward my debts.

E.  If you are presently incarcerated, how much money do you have in your institutional trust fund account?  No Money (debt - 572.89)

F.  If withdrawals were made from your institutional trust fund account during the past 6 months, please explain when, how much, and the purpose for which funds were used.

I withdrew $599.00 (499.00 from Settlement Funds, and $100.00 from Paula Hibberd). My account/debt was suspended for only a period of 90 days, afterwhich my debt was reinstated. With the money, I replenished lost + broken property, replenished my cosmetics, and bought essential clothes.

G.  How much money do you have in private checking or saving accounts?  None

H.  Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property, including audio visual equipment such as T.V.s, stereos, etc. (except for ordinary household furniture and clothing)?  Yes ( ✓ )  No (   )

If yes, describe the property and its approximate value:

Secureview t.v., bought at $144.00,    Sony Walkman bought at $42.00

I.  Do you have any debts or obligations?  Yes ( ✓ )  No (   )

If yes, list the amount owed, to whom, and any current payments that you are making.

I currently owe 572.92 to IDOC for legal photocopies and mailing fees, primarily as the result of the overhead costs in litigating my criminal case. Also, I owe a court order filing fee of $245.50 in Hibberd v. Walker, No. 5-c-50080

J.  List your dependents, state your relationship to them, and state how much you contribute to their support each month.  Also, state how long you have contributed to that support and other means by which your dependents receive support.

No dependants

2

K.   Estimate the total amount of income or support that your
dependents receive per month on the average, excluding your
contributions to them.

No Dependants

I declare under penalty of perjury and fine that the foregoing
is true and correct and that I have a continuing duty to advise the
court of any changes in my financial position as stated above.

*Steven P. Hibberd*
SIGNATURE

*May 11, 2007*
DATE

3

## CERTIFICATE

(Incarcaerated applicants only)
(To be completed by the institution of incarceration)

I certify that the applicant named herein has the sum of

~572.92 on account to his credit at Taylorville

Correctional Center.  I further certify that the applicant has

the following securities to his credit: Court order balance

due  $245.05 .  I further certify

that during the past six months the applicant's average balance

was .00 .

5-11-07      Marla Marley (Trust Fund)
DATE         SIGNATURE OF AUTHORIZED OFFICER

Date: 6/14/2007                    **Taylorville Correctional Center**                    Page 1
Time:    1:14pm                              **Trust Fund**

d_list_inmate_trans_statement_composite          Inmate Transaction Statement

REPORT CRITERIA  -  Date: Start thru End;      Inmate: B70027;      Active Status Only ? : No;      Print Restrictions ? : Yes;
Transaction Type: All Transaction Types;      Print Furloughs / Restitutions ? : Yes;      Include Inmate Totals ? : Yes;      Print
Balance Errors Only ? : No

**Inmate: B70027 Hibberd, Steven P.**                    **Housing Unit: TAY-1B-07-13**

| Date | Source | Transaction Type | Batch | Reference # | Description | Amount | Balance |
|---|---|---|---|---|---|---|---|
| | | | | | Beginning Balance: | | 0.00 |
| 02/21/07 | Mail Room | 04 Intake and Transfers In | 052205 | 80668 | Western Illinois C.C. | 37.73 | 37.73 |
| 02/22/07 | Point of Sale | 60 Commissary | 053728 | 98362371 | Commissary | -35.57 | 2.16 |
| 03/09/07 | Payroll | 20 Payroll Adjustment | 068105 | | P/R month of 02/2007 | 10.47 | 12.63 |
| 03/12/07 | Mail Room | 10 Western Union - Not Held | 071200 | 8919069922 | HIBBERD, PAULA | 100.00 | 112.63 |
| 03/15/07 | Point of Sale | 60 Commissary | 074716 | 98364974 | Commissary | -82.10 | 30.53 |
| 03/16/07 | Disbursements | 90 Medical Co-Pay | 075305 | Chk #65218 | 201673, DOC: 523 Fund Inmate R, Inv. Date: 02/15/2007 | -2.00 | 28.53 |
| 03/16/07 | Disbursements | 81 Legal Postage | 075305 | Chk #65218 | 202601, DOC: 523 Fund Inmate R, Inv. Date: 03/02/2007 | -2.31 | 26.22 |
| 03/21/07 | Mail Room | 04 Intake and Transfers In | 080205 | 81017 | Western Illinois C.C. | 2.25 | 28.47 |
| 03/22/07 | Point of Sale | 60 Commissary | 081726 | 98365717 | Commissary | -28.27 | .20 |
| 04/13/07 | Payroll | 20 Payroll Adjustment | 103105 | | P/R month of 03/2007 | 15.00 | 15.20 |
| 04/17/07 | Disbursements | 84 Library | 107305 | Chk #65389 | 203799, DOC: 523 Fund Library, Inv. Date: 03/27/2007 | -1.40 | 13.80 |
| 04/17/07 | Disbursements | 84 Library | 107305 | Chk #65389 | 203808, DOC: 523 Fund Library, Inv. Date: 03/27/2007 | -.60 | 13.20 |
| 04/17/07 | Disbursements | 84 Library | 107305 | Chk #65389 | 204360, DOC: 523 Fund Library, Inv. Date: 04/10/2007 | -3.20 | 10.00 |
| 04/17/07 | Disbursements | 84 Library | 107305 | Chk #65389 | 204038, DOC: 523 Fund Library, Inv. Date: 04/03/2007 | -.60 | 9.40 |
| 04/17/07 | Disbursements | 81 Legal Postage | 107305 | Chk #65390 | 204375, DOC: 523 Fund Inmate R, Inv. Date: 04/10/2007 | -3.03 | 6.37 |
| 04/17/07 | Disbursements | 81 Legal Postage | 107305 | Chk #65390 | 204376, DOC: 523 Fund Inmate R, Inv. Date: 04/10/2007 | -1.83 | 4.54 |
| 04/17/07 | Disbursements | 90 Medical Co-Pay | 107305 | Chk #65390 | DOC: 523 Fund Inmate Reimburse, Inv. Date: 04/04/2007 | -2.00 | 2.54 |
| 04/17/07 | Disbursements | 82 Debts due to State (non-postage) | 107305 | Chk #65390 | DOC: 523 Fund Inmate Reimburse, Inv. Date: 04/04/2007 | -.65 | 1.89 |
| 05/11/07 | Payroll | 20 Payroll Adjustment | 131105 | | P/R month of 04/2007 | 15.00 | 16.89 |

| | |
|---|---|
| **Total Inmate Funds:** | 16.89 |
| **Less Funds Held For Orders:** | .00 |
| **Less Funds Restricted:** | 589.81 |
| **Funds Available:** | -572.92 |
| **Total Furloughs:** | .00 |
| **Total Voluntary Restitutions:** | .00 |

**RESTRICTIONS**

| Invoice Date | Invoice Number | Type | Description | Vendor | Amount |
|---|---|---|---|---|---|
| 04/04/2007 | | Disb | Library from Western CC | 2 DOC: 523 Fund Library | $439.55 |
| 04/04/2007 | | Disb | Legal Postage from Western CC | 99999 DOC: 523 Fund Inmate Reimbursemen | $102.48 |
| 05/01/2007 | 205302 | Disb | Library | 2 DOC: 523 Fund Library | $3.00 |
| 05/01/2007 | 205311 | Disb | Library | 2 DOC: 523 Fund Library | $35.60 |
| 05/11/2007 | 206262 | Disb | Library | 2 DOC: 523 Fund Library | $6.00 |

Time:    1:14pm

d_list_inmate_trans_statement_composite

# Taylorville Correctional Center
## Trust Fund
### Inmate Transaction Statement

REPORT CRITERIA  -  Date: Start thru End;      Inmate: B70027;      Active Status Only ? : No;      Print Restrictions ? : Yes;
Transaction Type: All Transaction Types;      Print Furloughs / Restitutions ? : Yes;      Include Inmate Totals ? : Yes;      Print
Balance Errors Only ? : No

**Inmate: B70027 Hibberd, Steven P.**              **Housing Unit: TAY-1B-07-13**

RESTRICTIONS

| Invoice Date | Invoice Number | Type | Description | Vendor | Amount |
|---|---|---|---|---|---|
| 05/11/2007 | 206272 | Disb | Legal Postage | 99999 DOC: 523 Fund Inmate Reimbursemen | $3.18 |
| | | | | Total Restrictions: | $589.81 |

E-FILED
Thursday, 24 May, 2007  03:44:56 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN P. HIBBERD,<br><br>       Plaintiff,<br><br>    vs.<br><br>JOSEPH JENNINGS, OFFICER CRARY,<br>JAMES WATKINS, FORREST ASHBY,<br>JULIA VINCENT, PHILLIP POOL,<br>ROGER ZIMMERMAN, and ROGER<br>WALKER, each in their individual and<br>official capacities,<br><br>       Defendants. | JURY TRIAL DEMAND<br><br>Case No._____ |

## CIVIL RIGHTS COMPLAINT

Plaintiff, STEVEN P. HIBBERD, complains against defendants Joseph Jennings, Officer Crary, James Watkins, Forrest Ashby, Julia Vincent, Phillil Pool, Roger Zimmerman, and Roger Walker as follows:

## PRELIMINARY STATEMENT

This is a civil rights complaint filed under 42 U.S.C. Section 1983 alleging violations of plaintiff's constitutional rights guaranteed under the First, Eighth, and Fourteenth Amendments of the United States Constitution where plaintiff was retaliated

1

against by and through threats, disciplinary actions, restrictions/ conditions, and sham disciplinary proceedings as a result of filing a prior civil rights action, assisting inmates with legal matters, and filing grievances aimed at the retaliatory misconduct. The actions of the defendants were arbitrary and capricious, and do not serve legitamite governmental interests.

## PARTIES

1)    Plaintiff, Steven P. Hibberd ("Hibberd") is an individual residing in the State of Illinois, and was an inmate assigned to Western Illinois Correctional Center, Mt. Sterling, Illinois at all times relevant to this complaint. Hibberd now resides at Taylorville Correctional Center, Taylorville, Illinois.

2)    Defendant, Joseph Jennings, was at all times relevant to this complaint, employed by the Illinois Department of Corrections, and was an Internal Affairs agent at Western Illinois Correctional Center, acting under color of law.

3)    Defendant, Officer Crary, was at all times relevant to this complaint, employed by the Illinois Department of Corrections, and was an Internal Affairs agent at Western Illinois Correctional Center, acting under color of law.

4)    Defendant, James Watkins, was at all times relevant to this complaint, employed by the Illinois Department of Corrections, as a correctional officer at Western Illinois Correctional Center, acting under color of law.

5)    Defendant, Forrest Ashby, was at all times relevant to this complaint, employed by the Illinois Department of Corrections as a lieutenant and member of the Adjustment Committee at Western Illinois Correctional Center acting under color of law.

6)    Defendant, Julia Vincent, was at all times relevant to this complaint, employed by the Illinois Department of Corrections as a counselor and member of the Adjustment Committee at Western Illinois Correctional Center acting under color of law.

7)    Defendant, Phillip Pool, was at all times relevant to this complaint, employed by the Illinois Department of Corrections as a member of Leisure Time Services and the Adjustment Committee at Western Illinois Correctional Center acting under color of law.

8)    Defendant, Roger Zimmerman was at all times relevant to this complaint, employed by the Illinois Department of Corrections as Warden of Western Illinois Correctional Center

3

and acted under color of law.

9)     Defendant, Roger Walker, was at all times relevant to this complaint, the Director of the Illinois Department of Corrections, and acts under color of law.

10)     Defendants, not named in the caption, are unknown correctional officers, employed by the Illinois Department of Corrections as officers at Western Illinois Correctional Center, and acted under color of law.

## JURISDICTION AND VENUE

11)     Jurisdiction is proper in the district court pursuant to 28 U.S.C. Sections 1331 and 1343 because the allegations in this complaint present a federal question.

12)     Venue is appropriate under 28 U.S.C. Section 1391(b) because the events giving rise to the claims occurred at Western Illinois Correctional Center, Mount Sterling, Illinois, which is located within the United States District Court for the Central District of Illinois

<u>FACTS</u>

13)    In April of 2005, Hibberd instituted a civil rights action in the U.S. District Court for the Northern District of Illinois, Western Division, titled as Hibberd v. Walker, Case No. 05-C-50080.   The action primarily alleged that while at Dixon Correctional Center, various Illinois Department of Corrections employees committed constitutional violations regarding the manner in which a strip search was conducted.

14)    The District Court appointed counsel to represent Hibberd, who then filed an amended complaint.   Thereafter, on Monday, July 18, 2005, the District Court issued summons to the defendants in that action.

15)    Then, during the following Monday, July 25, 2005, Hibberd, who was with inmate Walter Malone, was intercepted by defendant Crary and defendant Jennings when going to the institutional law library. Defendant Crary requested both Hibberd and Malone to submit to a search.  Malone was first searched in Hibberd's presence and without incident Crary sent Malone on his way,

16)    When Hibberd submitted to the search, defendant Crary confiscated from him legal material belonging to inmates

5

Walter Malone, Jeffrey Estrada, Daniel Escobedo, and Marvin Greer. Defendant Jennings stated to Crary in Hibberd's presence, "This is inmate Hibberd. He likes to file lawsuits against DOC and do legal work for others. He didn't know we know but we've known for some time." When Hibberd was questioned as to why he had other inmates' legal material, Hibberd pointedly responded that he was assisting inmates with their legal problems.

17)    In Hibberd's presence, defendant Jennings called Malone back, who was inside the law library, and questioned Malone as to why Hibberd had his legal material (being appellate briefs). Malone responded that he sought Hibberd's opinion regarding his criminal case. Jennings then gave the briefs to Malone and told him, "Mr. Hibberd think's he's a lawyer, but he's not. Don't give these to him again." Defendant Crary informed Hibberd that a disciplinary report would be written. Both defendants then left the library with the rest of the inmates' legal material.

18)    On information and belief, while Hibberd remained in the library, defendants Jennings and Crary then searched Hibberd's assigned cell, during which they primarily concentrated on Hibberd's property. The defendants confiscated more of Malone's legal material (transcripts and common law record).

19)    Both defendants, Jennings and Crary, then returned to the library and in Hibberd's presence, gave the legal material to Malone and told Hibberd, "It's July 25th. You're not to possess another inmate's name, number, or legal work." Hibberd interpreted the statement to mean that he would be placed in segregated confinement, or otherwise be disciplined if he violated the ultimatum.

20)    Title 20, Chapter I, Section 430.30 of the Illinois Administrative Code provides for legal assistance by committed persons as follows:

> "Committed persons may assist one another in the preparation of legal documents to the extent consistent with institutional security. Committed persons shall not receive compensation for such assistance."

21)    In addition to Section 430.30, in a prior unrelated event, the Illinois Administrative Review Board expunged a disciplinary conviction for Contraband/Unauthorized Property, after another inmate, Jefferson Coleman, who was similarly situated as Hibberd, was disciplined for possessing other inmates' legal work. Coleman asserted to the Board that an institutional memorandum barring inmates from possessing other inmates legal work was invalid as the Department Rules themselves failed to state that inmates could not have other inmates legal work in their possession. ("ARB Coleman Memorandum" appended to a formal grievance, attached hereto as Group Exhibit A)

7

22)    On information and belief, no rule or policy exists which contravenes the dictates of Section 430.30 of the Administrative Code, the ARB Coleman Decision, or such that would place an inmate on notice that he is unilaterally prohibited from assisting inmates with legal matters.

23)    Proceeding Section 430.30, Title 20, Chapter I, Section 430.20 of the Illinois Administrative Code provides that "[e]ach correctional facility shall provide opportunities for access to library services and legal materials."

24)    On information and belief, the law library services at Western Illinois Correctional Center are insufficient/inadequate, in that:

a)    Michelle Olsen, the sole employee of the library, is a "Library Associate," not a trained paralegal, and otherwise displays no knowledge in law matters.

b)    The Library Associate is normally abrasive, contentuous, cross, and sadistic, while her attitude disways inmates from seeking her assistance.

c)    The Library Associate's attitude disways inmates from applying for law clerk positions. As a result, positions are difficult to fill.

d)    For the majority of time between May of 2005 and July of 2006,

8

only one inmate law clerk was assigned to the law library.
Over time, each clerk was eventually placed in segregated
confinement.

e)  The law clerk was responsible for assisting a population
    of over 2,000 inmates, and, due to time restraints,
    ineptness, and an atmosphere of staff discontentment, the
    clerk was at times unwilling or unable to render the
    assistance.

f)  A law clerk is not required to be trained, but only pass a
    test.

g)  Typically clerks are not entirely familiar with how to do
    meaningful research, or what panalopy of legal remedies
    exist to challenge criminal convictions or conditions of
    confinement.

h)  The majority of the 2,000 plus inmates are unskilled in
    the law while many are illiterate and/or mentally deficient.

i)  Inmates are improperly advised to complete fill-in-the-blank
    forms when some forms are not tailored enough to
    accomodate the inmate's problem.

j)  No training courses exist to educate inmates regarding how
    to conduct meaningful research, assess whether an
    infringement of their rights occurred regarding their
    conviction or condition of confinement, how to understand
    what it is they read (i.e., reading legalese to some is like reading

(16)

Greek), how to write cogently, or how to draft legal documents.

k)    inmates' request for law library access are often ignored for weeks at a time.

l)    inmates are only permitted 1½ hours per week to attend the law library.

m)    to gain additional law library access, an inmate is required to be within 90 days of a deadline, and must produce a court order setting the deadline date; statutes setting time limits are not sufficient.

n)    inmates who have certain first shift assignments, i.e., industry, school, or maintenance are entirely denied law library access as their hours coincide the library's schedule. The only way to gain access is to produce a court ordered deadline, wait for a day off of the assignment (which is rare, usually unpredictable, or coincides when the law library is closed), or receive a disciplinary report.

25)    Also on information and belief, Internal Affairs regularly surveils and harasses law clerks, particularly so if they meaningfully assist inmates with matters against staff interest (such as exposing misconduct), or are known litigators otherwise. Law clerks are not allowed to possess or read another inmate's transcripts or other court papers, and law clerks appear to have a greater chance of being placed in segregated confinement than non-law clerk inmates.

26) Despite the dictates of Sections 430.20, 430.30, the ARB Coleman Decision, the insufficiency of the institutional law library, and the absence of any contravening rule or policy placing Hibberd on notice, at no time has any officer confiscated other inmates' legal materials from Hibberd, or instructed him not to possess another inmates' material/name/number for the sole purpose of rendering assistance prior to the above described event with defendants Jennings and Crary.

27) Likewise, at no time prior to the above described event, has any officer intercepted and searched Hibberd in the manner described while attending the law library at Western.

28) Following the aforestated encounter with defendants Jennings and Crary, on July 25, 2005, Hibberd was served with a disciplinary report written by Jennings who charged Hibberd with Contraband/Unauthorized Property, and, Possession or Solicitation of Unauthorized Personal Information [1], and alleged that "on the above date & approx. time, during

---

[1] "Contraband/Unauthorized Property" is defined by Title 20, Chapter I, Section 504 of the Illinois Administrative Code as "Possessing, giving, loaning, receiving, or using property that an offender has no authorization to have or to receive and that was not issued to the individual through regular procedures, including the unauthorized possession of food or clothing or possession of property in excess of that which is authorized by the facility, or property that has been altered from its original state." Also, the Administrative Code defines "Possession

routine frisk search of $I/m$ Hibberd B70027 as $I/m$ entered the library this C/o found and confiscated legal material belonging to 3) other W.I.C.C. $I/ms$. $I/m$ was positively identified by I.D.O.C. I.D., + appears to be assisting other $I/ms$ with legal paper work. $I/m$ Hibberd is a 2D Porter, + is not assigned as a library worker. D.C. 434 + 252 written." (Disciplinary Report appended to a formal grievance, attached hereto as Group Exhibit A)

29)    After being served with defendant Jennings' disciplinary report, Hibberd obtained sworn statements from inmates Walter Malone, Jeffrey Estrada, Daniel Escobedo, Marvin Greer (the aforestated owners of the confiscated legal material, supra, para. 18), Tyrone Powells, and Shad Hammond, to be used in support of his defense and for a subsequent grievance. (Copies of statements appended to a formal grievance, attached hereto as Group Exhibit A)

30.)    On July 29, 2005, Hibberd appeared before defendant Ashby and defendant Pool for an Adjustment Committee hearing. Hibberd pled innocent

---

or Solicitation of Unauthorized Personal Information" as "possessing or soliciting unauthorized personal information regarding another offender, releasee, employee or former employee, including, but not limited to, personal files, medical files, medical or mental health records, photographs, social security numbers, home addresses, financial information, or telephone numbers except as authorized by a court order or as approved in writing by the Chief Administrative Officer."

12

to defendant Jennings' charges. Hibberd's defense consisted of citing Section 430.30 of the Administrative Code, presenting the ARB Coleman Memorandum and sworn statements of inmates Malone, Estrada, Escobedo, and Greer, and, describing the inadequacies of the law library. Both defendants displayed no interest in the documentary evidence. Further, despite and in response to Hibberd's defense, Ashby told Hibberd that inmates can do their own law work or seek help in the law library, and, that if he kept helping others that he should "do it secretly."

31) Upon leaving the hearing, defendants Ashby and Pool tried returning the inmate statements and ARB Coleman Memorandum to Hibberd. Hibberd refused the documents and requested the evidence to be placed in the record, whereupon both agreed to do so.

32) Title 20, Chapter I, Section 504.801(1) of the Illinois Administrative Code requires an Adjustment Committee to prepare and sign a written record, providing for what the record must contain:

"1) A summary of oral and written statements and other evidence presented.

\*     \*     \*

"2) If the committee members find that the offender committed the offense, a statement as to their reasons for their finding. If exonerating evidence is presented and disregarded, the Committee must state the basis for disregarding the evidence.

33) Defendants Ashby and Pool found Hibberd guilty of both offenses based on Hibberd's admission of having other inmates' legal material and doing legal work for other inmates. Despite the dictates of Section 504.801(l), the defendants failed to completely document a summary of the evidence presented by Hibberd and why the members disregarded the evidence. Additionally, the members sanctioned Hibberd by reducing his grade level to "C" for a month and ordered disposal of the "contraband" (disposal of the inmates' legal material).(Adjustment Committee Final Summary Report appended to a formal grievance, attached hereto as Group Exhibit A)

34) On information and belief, none of the inmates whose legal material was confiscated from Hibberd were ever charged with the reciprocated offense of Trading or Trafficking their legal material to Hibberd, per Title 20, Chapter I, Section 504e. Thus, only Hibberd was charged with offenses.

35) Subsequently, Hibberd filed a formal grievance on August 18, 2005, per Title 20, Chapter I, Section 504.800 of the Illinois Administrative Code. (See Grievance appended hereto as Group Exhibit A)

36) Title 20, Chapter I, Section 504.810(b) of the Illinois Administrative Code provides that "[t]he grievance shall contain factual details regarding each aspect of the offender's complaint including what

happened, when, where, and the name of each person who is the subject of or who otherwise is involved in the complaint." Further, the face of a grievance form instructs a committed person to "[a]ttach a copy of any pertinent document." Accordingly, Hibberd provided names of all staff members and inmates involved in his complaint, and, attached copies of defendant Jennings' disciplinary report, the related Shakedown Record, the Adjustment Committee Final Summary Report, a copy of Sections 430.10-430.40 of the Illinois Administrative Code, the ARB Coleman Memorandum, and copies of all sworn inmate statements to his grievance.

37) Hibberd also retained a copy of the August 18th grievance, as well as the original inmate statements appended thereto.

38) On September 29, 2005, Hibberd was restored to the original "A" grade status following the Adjustment Committee's aforestated imposed sanctions.

39) Then, on October 2, 2005, defendant Watkins searched Hibberd's assigned cell, during which Watkins confiscated the original sworn inmate statements. Hibberd personally heard and observed Watkins inform other officers (who were also involved in other cell searches) that defendant Jennings wanted the

statements. In addition, and unbeknowst to Hibberd, Watkins also confiscated from Hibberd's cell 9 x 12 inch Dick Blick Art Paper.

40) Later that day, Hibberd informed Watkins that he erroneously confiscated the inmate statements, in that, copies of the same state-ments were attached to the August 18th grievance that was still under review. Hibberd also provided a copy of the grievance for Watkins. Despite and in response to Hibberd's complaint, Watkins told Hibberd that he did not care and could tell the Adjustment Committee.

41) Hibberd was then served with another disciplinary report written by defendant Watkins, who charged Hibberd with Theft, and Contraband/Unauthorized Property, and alleged that he "found in I/m Hibberd's property box 5 documents containing legal material from 5 other inmates; also approx. 75 thick sheets of paper stolen from the printshop [2]. (Disciplinary Report appended to a formal grievance attached hereto as Group Exhibit B)

---

[2] The report also charged Hibberd's cellmate with Dangerous Contraband and Drug Paraphennilia. Reference to those charges or the items confiscated from the cellmate are not pertinent to the events involving Hibberd. Also, unlike defendant Jennings' disciplinary report, supra, para. 30, Watkins did not charge Hibberd with Possession or Solicitation of Unauthorized Personal Information.

42)   Between the July 25th search of Hibberd's cell (<u>supra</u>, para. 20) and the October 2nd search of Hibberd's assigned cell (<u>supra</u>, para. 41)(both first shift events), Hibberd's assigned cell was searched twice by second shift officers. Although Hibberd had the original inmate statements and the 9 x 12 art paper, none were confiscated.

43)   On October 6, 2005, Hibberd again appeared before the Adjustment Committee, presided by defendant Ashby and defendant Vincent. Hibberd pled innocent to defendant Watkins' charges. Hibberd denied that he stole the paper, informed that the printshop did not print on 9 x 12 paper, and stated that he did not have access to the printshop. Also, Hibberd stated that the confiscated legal material were the original sworn inmate statements that were not considered at the previous Adjustment Committee Hearing and that they were appended in support of the pending August 18th grievance pertaining to the hearing.

44)   Rather than addressing Hibberd's defense, defendant Ashby became threatening, belligerant, and provocative, in that, Ashby told Hibberd that he was previously charged with doing legal work for other inmates and given "C" grade with the disposal of the legal material (thereby alluding to the conclusion that Hibberd was still assisting inmates) Ashby questioned Hibberd as to why he filed a grievance in the

first place, why he still kept the inmates' statements, and asked what future use could the statements be for, at the same time appearing aggitated. Ashby also asked Hibberd what he, Hibberd, thought he would do to him now concerning disciplinary action.

45) Hibberd was intimidated by Ashby's demeanor, and refused to explain his motives of why he filed a grievance, or explain what future use the inmate statements were for, and reiterated his defense. Ashby told Hibberd that he was not allowed to attached the inmate statements to his grievance because he was not allowed to possess them, and that Hibberd had to discard all copies. Ashby threatened Hibberd by telling him that if he kept copies of the statements then he would again receive a disciplinary report.

46) At no time did defendant Vincent intervene to assist Hibberd, but rather questioned Hibberd as to why he had the ARB Coleman Memorandum attached to his grievance, and told Hibberd that if Ashby never considered the statements and memorandum at the previous hearing then Hibberd should have thrown the documents away. The hearing ended.

47) Although Title 20, Chapter I, Section 504.80f(1) of the Illinois Administrative Code provides that "the offender may make any relevant statement or produce any relevant documents in his...

18

defense" at an Adjustment Committee Hearing, that Section 504.80f(6) and (7) implicate such documents can be sworn witness statements, and, that the face of a disciplinary report provides similar allowances, neither defendant Ashby or defendant Pool took issue with Hibberd possessing and presenting the sworn inmate statements and ARB Coleman Memorandum at the first Adjustment Committee Hearing on July 29th.

48) On information and belief, no rule or policy exists which contravenes the dictates and implications of Section 504.810(b), Section 504.80f(1), (6), and (7), and, the instructions provided on the face of grievance forms and disciplinary reports. Also, it is generally accepted that an inmate is allowed (and often times required) to gather and present evidence to enforce rights and support claims.

49) Contemporaneously on the same date of the Adjustment Committee hearing, October 6, 2005, the institutional grievance officer denied the August 13th grievance, and defendant Polk concurred in the decision. Consequently, Hibberd appealed the decision to the Administrative Review Board and Director. (Grievance Officer's Report and Hibberd's letter to the ARB included in Group Exhibit A)

50) Defendant Ashby and Vincent ultimately found Hibberd guilty of Contraband/Unauthorized Property based on the "thick paper/other inmates' paperwork" and reduced the Theft charge to

404 Violation of Rules for violating Rule #60 of the Inmate Orientation Manual. (Final Summary Report appended to a formal grievance, attached hereto in Group Exhibit B) The defendants documented the Record of Proceedings as: "DR504 charges read, inmate pled – Not Guilty. "I'm a 2D wing porter. I'm in 2D37. These are documents I got at Dixon and I can have them. I got the paper from another inmate, they sell it on commissary. The pills and razors and food were my cellie's. Inmate submitted written statement." The Committee also documented its Basis for Decision as:

"I/m was positively identified by his IDOC ID card and was assigned to R2D37 where contraband was found. Inmate admits to having other inmates' documents and receiving paper from another inmate ... Inmate did not produce any commissary receipt showing he purchased the paper from commissary. I/m Hibberd's written statement that contained documents pertaining to other inmates including an ARB decision from another inmate, and inmate admits in his written statement that he received the thick paper from other inmates. Inmate submitted DR 430.30, but inmate Hibberd is not permitted to assist other inmates with legal work as this is not consistent with institutional security as he is assigned as a porter, not a legal assistant in the law library."

51) The Adjustment Committee sanctioned Hibberd by again reducing his grade level to "C" grade for a month and ordered the

disposal of the original inmate statements and art paper.

52) Defendants Ashby and Vincent contravened Section 504.801(1) of the Illinois Administrative Code, falsified and trumped up the Record of Proceedings and Basis for Decision, and, relied on evidence Hibberd was not charged with, in that:

a) No evidence was presented showing Hibberd continued to assist inmates with legal matters;

b) Hibberd never stated that he possessed other inmates' documents (because the sworn statements were relinquished to Hibberd for his use);

c) Hibberd never stated that he obtained the inmate statements from Dixon (Correctional Center) but rather only the ARB Coleman Memorandum;

d) Hibberd was not charged with possessing the ARB Coleman Memorandum;

e) Hibberd never admitted in his written statement that he obtained the paper, that defendant Watkins charged him with, from another inmate;

f) Hibberd was not asked to produce a commissary receipt.

53) Title 20, Chapter I, Section 504.80(k)(4) authorizes an Adjustment Committee to take numerous actions based upon the evidence admitted, including "[f]ind that the offender did commit the offense or a

lesser offense for which the elements were included in the original charge."

54)   The original offense for which Hibberd was charged with, "Theft" is defined by Title 20, Chapter I, Section 504e as "Taking property belonging to another person or entity or the facility without the owner's authorization."

55)   The offense for which the Adjustment Committee reduced the "Theft" offense to, "Violation of Rules," is defined by Title 20, Chapter I, Section 504e as "Willfully disobeying any rule of the facility. If the specific offense is stated elsewhere in this Part, a committed person may not be charged with this offense. The rule violated must be specified in the disciplinary report."

56)   Rule #60 of the Inmate Orientation Manual, being the rule the Adjustment Committee claimed Hibberd violated, states "Offenders are not to be involved or attempt to involve others in trafficking of contraband. Offenders may not give, loan, trade, or receive anything from another offender." This rule is anagolous to the Department Rule "Trading or Trafficking" defined in Title 20, Chapter I, Section 504e of the Illinois Administrative Code as "Trading or trafficking with any person."

57)   Based on the aforestated rules in paragraphs 53-56, defendants Ashby and Vincent were not authorized to find Hibberd guilty for the offense of "Violation of Rules," in that:

    a)   Defendant Watkins never specified in his disciplinary report that Hibberd violated Rule 60 of the Inmate Orientation Manual, thus Hibberd was not given adequate notice of the charge;

    b)   Rule 60 is specified in Part 504 e "Trading or Trafficking" which Hibberd was never charged with;

    c)   The elements of Rule 60 do not include the same elements of the offense of "Theft."

58)   On information and belief, none of the inmates who provided Hibberd with their sworn statements were ever charged with Trading or Trafficking the legal material to Hibberd, or otherwise assisting Hibberd in supporting his defense and the allegations in his August 18th grievance. Thus, only Hibberd was charged with offenses.

59)   On November 3rd, 2005, Hibberd filed another grievance. (Grievance attached hereto in Group Exhibit B) [3]

---

[3] Hibberd's November 3rd grievance originally had appended to it a copy of the Inmate Orientation Manual. Due to its voluminous amount of pages and the cost of copying, that manual has not been including with this complaint.

60)    On December 6, 2005, the institutional grievance officer, and warden (Warden Terry Polk, who is not a defendant) denied the November 3rd grievance. Consequently, Hibberd appealed the decision to the Director.

61)    On October 31, 2005, defendant Walker denied Hibberd's initial grievance of August 18, 2005. (Decision attached hereto in Group Exhibit A) Hibberd did not receive the decision until January 21, 2006.

62)    On December 27, 2005, defendant Walker denied Hibberd's second grievance of November 3rd, 2005. (Decision attached hereto in Group Exhibit B) Hibberd received this decision prior to receiving the October 31st decision.

63)    On belief, the above described actions of the defendants and their application of the disciplinary regulations against Hibberd is unjustified and not rationally connected to any legitamite security interests.

64)    It is upon information and belief that defendants Walker and Zimmerman have maintained a system of review of staff misconduct that is so cursory, incomplete, and mendacious as to be ineffective, permit, tolerate, and encourage

the unreasonable and unacceptable practices of staff. Such actions by the defendants amount to a tactic approval of staff misconduct.

65)    The above described actions by the named defendants are arbitrary, capricious, and appear to serve no legitimate penological interest except to prejudice and oppress Hibberd, by detering, impeding, interferring, and chilling Hibberd's ability to defend himself in disciplinary proceedings, to complain about those proceedings, staff misconduct, and other conditions of his confinement, and, to litigate his contentions in court.

66)    As a direct result of the above described actions by the named defendants, Hibberd lived, and continues to live under a constant threat and fear of further retaliatory acts by the defendants and their agents, particularly as a result of pursuing this civil rights action; pleading the names of the involved employees and inmates; presenting copies of the ARB Coleman Memorandum and the sworn inmate statements to the court; maintaining a copy of this complaint; and, obtaining names of inmates, staff, sworn statements, and other documentary evidence to support subsequent litigation.

# CLAIMS FOR RELIEF

67)     The actions of defendants Jennings, Crary, Watkins, Ashby, Pool, Vincent, and Zimmerman in disciplining Hibberd for, and prohibiting him from possessing other inmates legal documents and rendering legal assistance to them, despite the absence of any rule or policy to place him on notice, the dictates of the Illinois Administrative Code, and the existence of an inadequate/insufficient law library, as described, constitutes violations of his rights of access to the courts, freedom of expression, freedom of association, and procedural due process, as guaranteed by the First and Fourteenth Amendments of the U.S. Constitution.

68)     The actions of defendants Jennings, Crary, Ashby, Pool, and Zimmerman in disciplining Hibberd with the July 25th, 2005 disciplinary report, and prohibiting him from possessing other inmates legal documents and rendering assistance to them, following the filing of a civil rights complaint, as described, constitutes a violation of his rights to be free from retaliatory treatment, to have court access, to be free from cruel and unusual punishment, and to receive due process, as guaranteed by the First, Eighth, and Fourteenth Amendments of the U.S. Constitution.

26

69)    The actions of defendants Ashby and Pool in failing to document an adequate record of the evidence and defense presented, and subsequent failure to state its reasons for disregarding his exonorating evidence, is in contravention to the procedure as established by the Illinois Administrative Code, and constitutes a denial of due process as guaranteed by the Fourteenth Amendment of the U.S. Constitution

70)    The actions of defendants Watkins, Jennings, Ashby, Vincent, and Zimmerman in disciplining Hibberd with the October 2nd, 2005 disciplinary report for possessing the original sworn inmate statements, and their subsequent disposal of the documents, as described, was done as the result of filing a civil rights complaint, pursuing the August 18th grievance, and assisting inmates with legal matters, and constitutes a violation of his right to be free from retaliatory treatment, to have court access, to be free from cruel and unusual punishment, and to receive due process, as guaranteed by the First, Eighth, and Fourteenth Amendments of the U.S. Constitution.

71)    The actions of defendant Watkins in filing false disciplinary charges against Hibberd (the October 2nd disciplinary report), as described, was done as the result of filing a civil

rights complaint, pursuing the August 18th grievance, and assisting inmates with legal matters, and constitutes a violation of his right to be free from retaliatory treatment, to have court access, to be free from cruel and unusual punishment, and to receive due process, as guaranteed by the First, Eighth, and Fourteenth Amendments of the U.S. Constitution.

71)    The actions of defendants Ashby and Vincent in finding Hibberd guilty of Violation of Rules without notice of the charges, in contravention of the procedure as established by the Illinois Administrative Code, constitutes a denial of due process, as guaranteed by the Fourteenth Amendment of the U.S. Constitution.

72)    The actions of defendants Ashby and Vincent in finding Hibberd guilty of Unauthorized Property / Contraband and Violation of Rules (October 2nd disciplinary report) based on evidence/ information he was not charged with nor given notice of, as described, constitutes a denial of due process, as guaranteed by the Fourteenth Amendment of the U.S. Constitution.

73)    The actions of defendants Ashby and Vincent in conducting the disciplinary hearing in a threatening, belligerent, and provocative manner, as described, constitutes a violation of

Hibberd's right to have a meaningful opportunity to be heard and to receive a hearing before an impartial tribunal, as guaranteed by the Fourteenth Amendment of the U.S. Constitution.

74)    The actions of defendants Ashby and Vincent in falsifying the record of the disciplinary proceedings, as described, constitutes a violation of Hibberd's right to receive the fact finder's written statement of the reasons for the disciplinary action, as guaranteed by the Fourteenth Amendment of the U.S. Constitution.

75)    The actions of defendants Zimmerman and Walker in refusing to overturn Hibberd's disciplinary convictions, despite knowledge of the above described due process violations further denied him due process, as guaranteed by the Fourteenth Amendment of the U.S. Constitution.

76)    As a direct and proximate result of the acts of the defendants, Hibberd has been intimidated, humiliated, and caused to suffer distress.

For all of the foregoing reasons, plaintiff, Steven P. Hibberd, prays this court for entry of judgment in his favor in the following respects:

a) Find the defendants liable in their individual capacities and award compensatory and punitive damages in a total amount in excess of $100,000;

b) Find the defendants liable in their official capacities and enter an injunction prohibiting the enforcement of any policy which prohibits inmates from rendering legal assistance to other inmates;

c) Find the defendants liable in their official capacities and enter an injunction prohibiting further retaliatory actions against Hibberd;

d) Expunge all disciplinary convictions the subject of this complaint from Hibberd's record;

e) Award Hibberd the cost of this action, including reasonable attorney's fees if counsel is assigned, in accordance with 42 U.S.C. Section 1988.

<u>PLAINTIFF DEMANDS A TRIAL BY JURY</u>

*Steven P. Hibberd*

Steven P. Hibberd, Plaintiff

Steven P. Hibberd

Reg. No. B70027

Taylorville Correctional Center

P.O. Box 900

Taylorville, Illinois  62568

<u>VERIFICATION</u>

I, Steven P. Hibberd, hereby state, pursuant to 28 U.S.C. Section 1746 that the statements and claims made herein are true and correct under the penalty of perjury.

Executed on: <u>May 11, 2007</u>     *Steven P. Hibberd*

Steven P. Hibberd

31

E-FILED
Thursday, 24 May, 2007  03:46:53 PM
Clerk, U.S. District Court, ILCD

Group

Exhibit A



**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

October 31, 2005

Steven Hibberd
Register No. B70027
Western Illinois Correctional Center

Dear Mr. Hibberd:

This is in response to your grievance received on October 24, 2005, regarding a disciplinary report dated July 25, 2005 and staff (conduct C/O Jennings-7/25/05 )which was alleged to have occurred at Western Illinois Correctional Center. This office has determined the issue will be addressed without a formal hearing.

The Grievance officer's report (05-0716) and subsequent recommendation dated October 6, 2005 and approval by the Chief Administrative Officer on October 8, 2005 have been reviewed.

The 7/25/05 disciplinary report written by C/O Jennings citing 308-Contraband/Unauthorized Property and 211-Possession or Solicitation of Unauthorized Personal Information was reviewed. The report was served on 7/25/05.

The Western Illinois Adjustment Committee reviewed the report (**200502805/1**) on 7/29/05. You were found guilty of 211 and 308. Disciplinary action recommended was 1-month C grade and disposal of contraband. The CAO concurred on 8/1/05.

Based on a review of all available information and a compliance check of the procedural due process safeguards outlined in Department Rule 504, this office is reasonably satisfied you committed the offense and recommends the grievance be denied. Further, staff misconduct cannot be substantiated.

FOR THE BOARD: _____
Jackie Miller
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
Roger E. Walker Jr.
Director

cc: Warden Terry Polk, Western Illinois Correctional Center
Steven Hibberd, Register No. B70027

received on Jan 21

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO OFFENDER'S GRIEVANCE

2D3T

| Grievance Officer's Report |
|---|

**Date Received:** September 13, 2005        **Date of Review:** October 6, 2005        Grievance # (optional): 05-0716

**Offender:** Hibberd, Steven                                    **ID#:** B70027

**Nature of Grievance:** Major IDR/Disciplinary Report

**Facts Reviewed:** Offender Hibberd states his civil rights are being violated. He claims this is retaliation for filing a civil rights action against DOC, assisting offenders with their legal complaints, and denying an opportunity to be heard by the Adjustment Committee. Offender Hibberd received an IDR for possessing legal work belonging to other offenders. He claims this is in violation of Departmental Rules stating an offender may assist other offenders in preparation of legal documents to the extent consistent with institutional security. Offender Hibberd claims he presented statements from other offenders to the Adjustment Committee, and the Adjustment Committee never took the statements. Offender Hibberd claims the ARB has already made a decision regarding this issue with an Offender Coleman, A51378, whose IDR was expunged. He wants IDR expunged, retaliatory acts to cease, and all other relief deemed just and necessary to curb staff misconduct.

Major IDR dated 7/25/05 written by C/O Jennings charging grievant with #308 and #211 noting during routine frisk search of Inmate Hibberd, as inmate entered the library, this C/O found and confiscated legal materials belonging to 3) other W.I.C.C. inmates. Inmate was positively identified by IDOC ID and appears to be assisting other inmates with legal paperwork. Inmate Hibberd is a 2D porter and is not assigned as a library worker.

Adjustment Committee Summary dated 7/29/05 noting offender plea of not guilty stating, "I was going to the library. I had other inmates legal work. I was doing legal work for other inmates. I was a porter."

Committee recommendation of guilty based upon offender was identified by his state issued ID, offender admits to having other offenders legal material and admits doing legal work for other offenders, and written report of C/O Jennings.

CAO approved 1 month c-grade and dispose of contraband per DR 501C.

**Recommendation:** Based upon a total review of all available information and a compliance check of the procedural due process safeguards outlined in DR 054, this Grievance Officer recommends that the offender's grievance be denied.

_____Sue Redshaw_____        _Sue Redshaw_
Print Grievance Officer's Name                                    Grievance Officer's Signature
**(Attach a copy of Offender's Grievance, including counselor's response if applicable)**

| Chief Administrative Officer's Response |
|---|

Date Received: ___10-6-05___        ☑ I concur        ☐ I do not concur        ☐ Remand
Comments:

_____        100805
Chief Administrative Officer's Signature                                    Date

| Offender's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_Steven P. Hibberd_        B70027        10/21/05
Offender's Signature                        ID#                        Date

A/W Programs

ILLINOIS DEPARTMENT OF CORRECTIONS
## COMMITTED PERSON'S GRIEVANCE

| Date: August 18, 2005 | Committed Person: (Please Print) Steven P. Hibberd | ID#: 870027 |
|---|---|---|

| Present Facility: Western Illinois C.C. | Facility where grievance issue occurred: Western Illinois C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] Disability
- [x] Other (specify): Retaliation, Access to Court

- [x] Disciplinary Report: 7 / 25 / 05
  Date of Report                    Facility where issued

**Note:**     Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
   **Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
   **Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
   **Chief Administrative Officer,** only if EMERGENCY grievance.
   **Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** This grievance is in regards to, among the issues; 1) retaliation for filing a pending civil rights action against Department of Correction staff; 2) retaliation for assisting inmates with their complaints; 3) the denial of access to the courts for Western Illinois Correctional Center inmates; 4) interference with my right of access to the courts and attorney-client communications/litigation; 5) Denial of a meaningful opportunity to be heard by the Adjustment Committee; and, 6) Equal Protection of the Law.

   On or about April 25, 2005, I filed a civil rights action in the Northern District of Illinois against various Department of Corrections officials regarding matters that occurred while at the Dixon Correctional Center, Hibberd v. Walker, No. 05-C-50080. On April 29, 2005, the Court appointed attorney Marc C. Gravino

**Relief Requested:** Disciplinary Report, Shakedown Record and Incident Report expunged from all records; retaliatory acts to cease, and all other relief deemed just and necessary to curb this staff misconduct in the future.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_Steven P. Hibberd_                    870027            8 / 23 / 05
Committed Person's Signature            ID#              Date

*(Continue on reverse side if necessary)*

---

### Counselor's Response (if applicable)

| Date Received: ___ / ___ / ___ | [ ] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

Response: _____

_____

_____

_____

_____

| Print Counselor's Name | Counselor's Signature | ___ / ___ / ___ Date of Response |
|---|---|---|

---

### EMERGENCY REVIEW

| Date Received: ___ / ___ / ___ | Is this determined to be of an emergency nature? | [ ] Yes; expedite emergency grievance [ ] No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner. |
|---|---|---|

| Chief Administrative Officer's Signature | ___ / ___ / ___ Date |
|---|---|

of Williams + McCarthy to represent me in that action. On July 18, 2005, the Court issued summons in the case. On Monday, July 25, 2005, I had a call pass to attend this institution's law library. I walked over with inmate Walter Malone who also had a call pass to attend the law library. Upon entering the law library, Officer Crary of Internal Affairs entered behind us and told Malone and I that he was going to shake us down. Malone went first. As part of the search, Officer Crary went through Malone's legal material, then sent him on his way. Then, Officer Crary patted me down and went through my folder I had. Officer Crary first pulled out a list of case law that I had and questioned me as to why I had the list. I told him that it was a part of my research. He then took out legal material belonging to four other inmates: Walter Malone (copies of two appellate briefs on file in the Fourth District Appellate Court); Jeffrey Estrada (a Complaint for Search Warrant, Motion to Suppress, Transcripts from a hearing on the motion to suppress, all on file in the Bureau County Circuit Court and Third District Appellate Court); Daniel Escobedo (a letter sent to him from the Office of the State Appellate Defender); and, Marvin Greer (a grievance, without his name, concerning his security classification status).

While Officer Crary went through the legal material, Officer Jennings entered the law library and stated "This is inmate Hibberd. He likes to file lawsuits against DOC and do legal work for others. He didn't know we knew but we've known for some time." One of the officers asked me why I had other inmate's legal material and I pointedly stated that I assist inmates with their cases and legal problems. I was asked why I had Walter Malone's appellate briefs and I told both officers that he wanted me to read them and to give him an opinion. Officer Jennings then called Malone out of the law library section asked him why I had his appellate briefs, to which Malone stated the same. Officer Jennings then gave Malone's appellate briefs back to him and told him "Mr. Hibberd thinks he's a lawyer, but he's not. Don't give these to him again."

Officer Crary then grabbed the other inmates legal material, and told me that I would be written up for abuse of privledges and that I would get a shakedown slip. Both left the library.

Approximately 45 minutes later both officers came back to the library and informed me that they searched my cell and came back to return more of Malone's legal material. Officer Jennings stated to me "It's July 25th. You're not to possess another inmate's name, number, or legal work."

When I returned to my room around 11am, my then-cellmate, Tyrone Powells told me that two officers came to search the cell and concentrated the search on my property. When both officers exited the cell, one officer (believed to be Officer Crary) had a manilla envelope (believed to be the aforestated legal work belonging to Walter Malone), while the other officer (believed to be Officer Jennings) told Powells "if we had enough time we'd go through your stuff but we're really after your celly's legal work."

Grievance
August 18, 2005                                    page 3 of 8

That same evening, July 25, 2005, I received a letter from my aforestated attorney, Marc C. Gravine, which informed me that the District Court issued summons against defendants in the pending civil rights action.

Later that night I also received a disciplinary report authored by Officer Jennings #10124 for 308 Contraband/Unauthorized Property, 211 Possession or Solicitation of Unauthorized Personal Information. The purported facts supporting the charges stated: "On the above date & approximate time, during routine frisk search of I/m Hibberd B70027, as I/m entered the library, this C/O found & confiscated legal materials belonging to 3) other W.I.C.C. I/ms. I/m was positively identified by I.D.O.C. ID, & appears to be assisting other I/ms with legal paperwork. I/m Hibberd is a 2D Porter, & is not assigned as a library worker. D.R. 434 & 252 Written." (Disciplinary Report and Shakedown Slip attached hereto)

On July 27, 2005, when the night chow lines were called, I exited the wing. I then walked past Officer Carlock who stated, "Stop playing in the library."

On June 29, 2005, I appeared before the Adjustment Committee (Lt. Ashby and Phillip Pool). I pled innocent to the charges, but admitted that I had the inmate's legal work with me, and, that I was helping them with their cases. I explained to him that the Department Rules, Section 430.30, allows me to assist committed persons with the preparation of legal documents and that the legal material I had was public records on file in various courts. I also produced statements by those four inmates showing that they authorized me to possess their legal material and that I never solicited them. (Statements of Walter Malone, Jeffrey Estrada, Daniel Escobedo, and Marvin

Grievance
August 18, 2005

Greer attached hereto) Lt. Ashby was not interested in the inmate statements in that he never took the statements and told me that none of it mattered because the inmates can seek help in the law library, or do their own legal work. I retorted stating that the rules do not mandate that only law clerks may assist other inmates; that there is currently one law clerk for nearly 1800 inmates; and that many inmates have difficulty in reading and writing, much less than learning how to do legal research or understand the law.

I also stated that the Administrative Review Board has settled this issue explaining that inmate Jefferson Coleman #A51378 was charged with Unauthorized Property / Contraband for having possession of another inmate's legal work in his cell. Inmate Coleman informed the committee that the legal work pertained to on-going cases, but nonetheless was found guilty. In a grievance, Coleman espoused that no where in the Department Rules did it say he cannot have other inmates legal work in his cell. The Administrative Review Board agreed, and expunged the disciplinary report. (See "Hearing of Administrative Review Board" attached hereto)

Both Lt. Ashby and Mr. Pool told me that if I kept helping other inmates that I should "do it secretly" explaining that if I'm caught again then the disciplinary results will compound.

Upon leaving, Lt. Ashby and Mr. Pool attempted to return the aforementioned inmate statements and ARB disposition to me. I refused, and informed them that I wanted the evidence placed in the record, where then they agreed they would.

The Committee found me guilty of both offenses. The Final Summary Report documented the Record of Proceedings as follows: "DR504 charges read inmate pled; not guilty. I

Grievance
August 18, 2005                                                page 5 of 8

was going to the library. I had other inmates legal work.
I was doing legal work for other inmates. I was a porter."
(Final Summary Report attached hereto) The Summary Report
is defective, in that, 1) it mischaracterized my statements by
summarily concluding that I said "I do legal work" for other
inmates, rather than the distinguished statement that "I help
inmates" with their cases; 2) failed to document the evidence I
presented; and, 3) failed to state the basis for disregarding my
exonerating evidence. The report also documented the
sanctions imposed as demotion to C-grade and the
disposal of the inmates legal material based on the
seriousness of the offense.

     None of the other inmates were charged with 406
Trading or Trafficking their legal material to me.

     Department Rules, Part 430 pertains to inmate's access to
library services, legal materials, and legal assistance. (Department
Rules, Part 430 attached hereto) Section 430.30 provides,
"Committed persons may assist one another in the preparation of
legal documents to the extent consistent with institutional security."
The Department has specifically authorized all committed persons
to assist one another, and has not limited authorization only to
inmate law clerks. Just as an attorney would, a committed
person requires legal documents and information pertaining to and
belonging to the inmate they are helping in order to render
adequate assistance. The authorization to possess another
inmate's legal documents and information to assist him is
embodied within Section 430.30. The "Possession or
Solicitation of Unauthorized Personal Information" rule is
silent as to the possession of another inmates legal material
pertaining to their case, and, was not a rule intended to

inhibit a committed person's ability to assist another inmate with his legal issues. If it was intended for such, it would conflict with Section 430.30 and vitiate an inmate's ability to assist another. Inmates would be penalized for following one explicit rule, because of another rule. This is the exact situation in my case when Officer Jennings wrote in support of his charges "and appears to be assisting other inmates with legal paperwork."

The question of whether having possession of another inmate's legal work pertaining to on-going cases constitutes unauthorized material has been previously address by the Administrative Review Board. As stated, in 1999, at Centralia Correctional Center, inmate Jefferson Coleman was charged with Unauthorized Property/Contraband and Violation of Rules because he had another inmate's legal work in his cell. He was found guilty of the offenses. Following this, the institution issued a memo implimenting a rule prohibiting inmates from having other inmate's legal work in their cells. In a grievance, Coleman argued that no where in the Department Rules did it say he could not have other inmates legal work in his cell. Following an interview, the Board agreed and expunged the disciplinary report.

Coleman's situation in no different than mine. The language of the "Unauthorized Property/Contraband" rule is broader than that provided in the "Unauthorized Possession of Personal Information" rule. If I am not guilty of the former offense, then I am not guilty of the latter offense.

Nonetheless, the legal work I possessed is public information on file with the aforementioned clerks of courts.

The "Unauthorized Possession of Personal Information" rule as applied here and Officer Jennings aforementioned statements

Grievance
August 18, 2005                                             page 7 of 8

(that I could no longer possess another inmate's name, number, or legal material) effectively interferes with pending and contemplated litigation. For example, I may possess information concerning inmates who witnessed events described in my complaint, but I live under a constant threat and fear of disciplinary action; I could not garner affidavits or statements from relevant inmates or retain legal documents such as those attached to grievances like this one; I could not even hold and read another inmate's legal document while he is present.

The Adjustment Committee's verbal statements to me that inmates can do their own legal work or seek help in the law library violates section 430.30. Nevertheless, even without section 430.30, inmates at Western are not provided with adequate assistance through the law library. There is currently one inmate law clerk for the entire population. Inmates are allowed access to the law library 90 minutes per visit, twice a week. I have personally observed that not all inmates who are able to visit the law library are afforded adequate time to discuss their problems with the law clerk. Many inmates who have sought advice or direction from the various law clerks here over time have received perfunctory answers, and even omitted crucial issues in discussing the inmate's problem. Many inmates have difficulty reading, writing, and even comprehending the law. To overcome these serious obstacles, an inmate would have to spend hundreds of hours in the law library to do his own legal work. Most inmates do not even know how to do legal research, and, I have never observed or heard of a law clerk here teaching an inmate how to do actual legal

Grievance
August 18, 2005                                    page 8 of 8

research, except for giving an inmate a law book to read. That is not assistance; it's pacifying. The statements of Walter Malone, Jeffrey Estrada, Daniel Escobedo, Marvin Greer, Tyrone Powells, and Shad Hammond attached hereto only represent but a few of the inmates who support the points raised.

The disciplinary action taken was not the result of the institution protecting inmates who seek my assistance, in that, the Adjustment Committee ordered the disposal of the inmate's legal work, not the return of it. This is not a situation where the inmates loaned their electronic property to me, or the property constitutes a weapon or narcotic. These inmates were seeking help. The destruction of their legal property (with the exception of Walter Malone, as stated) especially when they were never charged with Trafficking or Trading, impedes the progress of their cases. Further, the Committee was never interested in hearing my defense, in that, they never documented in the record the evidence I presented, as described. It's unlikely I simply would have retained the Coleman/ARB Memo, and withheld the inmates statements, or never mentioned section 430.30 in trying to assert my defense. Particularly with the inmate's statements, they are dated after the disciplinary report was issued, but prior to the Committee hearing. Thus, the statements were obtained for my defense.

END

State of Illinois -- Department of Corrections
**DISCIPLINARY REPORT**

Page ___ of ___

☑ Disciplinary Report   Date 7/25/05

☐ Investigative Report ___   Date ___

Committed Person: HIBBERD   No. B70027   Facility: W.C.C.

Observation Date: 7/25/05   Time: APP. 900/AM   am/pm   Location: LIBRARY

C/O Jennings #10124   ☑ am/pm   7/25/05   9:1__
PRINT Employee's Name   Employee's Signature/Date/Time

Offense: 504 B ② 308 CONTRABAND/UNAUTHORIZED PROPERTY
211 POSSESSION OR SOLICITATION OF UNAUTHORIZED PERSONAL INFORMA___

Observation: ON THE ABOVE DATE & APP. TIME, DURING ROUTINE FRISK
SEARCH OF I/m HIBBERD B70027, AS I/m ENTERED THE LIBRA__
THIS C/O FOUND & CONFISCATED LEGAL MATERIALS BELONGING TO 3) OTH__
W.C.C. I/ms. I/m WAS POSITIVELY IDENTIFIED BY I.D.O.C. I.O.G.
& APPEARS TO BE ASSISTING OTHER I/ms WITH LEGAL PAPERWORK
I/m HIBBERD IS A 2D PORTER, & IS NOT ASSIGNED AS A LIBRARY
WORKER. D.C. 434 & 252 WRITTEN.

Witnesses, if any: ___

**NOTE:** Use continuation page if necessary to describe observation and/or list witnesses.

☐ Temporary Confinement   ☐ Investigative Status   Reasons: ___

___
PRINT Name

___
Shift Supervisor's Signature and Date
**(For Community Correctional Centers, Chief Adm. Off.)**

☐ Confinement Reviewed by Reviewing Officer   Comment: ___

___
PRINT Name   ___ Signature/Date

☑ **MAJOR,** submitted to Adjustment Committee   ☐ **MINOR,** submitted to Program Unit

May McCoy   May McCoy 7/25/05
PRINT Name   Reviewing Officer's Signature and Date

☐ Reviewed by Hearing Investigator: ___
**(Adult Division Major Reports Only)**   PRINT Name   Signature and Date

PROCEDURES APPLICABLE TO ALL HEARINGS ON INVESTIGATIVE AND DISCIPLINARY REPORTS

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

PROCEDURES APPLICABLE TO HEARINGS CONDUCTED BY THE ADJUSTMENT COMMITTEE ON DISCIPLINARY REPORTS

You may ask that witnesses be interviewed and, if necessary, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing. If you are found guilty of a serious rule violation, you may be placed in confinement and/or lose privileges, and/or be required to make restitution. In addition, juveniles may receive a delay in recommended parole.

___
Committed Person's Signature and Number

Committed Person Refused to Sign ☑

___
PRINT Serving Employee's Name   ___ Serving Employee's Signature   7-25-05   ___ am/pm
Date and Time Served

I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

Offense Date: ___   ___
Committed Person's Signature and Number

— — — — — (DETACH AND RETURN TO THE ADJUSTMENT COMMITTEE OR PROGRAM UNIT PRIOR TO THE HEARING) — — — —

I would like the Adjustment Committee or Program Unit to consider calling the following witnesses regarding disciplinary report of ___
Date

NAME OF WITNESS: ___   Number/Cell/Title: ___

Witness can testify to: ___

NAME OF WITNESS: ___   Number/Cell/Title: ___

Witness can testify to: ___

DC 720S (Rev. 4/98)   Distribution: 1) Master File; 2) Committed Person;   ___
IL 426-0361   3) Facility; 4) Facility   Committed Person's Name and Number

# SHAKEDOWN RECORD/ CONFISCATED CONTRABAND
(Tag/Receipt/Report/Chain-of-Custody Record)

EXHIBIT NO. _____
CLIC NO. _____

Date _____ Time _____ Bldg/Area _____
Living Area # _____ Occupied? Yes ___ No ___
Violator _____ No. _____
Was Any Contraband Found? Yes ✓ No ___
Item(s) (Description and Circumstances of Discovery) _____

Supervisor - Date Received _____ Time
Major ___ Minor ___ Signature _____
Disposition _____
Date _____ Time _____ Initials _____
Custodian - Date Received _____ Time
Major ___ Minor ___ Signature _____
Chain-of-Custody After the Custodian has Received the Item
From _____ To _____
Date _____ Time _____
From _____ To _____
Date _____ Time _____
From _____ To _____
Date _____ Time _____

Witness _____
Was a Disciplinary Report Written? Yes ✓ No ___
Was an Incident Report Written? Yes ✓ No ___
Employee's Signature _____
Badge No. _____ Date _____ Time _____

From _____ To _____
Date _____ Time _____
From _____ To _____
Date _____ Time _____
Final Disposition _____
Date _____ Custodian's Initials _____

DC 252 (Rev. 6/87) IL 426-0042    cc 1 With Item (Tag) 2 Supervisor 3 Employee 4 Disciplinary Report 5

Griffin  N11861, Horace

---

# SHAKEDOWN RECORD/ CONFISCATED CONTRABAND
(Tag/Receipt/Report/Chain-of-Custody Record)

EXHIBIT NO. _____
CLIC NO. _____

Date 7/13/03 Time 1:30 Bldg/Area LIBRARY
Living Area # n/a Occupied? Yes ___ No ✓
Violator HIBBLER No. B76037
Was Any Contraband Found? Yes ✓ No ___
Item(s) (Description and Circumstances of Discovery)
LEGAL MATERIALS
BELONGING TO 3) OTHER
NICC I/M's.

Supervisor - Date Received _____ Time
Major ___ Minor ___ Signature _____
Disposition _____
Date _____ Time _____ Initials _____
Custodian - Date Received _____ Time
Major ___ Minor ___ Signature _____
Chain-of-Custody After the Custodian has Received the Item
From _____ To _____
Date _____ Time _____
From _____ To _____
Date _____ Time _____
From _____ To _____
Date _____ Time _____

Witness C/O CRARY #10061
Was a Disciplinary Report Written? Yes ✓ No ___
Was an Incident Report Written? Yes ___ No ✓
Employee's Signature _____
Badge No. 2/6/111 Date 7/13/03 Time _____

From _____ To _____
Date _____ Time _____
Final Disposition _____
Date _____ Custodian's Initials _____

# STATE OF ILLINOIS DEPARTMENT OF CORRECTIONS
## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

**Name:** HIBBERD, STEVEN P

**Hearing Date/Time:** 7/29/05  10:23 AM

**Incident Number:** 200502805/1 - WIL

**IDOC Number:** B70027

**Living Unit:** WIL-02-D-37

**Status:** Final

**Race:** WHI

**Orientation Status:** N/A

| Date | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| 7/25/05 | 200502805/1-WIL | JENNINGS, JOSEPH D | LIBRARY | 09:00 AM |

| Offense | Violation | Final Result |
|---|---|---|
| 308 | Contraband/Unauthorized Property | Guilty |
| | Comments:OTHER INMATES LEGAL MATERIAL | |
| 211 | Pos. or Sol. of U/A Personal Information | Guilty |
| | Comments:LEGAL WORK BELONGING TO 3 OTHER I/M'S | |

| Witness Type | Witness ID | Witness Name | Witness Status |
|---|---|---|---|

**No Witness Requested**

## RECORD OF PROCEEDINGS
DR504 CHARGES READ INMATE PLED; NOT GUILTY. I WAS GOING TO THE LIBRARY. I HAD OTHER INMATES LEGAL WORK. I WAS DOING LEGAL WORK FOR OTHER INMATES. I WAS A PORTER.

## BASIS FOR DECISION
INMATE WAS IDENTIFIED BY HIS STATE ISSUED ID.
INMATE ADMITS TO HAVING OTHER INMATES LEGAL MATERIAL AND ADMITS DOING LEGAL WORK FOR OTHER INMATES.
WRITING STAFF JENNINGS DC7205 REFLECTS UPON SHAKING DOWN INMATE HIBBERD GOING TO LIBRARY INMATE WAS FOUND TO HAVE LEGAL MATERIAL OF OTHER INMATES.

## DISCIPLINARY ACTION *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|---|---|
| 1 Months C Grade | 1 Months C Grade |
| Other : DISP OF CONTRA IN ACRD OF 501C | Other : DISP OF CONTRA IN ACRD OF 501C |

**Basis for Discipline:**SERIOUSNESS OF OFFENSE

## Signatures
### Hearing Committee

| | Signature | Date | Race |
|---|---|---|---|
| POOL, PHILLIP D  - Chair Person | | 07/29/05 | WHI |
| ASHBY, FORREST J | L.T. Ashby | 07/29/05 | BLK |
| Recommended Action Approved | | | |

## Final Comments: N/A

TERRY L POLK / TLP  8/1/05

Chief Administrative Officer

08/01/05

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504: Subpart F.

Employee Serving Copy to Committed Person

When Served - - Date and Time

ILLINOIS DEPARTMENT OF CORRECTIONS
HEARING OF ADMINISTRATIVE REVIEW BOARD

*DATE OF HEARING*: January 14, 2000

*LOCATION OF HEARING*: Centralia Correctional Center, Centralia, Illinois

*GRIEVANT NAME*

*BOARD MEMBERS PRESENT*: Nancy S. Tucker, Administrative Review Board Chairperson, Office of Inmate Issues, Department of Corrections.

Grievant was personally interviewed by the Administrative Review Board. The Master File was reviewed as well as all information submitted to the Board by the grievant, and the institution related to the issue being grieved. The case was discussed with the Centralia Correctional Center administration.

Nature of Grievance:                         is grieving a disciplinary report dated July 4, 1999, received at Centralia Correctional Center.

The disciplinary report of July 4, 1999, regarding an incident which occurred on July 4, 1999, at approximately 8:20 p.m., was written by Robert Gerdes charging violation of DR504 308-Contraband/Unauthorized Property, 404-Violation of Rules (WB 99-3). Inmate is charged with having legal work for other inmates in his cell. The disciplinary report was served on July 5, 1999, at 7:25 p.m.

The Program Committee Hearing was conducted at Centralia Correctional Center on July 9, 1999, at 1:34p.m. The Program Committee found the grievant guilty of 308 and 404. The recommended disciplinary action was: a reprimand. The CAO concurred on July 12, 1999.

Inmate appeared before the ARB and stated: that no where in DR 504 does it say he cannot have other inmates legal work in his cell.        said these were on-going cases. He asked for an interpretation of the rule and Mary Hodges put out a memo to law clerks on September 27, 1999, which specifically states they can't take legal work to their cells.

        's requesting the report be expunged.

The Grievance Officer's report dated October 5, 1999, was reviewed. The Grievance Officer recommended the grievance be denied. The CAO concurred on October 6, 1999.

Additional information reviewed included DC 252 listing contraband items taken.

Recommendations: Based upon a review of all available information and a compliance check with the procedural due process safeguards outlined in Department Rule 504, the Panel recommends the disciplinary report of July 4, 1999, be expunged from grievant's Master File and from the disciplinary record as the charges are not substantiated.

FOR THE BOARD:

Nancy S. Tucker
Administrative Review Board Chairperson
Office of Inmate Issues

I concur. Warden Bowen is to proceed accordingly.

Donald N. Snyder, Jr.                         2/7/00
Director                                       Date

NST:bls

cc:  Warden Edwin Bowen , Centralia C.C.
     Jefferson Coleman, Register #A-51378
     General Office File

 **ILLINOIS DEPARTMENT OF CORRECTIONS** _RULES_

TITLE 20:    CORRECTIONS, CRIMINAL JUSTICE, LAW ENFORCEMENT
CHAPTER I:    DEPARTMENT OF CORRECTIONS
SUBCHAPTER d:  PROGRAMS AND SERVICES

LIBRARY SERVICES AND LEGAL MATERIALS                Part 430

---

<u>Section</u>
430.10      Applicability
430.20      Library Services and Legal Materials
430.30      Assistance by Committed Persons
430.40      Photocopying Services

AUTHORITY:  Implementing Section 3-7-2 and authorized by Section 3-7-1 of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, pars. 1003-7-2 and 1003-7-1).

SOURCE:  Adopted and codified at 8 Ill. Reg. _____, effective August 1, 1984.

<u>Section 430.10  Applicability</u>

This Part applies to the Adult and Juvenile Divisions.

<u>Section 430.20  Library Services and Legal Materials</u>

   a)    Each correctional facility shall provide opportunities for access to library services and legal materials.  However, general library services and/or direct access to a law library may be limited, restricted or denied if library privileges have been abused or in the event that institutional safety or security may be jeopardized.  An alternate means of access to legal materials and to prepare legal documents shall be provided in these instances.

   b)    The amount of books and materials a committed person may accumulate may be limited where the amount poses a fire, sanitation or security hazard.

<u>Section 430.30  Assistance by Committed Persons</u>

Committed persons may assist one another in the preparation of legal documents to the extent consistent with institutional security.  Committed persons shall not receive compensation for such assistance.

<u>Section 430.40  Photocopying Services</u>

   a)    Materials may be photocopied by the library.  The cost for reproduction will be determined by the facility based on actual cost per copy and charged to the committed person.

---

# ILLINOIS DEPARTMENT OF CORRECTIONS RULE

TITLE 20:    CORRECTIONS, CRIMINAL JUSTICE, LAW ENFORCEMENT
CHAPTER I:   DEPARTMENT OF CORRECTIONS
SUBCHAPTER d:  PROGRAMS AND SERVICES

LIBRARY SERVICES AND LEGAL MATERIALS                    Part 430

b)   Committed persons who are without funds shall be provided and
     charged for copying services for legal materials which may not be
     reasonably duplicated by other means.  Legal documents shall be
     deemed to mean pleadings, complaints or petitions, briefs, exhibits,
     affidavits, notices of filing or other documents to be filed in a court
     of law or other forum in which a suit may be filed or which are
     required to be served upon opposing counsel or parties.

STATE OF ILLINOIS )
                  ) SS
COUNTY OF BROWN   )

Page 1 of 2

## STATEMENT OF WALTER MALONE

I, Walter Malone, hereby state pursuant to Section 1-109 of the Code of Civil Procedure, that the following is true and correct, under the penalty of perjury:

On July 25, 2005, I had a call pass to the law library at Western Illinois Correctional Center for 9am. I walked over there with Inmate Steven Hibberd, who also had a call pass to the law library for the same time. After we both entered the library, Officer Crary entered and told us that he wanted to shake us down. Officer Crary first patted me down, then went through my legal material I brought with me. Then, Officer Crary patted Hibberd down. While this occurred, I went into the law library. After a few minutes, Officer Jennings yelled for me to come back. Officer Jennings first asked me if I was at the law library to "make it look good" so Hibberd could work on my case. I told Officer Jennings that I was on a legal deadline and research my case. Officer Jennings then asked me why Hibberd had my Appellate Briefs, and I told him that I wanted Hibberd to read them and give me his opinion. Officer Jennings then gave my briefs and stated "Mr. Hibberd thinks he's a lawyer, but he's not. Don't give these to him again." I then walked back into the law library while Officer Crary, Officer Jennings, and Hibberd remained in the library. Approximately 40 minutes later or so

Statement of Walter Malone                    Page 2 of 2

Officer Jennings and Officer Crary returned to the library.
Hibberd and I were at the counter and I observed
Officer Jennings had a thick manilla envelope which was mine.
Officer Jennings told me that they got the envelope from
Hibberd's cell, and told Hibberd that they were returning it
to me. While I stood there, Officer Jennings told Hibberd
that from July 25, 2005 on out that he could "not
possess another inmate's name, number, or legal work."
Hibberd said "okay."

I have an immensely difficult time working on my criminal
case and am on a strict deadline to file a petition for
leave to appeal in the Illinois Supreme Court. I personally
sought Hibberd out observing that, although he never
purported to me to be an attorney, he had a substantial
amount of experience in law and procedure. Hibberd has been
invaluable in helping me to this point, and not once has he
ever asked me for any gratuities. I fear that I may not
make my deadline now because of what Officer Jennings and
Officer Crary told me.

I have not received any disciplinary report regarding the
aforementioned.    END STATEMENT

I, Walter Malone, hereby state pursuant to Section 1-109
of the Code of Civil Procedure that the aforementioned is true
and correct, under the penalty of perjury

_____                    _____  B-01851
July, 26, 2005                        Walter Malone  B-01851
Dated                                 Walter Malone
                                      Reg. No. B01851

STATE of ILL

COUNTY of Brown

Affidavit by Estrada-N12749 3-D-66

I am writing in regards to some legal
paperwork (transcripts) of my court pro
ceedings from Bureau County Courthou
When I came to W.I.C.C. back in March
of 2005 I was sent to cellhouse 2-D-39
    Inmate Hibberd was in the cell next to
me in cell 38, and after a short time, I c
to know Mr Hibberd.
As time went on through conversation", that
I brought up", I mentioned that I was
seeking help to clearly understand some
of the legal Jargon generated in my case
However I had been going back an forth to
the law library and "could not" get the ans-
wers to some issues I needed to understand
One day I came up to Mr Hibberd and I
ask a few questions, and asked Mr Hibberd
if he could clearly look at my transcripts
because I believe in my heart I can beat
the case in the appellate court. I see
alot of eerrors and I Just wanted some
opinions from people about my Transcript

and what they contain. However I've ask
Numerious people to look my Transcripts
for these opinions, and I keep getting the
same answers. Somehow it just doesn't m
me comfortable even though the answers
getting are positive to stop Asking other pea
to look at my paperwork.

One thing for sure is I am not paying anybod
for any information, "IN Fact" I have a lawye
But a little advice or input from somebod
else or other people just seem to put me at
ease! IN fact I did not see any rules that
I couldnot let other people look at my paperwork
or that I couldnot ask questions. I did
authorize Hibberd to have the Material to
see if his opinion was the same as mine as to
some of the wording and largon put forth in
the transcripts. At no time did Hibberd solicit
me to work on my case I just wanted a clear
understanding of the wording. This I
swear to and I wont let no more people
see my transcripts.

I declare under the penalty of perjur
that the above is true and correct.

July 27, 2005

Jeff Estrada
N-12749

STATE OF ILLINOIS )
                  ) ss                    Page 1 of 2
COUNTY OF BROWN  )


    I, Daniel Escobedo   , hereby state, pursuant to Section 1-109
of the Code of Civil Procedure that the following is true and
correct, under the penalty of perjury:

    I met inmate Steven Hibberd in November of 2004 when we
were both assigned to R.2-C wing. Prior to Hibberd moving on
the wing, I sought help on my criminal case through an inmate
law clerk and inmates on the wing. I gave the inmates
various legal documents generated in my case. This was so I
could a better opinion. Approximately 2½ months after Hibberd
moved on the wing, I requested for him to help me in my
case. This was particularly because the inmate law clerks never
seemed to have time to devote to me for any lengthy period of
time, and most of the time I was not on the library list
to attend the law library despite my repeated requests to attend.
Hibberd appeared to me to be just as competent to assist me
and was more available than a law clerk, who could only
devote a few minutes to me each week, if I was even able to
attend the law library. Hibberd recently informed me that on
July 25, 2005, officers confiscated from him a letter that
the First District Appellate Defender's Office sent me. I
previously gave Hibberd this letter to read at my request. I
have great difficulty in understanding legal matters and
Hibberd was willing to explain them to me. Hibberd is not

Statement of Daniel Escobedo                                    Page 2 of 2

the only person I have relied on in assisting me in my case.
I am over 60 years old and have serious health problems.
I cannot afford to forego assistance from any inmate willing
to help me at my request.

   I, DANIEL ESCOBEDO, hereby state the the aforementioned is
true and correct, pursuant to Section 1-109 of the Code of
Civil Procedure, under the penalty of perjury.

_7-27-05_____                    _Daniel Escobedo_____
Date                                  DANIEL ESCOBEDO   NA3563

STATE OF ILLINOIS )
                  ) SS
COUNTY OF BROWN   )

## STATEMENT OF MARVIN GREER

I, Marvin Greer, hereby state pursuant to Section 1-109 of the Code of Civil Procedure, that the following is true and correct, under the penalty of perjury:

I met inmate Steven Hibberd in the library in November of 2004. At that time I needed assistance in my criminal case. I observed that Hibberd had knowledge and experience in the law, particularly post-conviction and appellate procedure. I approached Hibberd and requested his assistance. I explained my legal problem to him, then asked him to read the legal material generated in my case. All of the material consisted of public documents on file with the Clerk of the Cook County Court, and Clerk of the Northern District of Illinois, Eastern Division. I have continued to seek Hibberd's assistance, most recently with how to write a grievance. I have difficulty articulating my problems/issues on paper, and Hibberd was helping me in presenting my complaint. Hibberd informed me that on July 25, 2005, Officers Jennings and Crary of Internal Affairs confiscated a grievance that I wrote, and Hibberd's redraft of it. This has impeded me from presenting my complaint.

I, Marvin Greer, hereby state pursuant to Section 1-109 of the Code of Civil Procedure, that the aforementioned is true and correct, under the penalty of perjury.

Date: July 26, 2005

Marvin Greer
Reg. No. B-72874

STATE OF ILLINOIS )
                  ) ss
COUNTY OF BROWN   )

Page 1 of 2

## STATEMENT OF TYRONE POWELLS

I, Tyrone Powells, hereby state pursuant to Section 1-109 of the Code of Civil Procedure, that the following is true and correct, under the penalty of perjury:

On July 25, 2005, around 9:40 am, I was in my assigned cell, R2-D-37, when Officer Jennings and Officer Crary opened the door and told me to step out. I sat in front of the cell and observed both officers search the bedding first. Then I observed both officers go through my cellmate's, Steven Hibberd's, legal papers and folders that were sitting on the table and shelf. His correspondence box had shoes in it soaking in water. Then, I observed Officer Jennings sitting in the chair go through my property box, while Officer Crary sat on the toilet going through Hibberd's box. Officer Crary took a voluminous amount of papers, envelopes, and books out of Hibberd's box and sat them on my bed. I observed both officers go through the material. Officer Crary then went through Hibberd's clothes in his box while Officer Jennings search Hibberd's coat that was hanging up. Then, I observed Officer Crary put all of Hibberd's property in his box, in no particular order. After the search, both officers exited the cell. I observed Officer Crary take from the cell a manilla envelope and 3 folders and go to the foyer. Officer Jennings stayed behind, and told me "if we had enough time we'd go through your stuff but we're really after your celly's legal

Statement of Tyrone Powells                                    Page 2 of 2

work." Officer Jennings then told me that he would be back to
go through my stuff, stating that I was a Stone, and that
he would read "the kites" in my box. Officer Jennings'
last words to me were, "Oh, by the way, tell the moes
I said 20 of them." The cell was left in a wrecked
condition.

    While I have been assigned to my cell with Hibberd as my
cellmate, I have never observed him solicite other inmates to
do legal work for them. I have amply observed inmates
approach him and ask him legal-based questions and ask him to
read legal documents. Many of the times he was reluctant to do
so, and other times he helped them. At my request, Hibberd
has even helped me in my case. I have a difficult time reading
and writing letters, as well as recognizing what rights or
privledges I have. Hibberd has been helpful in guiding me.
END STATEMENT.

    I, Tyrone Powells, hereby state pursuant to Section 1-109
of the Code of Civil Procedure that the aforementioned is true
and correct, under the penalty of perjury.

_____7-25-05_____
Dated

_Tyrone Powells R20864_
Tyrone Powells
Reg. No. R20864

STATE OF ILLINOIS )

                         ) ss                                  Page 1 of 2

COUNTY OF BROWN )

## STATEMENT OF SHAD HAMMOND

    I, Shad Hammond, hereby state pursuant to Section 1-109 of the Code of Civil Procedure, that the following is true and correct, under the penalty of perjury:

    I met inmate Steven Hibberd while he and I were on 2-C wing in late 2004. During that time, I had a motion to withdraw guilty plea pending in court. I was aware that Hibberd knew law and procedure from seeing him work on his case and conversing with him about it. I asked Hibberd to read my pro se motion to withdraw guilty plea and my attorney's supplemental motion to see what he thought about my issues. Several months later I again approached Hibberd seeking his help. The matter stemmed from me getting shot in the back. I had until August of 2005 to have a lawsuit filed in the matter. Hibberd explained to me that, due to the nature of my problem, and his experience, that I would fare better in having an attorney help me. Hibberd provided me with the names of several attorneys who could take an interest in my case. Due to being shot, I have poor dexterity in writing. I asked Hibberd to write the letters for me, and he did. This resulted in an attorney contacting me, who now represents me in court on a lawsuit for being shot. Without Hibberd's help, it was almost certain that I would not have filed my claim in time, and I would have forfeited my rights.

    I, Shad Hammond, hereby state pursuant to Section 1-109 of

Page 2 of 2

the Code of Civil Procedure that the aforementioned is true and correct, under the penalty of perjury.

_____7/26/05_____          _____Shad Hammond_____
Date                                             Shad Hammond
                                                 Reg. No. K53658

E-FILED
Thursday, 24 May, 2007  03:48:47 PM
Clerk, U.S. District Court, ILCD

Group

Exhibit B



**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

December 27, 2005

Steven Hibberd
Register No. B70027
Western Illinois Correctional Center

Dear Mr. Hibberd:

This is in response to your grievance received on December 21, 2005, regarding a disciplinary report dated October 2, 2005 and staff conduct (C/O Watkins-10/2/05) which was alleged to have occurred at Western Illinois Correctional Center. This office has determined the issue will be addressed without a formal hearing.

The 10/2/05 disciplinary report written by C/O Watkins citing 104-Dangerous Contraband, 203-Drugs & Drug Paraphernalia, 305-Theft and 308-Contraband/Unauthorized Property was reviewed. The report was served on 10/2/05.

The Western Illinois Adjustment Committee reviewed the report on 10/6/05. You were found guilty of 404 IOM #60 (305 reduced) and 308. Disciplinary action recommended was 1-month C grade and disposal of contraband. The CAO concurred on 10/12/05.

The Grievance officer's report (05-0867) and subsequent recommendation dated December 6, 2005 and approval by the Chief Administrative Officer on December 8, 2005 have been reviewed.

Based on a review of all available information and a compliance check of the procedural due process safeguards outlined in Department Rule 504, this office is reasonably satisfied you committed the offense and recommends the grievance be denied.

FOR THE BOARD: _____
Jackie Miller
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
Roger E. Walker Jr.
Director

cc:  Warden Roger Zimmerman, Western Illinois Correctional Center
     Steven Hibberd, Register No. B70027



ILLINOIS DEPARTMENT OF CORRECTIONS
RESPONSE TO OFFENDER'S GRIEVANCE

| Grievance Officer's Report |
|---|

**Date Received:** November 4, 2005    **Date of Review:** December 6, 2005    **Grievance #** (optional): 05-0867

**Offender:** Hibberd, Steven    **ID#:** B70027

**Nature of Grievance:** Major IDR/Disciplinary Report

**Facts Reviewed:** Offender Hibberd claims the disciplinary report he received was written in retaliation for using the grievance procedure. He states the Adjustment Committee found him guilty without any evidence and documenting a false record of proceeding. Offender Hibberd states the confiscation of evidence is in retaliation and preventing him from assisting other offenders with legal matters. Offender Hibberd wants legal documents returned, IDR expunged, reason why not allowed to possess offender statements or documents for defense, assist offenders with legal matters, and transfer to Dixon CC.

Major IDR dated 10/2/05 written by C/O Watkins charging grievant with #104, #203, #305, and #308 noting during a routine shakedown of cell R2D37 this C/O found in Inmate Hibberd's property box 5 documents containing legal material from 5 other inmates; also approximately 75 thick sheets of paper stolen from the print shop. This C/O also found in Inmate Estrada's property box 20 pills wrapped in a piece of Raman noodle bag concealed in a half bag of coffee, 1lb. of sugar at 0.32 and ½ lb. of dry oatmeal at 0.15 which was verified by CFSSII Powell, also 2 extra double edge razors were found in Inmate Estrada's property box. Inmate Hibberd was positively identified by State ID.

Adjustment Committee Summary dated 10/6/05 noting offender plea of not guilty stating, "I'm a 2D wing porter. I'm in 2D37. There are documents I got at Dixon and I can have them. I got the paper from another inmate, they sell it on commissary. The pills and razors and food were my cellie's." Inmate submitted written statement. Committee notes witness statement from Counselor Goins would be irrelevant as Counselor Goins did not witness the shakedown nor confiscation items listed in the disciplinary report.

Committee recommendation of guilty to #308, reduce #306 to #404 Rule #60 O.O.M., and delete #104 and #203 based upon offender was positively identified by IDOC ID card and was assigned to R2D37 where contraband was found. Offender admits to having other offenders' documents and receiving paper from another offender. Written report of C/O Watkins and offender did not produce receipt showing he purchased paper from the commissary. Offender Hibberd submitted written statement containing documents pertaining to other offenders including an ARB decision from another offender. Offender submitted DR 430.30 but Offender Hibberd is not permitted to assist other offenders with legal work, as this is not consistent with institutional security as he is assigned as a porter, not a legal assistant in the law library. Prior tickets for Contraband or trade/traffic on 7/25/05, 1/9/05, 10/14/04, & 9/28/04.

CAO approved 1 month c-grade and dispose of contraband per DR 501C.

**Recommendation:** Based upon a total review of all available information and a compliance check of the procedural due process safeguards outlined in DR 504, this Grievance Officer recommends that the offender's grievance be denied.

Sue Redshaw
_Print Grievance Officer's Name_          _Grievance Officer's Signature_
**(Attach a copy of Offender's Grievance, including counselor's response if applicable)**

| Chief Administrative Officer's Response |
|---|

**Date Received:** 12-7-05    ☑ I concur    ☐ I do not concur    ☐ Remand

**Comments:**

_Chief Administrative Officer's Signature_          12/8/05    _Date_

| Offender's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

Steven P. Hibberd          B70027          12-19-05
_Offender's Signature_          _ID#_          _Date_

05-0841
2D37

ILLINOIS DEPARTMENT OF CORRECTIONS
## COMMITTED PERSON'S GRIEVANCE

| Date: Nov. 3, 2005 | Committed Person: (Please Print) Steven P. Hibberd | ID#: B70027 |
|---|---|---|
| Present Facility: Western Ill. C.C. | Facility where grievance issue occurred: Western Ill. C.C. | |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] Disability
- [ ] Other (specify):

- [x] Disciplinary Report: 10 / 21 / 05    Western Illinois Corr. Ctr.
  Date of Report    Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: This grievance is in regards to, among the issues, 1) Retaliation for utilizing the grievance procedure and litigating a civil rights action ; 2) Filing false disciplinary charges in retaliation for utilizing the grievance procedure and litigating a civil rights action; 3) Denial of a meaningful opportunity to be heard by the Adjustment Committee, i.e. partiality, disregarding obvious relevant evidence, entering a finding of guilt without some evidence, erroneously reducing the charges; 4) Documenting a false record of proceedings by the Adjustment Committee; 5) Retaliatory confiscation and destruction of evidence; and 6) Applying prison regulations to prohibit me from assisting inmates that is not reasonably related to

Relief Requested: See page 24 for Relief Sought.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Steven P. Hibberd    B70027    11 / 3 / 05
Committed Person's Signature    ID#    Date

(Continue on reverse side if necessary)

### Counselor's Response (if applicable)

Date Received: ___/___/___    [ ] Send directly to Grievance Officer    [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response:

RECEIVED NOV 4 2005

Print Counselor's Name    Counselor's Signature    Date of Response

### EMERGENCY REVIEW

Date Received: ___/___/___    Is this determined to be of an emergency nature?    [ ] Yes; expedite emergency grievance
[ ] No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

Chief Administrative Officer's Signature    Date

DOC 0046 (Eff.10/2001)

ILLINOIS DEPARTMENT OF CORRECTIONS
**COMMITTED PERSON'S GRIEVANCE** (Continued)

legitimate penological interests.

This grievance is related to a prior grievance dated August 18, 2005, and reviewed on October 6, 2005, Grievance No. 05-0716. The pertinent facts in that grievance are as follows: On July 25, 2005, Officer Jennings of Internal Affairs confiscated from me legal material belonging to other inmates at Western, and charged me with Possession or Solicitation of Unauthorized Personal Information and Unauthorized Property/Contraband. Prior to the Adjustment Committee hearing I obtained statements from inmates Walter Malone, Jeffrey Estrada, Daniel Escobedo, Marvin Greer, Tyrone Powells, and Shad Hammond. At the hearing I sought to present the Malone, Estrada, Escobedo, and Greer statements, as well as a memorandum from the Administrative Review Board which documented a decision to expunge a disciplinary charge for Unauthorized Property/Contraband where inmate Jefferson Coleman had possession of other inmates' legal documents. (Hereinafter, "ARB Coleman Memorandum.") The evidence was meant to support my defense. Lt. Ashby displayed no interest in the evidence, but later agreed to place the evidence in the record. Despite and in response to my evidence/defense, Lt. Ashby told me that I could no longer assist inmates with legal work, found me guilty of the offense, issued 1 month of C-grade, ordered the disposal of the inmate's legal papers, and never documented the evidence I sought to present within the Final Summary Report. Consequently, I filed the aforementioned grievance and attached copies of the inmate statements and ARB Coleman Memorandum to support my claims. The grievance pended until mid-October.

Then, on September 28, 2005, my attorney, Marc C. Gravino sent a letter to the Western Illinois Correctional Center's Clinical Services requesting a telephone conference with me regarding the civil rights action. (Copy of letter attached.) Mr. Gravino requested that this conference be set for Tuesday, October 11, 2005 between the hours of 10:00am and 12:00 noon.

On September 29, 2005, I was restored to A-grade status.

On October 2, 2005, my cell was searched by Officer Watkins. The search lasted approximately 2 hours, during which my cellmate and I sat in the dayroom. During this time I observed Officer Watkins exit the cell and go to the foyer. Upon returning, he informed other officers who become involved, that "Jennings" told him to "save the papers," and

referenced that I possessed other inmate's legal work, names, and their numbers. Both my cellmate and I were then locked out of our cell, under the information and belief that we would be taken to segregation. After a while Officer Sweetin came on the wing and allowed us back into the cell informing us that we would not be taken to segregation. As I organized my property boxes I observed that five of the original inmate statements that were appended to support the then-pending grievance were missing. A short time later Officer Watkins returned to the cell to give my cellmate and I a shakedown slip. (Attached hereto) At that time I asked Watkins if he took the statements. Officer Watkins acknowledged that he did by informing me that I could not possess them, and, told me that he already talked to Internal Affairs. I informed Officer Watkins that the statements pertained to me and that copies were attached to a pending grievance; then I produced a copy of the grievance and showed him the copies of the inmate statements attached to it. Officer Watkins told me that it did not matter and that I was not allowed to possess original documents, nor was I allowed to obtain statements from other inmates. I then asked Officer Watkins if he could make out an incident report regarding the information I told him, however he refused telling me that he already wrote a report and that I could tell it all to the Adjustment Committee.

During the rest of the day numerous inmates informed me that they thought I would be in segregation. When I inquired as to their reasoning, I was told that Officer Watkins told them that he was trying to walk my cellmate and I to segregation and suggested that our job positions would be open.

That evening I was served with a disciplinary report written by Officer Watkins who charged me with 308 Unauthorized Property / Contraband and 305 Theft. The report alleged "This C/o found in I/m Hibberd's property box 5 documents containing legal material from 5 other inmates; also aprox. 75 thick sheets of paper stolen from the printshop." (Disciplinary Report attached hereto) (The other charges and allegations pertained to my cellmate)

I was not aware that the "thick paper" was confiscated until I received the shakedown slip, nor was I aware that I was being charged with stealing it until I received the disciplinary report. The paper was not stolen from the printshop. The confiscated paper measured 9×12, which is Dick Blick Art Paper sold on the commissary. The printshop does not print on 9×12 paper; only $8\frac{1}{2}×11$ and $8\frac{1}{2}×14$.

That evening I completed the Witness Request Form

4

at the bottom of the disciplinary report requesting as witnesses Counselor Tara Goins, and a commissary supervisor. I stated that Counselor Goins can atest that copies of the inmate statements are attached to the pending grievance, and, that the commissary supervisor can verify that they sell the 9×12 paper. In addition, I sent a letter to the Committee along with a copy of the August 18th grievance and a sheet of the 9×12 Art Paper, (Hand-written copy of letter attached hereto) In the letter I restated what the proposed witnesses could atest to; stated that the inmate statements supported the pending grievance; stated that the paper was sold on commissary; stated that I obtained a sheet of the 9×12 paper from another inmate which I included for them since Officer Watkins took my paper (hence, it must be sold if other inmates have it); and, that I did not believe the printshop produces on 9×12 paper.

Also on October 2, 2005, I mailed a letter to Counselor Goins requesting her assistance as a witness. (Hand written copy of letter attached hereto)

Then, on Tuesday, October 4, 2005, I personally spoke to Counselor Goins in her office. Counselor Goins confirmed that she was familiar with my grievance, and told me that she forwarded it to Grievance Officer Sue Redshaw. While I was there she called Ms. Redshaw who confirmed that she had the grievance. Counselor Goins also said that the printshop only prints on "business-sized

paper," not 9×12 paper. I then asked Counselor Goins whether she received the aforementioned letter from my attorney concerning the request for a telephone conference, and, produced my copy of the letter for her. Counselor Goins told me that she was not aware of the request, but that it may not have been given to her yet.

On Wednesday, October 5, 2005, I spoke to Lt. Ashby outside the chowhall after lunch and asked him if he received my package (witness request, grievance, 9×12 Art Paper). Ashby's response was, "Aren't you the one that does legal work for inmates?"

The following day, October 6, 2005, I appeared before the Adjustment Committee, which consisted of Lt. Ashby and Counselor Julia Vincent. I also brought with me a copy of the August 18th grievance and another sheet of the 9×12 paper. Counselor Vincent also had my package that I sent the Committee. After Lt. Ashby read the disciplinary report, I pled not guilty. Counselor Vincent asked me why I had other inmate's paperwork, to which I denied having. I explained that the paperwork was my property and were the original inmate statements, copies of which were appended to the grievance. Lt. Ashby asked what the grievance was about, to which I explained that it was about the July 25th disciplinary report and the guilty finding. Lt. Ashby then became belligerant, threatening and provocative. He stated that I

was just charged with doing legal work for other inmates, and that he "only" gave me 1 month C-grade and disposal of contraband. Ashby asked me why I even filed a grievance. I was dismayed by his mannerism, but responded that I filed a grievance over his guilty finding and remarked that he ordered the disposal of the inmate's legal papers and that I was not going to discuss further why I opted to file a grievance. I reminded Lt. Ashby that I tried submitting the statements at the last hearing (on July 29th) but he was not interested in them. Lt. Ashby asked me why I kept copies of the statements after the first hearing, to which I explained that I assumed that I could grieve the guilty finding, and include the evidence that he failed to consider, then keep a copy of the entire grievance. Despite and in response to my defense, Lt. Ashby told me that I still could not have them, and that I was even "bogus" for keeping copies, as he referred to the grievance in my hand. Counselor Vincent told me that I was not allowed to attach the statements to my grievance because I was never allowed to have them and that if the Committee never considered the statements that I should have "thrown them away." I argued the irrationality of their suggestions and walked them through the nature of the statements, specifically, that the statements were signed by the inmates who were witnesses and had knowledge to matters involving me. Lt. Ashby also asked me what future use could the statements be for. I limited my response, stating

7

for subsequent appeals if necessary.

Counselor Vincent then flipped to the ARB Coleman Memorandum attached to the grievance and asked me what it was. I yet again explained that I tried submitting the Memorandum with the statements at the last hearing, that the evidence was disregarded, and that I consequently attached it to support the grievance. Counselor Vincent asked me where I got the Memorandum from, and I told her from another inmate at Dixon Correctional Center. Lt. Ashby responded saying "No, No, No, No," while shaking his head. Ashby ended the issue by saying that if I'm shook down again I would be written up if more copies are found, referring to the inmate statements and memorandum.

When the paper was discussed, I pointedly told them that the paper was not stolen and that this was a false charge; that I did not have access to the printshop; that the printshop did not print on 9×12 paper; and, that the commissary sells the paper. Neither member gave me feedback, and ended the hearing.

When I left the hearing I took with me the grievance with the attached inmate statements and memorandum.

Contemporaneously on the same date of the hearing, being October 6, 2005, Grievance Officer Sue

Redshaw reviewed the August 18th grievance. None of my claims/allegations were investigated or refuted, and no penological reason was offered for why I was not allowed to assist inmates with legal matters.

The Adjustment Committee ultimately found me guilty of Contraband/Unauthorized Property based on the "thick paper/other inmates' paperwork" and reduced the Theft charge to 404 Violation of Rules, rule #60 of the Inmate Orientation Manual. (Summary Report from Adjustment Committee attached hereto) The Committee documented the Record of Proceedings as "DR504 charges read, inmate pled Not Guilty. "I'm a 2D wing porter. I'm in 2D37. These are documents I got at Dixon and I can have them. I got the paper from another inmate, they sell it on commissary. The pills and razors and food were my cellie's. Inmate submitted written statement." The Committee documented its Basis for Decision as:

"I/m was positively identified by his IDOC ID card and was assigned to R2D37 where contraband was found. Inmate admits to having other inmate's documents and receiving paper from another inmate... Inmate did not produce any commissary receipt showing he purchased the paper from commissary. I/m Hibberd's written statement that contained documents pertaining to other inmates including an ARB decision from another inmate, and inmate admits in his written statement

that he received the thick paper from other inmates. Inmate submitted DR430.30, but inmate Hibberd is not permitted to assist other inmates with legal work as this is not consistent with institutional security as he is assigned as a porter, not a legal assistant in the law library."

Then, on Tuesday, October 11, 2005, my attorney's request for a telephone conference was ignored. Despite all previous requests being honored (5/3/05, 5/10/05, 5/17/05, copies of the request attached hereto) no counselor appeared in my Unit or otherwise notified me as to why the request could not be honored. I did ask the officer at the desk (unaware of his name) if he could call Clinical Services to remind them, however he refused, asserting he was sure they knew. I was eventually able to call my attorney on an unsecured/monitored line at approx. 12:30pm. At that time he informed me that he thought I would not call, and never stated that any correction official contacted him as to why the telephone conference request would/could not be honored. We then discussed the possible settlement of the suit.

The following day, October 12, 2005, Warden Polk signed the Final Summary Report approving of the Adjustment Committee's disciplinary action and basis.

At no time was the inmates who gave me the legal

documents were ever charged with Trafficking and Trading the material to me. Likewise, despite my defense that the inmates provided me with the statements, at no time were they charged with violating the security of the institution by assisting me with legal work.

---

The central issue is that I was punished for utilizing the grievance procedure, assisting inmates with their legal matters, and litigating the civil rights action. 730 ILCS 5/3-8-8(e) states that "[d]iscipline shall not be imposed because of use of the grievance procedure." No where in the Offender Orientation Manual does it prohibit inmates from obtaining statements or other documents to support a defense. (Copy of Manual is appended hereto) To the contrary, the manual infers that inmates are encouraged to do so. At the same time, the manual infers that inmates are allowed to do the same to support a grievance.

Section 504.80f(1) provides, "The offender may make any relevant statement or produce any relevant documents in his or her defense." (Manual, p. 94) The face of the Disciplinary Report provides the same. Section 504.80f(6) and (7) implicates that such documents can be sworn witness statements. (Manual, ps. 95-96) Section 504.810(b) provides:

"The grievance shall contain factual details regarding

11

each aspect of the offender's complaint including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." (Manual, p. 118)

At the same time, the face of a Committed Person's Grievance states that an inmate "[a]ttach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.)[.]" Here, I am being charged with Unauthorized Property / Contraband. (Manual, p. 130) However, the rule as applied in my situation effectively conflicts with Part 504 and serves no legitimate penological purpose. It's presumed that the State has an interest in enabling inmates to mount a defense, and appeal an adverse decision, or grieve staff misconduct directed at them. There is absolutely no security interest at stake in this situation, whereas, I am merely charged with having the legal documents, without any discernible security violation. I am not charged with causing a dangerous disturbance, bribing inmates, assaulting or intimidating inmates, engaged in dangerous communications, possessing dangerous written material, conducting unauthorized movement, abusing privledges, disobeying a direct order, violating the rules of the institution, engaging in trafficking and trading, or engaging in a conspiracy in order to obtain the statements. (Charges in Manual, ps. 126-131, ps. 9-15) Any potential security threat is purely abstract and in fact dispelled because the inmate statements were used for obvious legitimate purposes, namely, to defend myself against the July 25th disciplinary report and add evidentary support to

the subsequent August 18th grievance.

The Adjustment Committee failed to document my defense, and in fact substituted it with a defense never made, with the exception that I submitted a written statement. The written statement wholly conflicted with their account. At no time did I admit to possessing other inmates' legal documents, or that the documents confiscated (inmates' statements) were obtained at Dixon Correctional Center. This is for the most obvious of reasons: 1) The documents were my legal evidence once the inmates relinquished control of them to me for my defense/grievance; 2) That none of the inmates who signed the documents were ever at Dixon during the time I was there (7/02 - 11/04); 3) That the documents are signed and dated on July 25th, 26th, and 27th of 2005, being after the first disciplinary report was issued but before the Adjustment Committee hearing on July 29th; and 4) I unambiguously stated where the statements came from on page 8 of my August 18th grievance.

The actions of Internal Affairs, Officer Watkins and the Adjustment Committee are arbitrary and capricious, in that, unlike the July 25th disciplinary report, I was not charged with Possession or Solicitation of Unauthorized Personal Information. Further, the Adjustment Committee never took issue with possessing the inmate statements at the first hearing of July 29th. It was not until I filed the August 18th grievance, was restored to

A-grade, and engaged in settlement talks in the civil rights action that I was disciplined for possessing the evidence. The timing is impeccable. Also, the Committee concentrated on the ARB Coleman Memorandum as their basis for finding me guilty, yet, I am not charged with possessing the memorandum — only the statements. This is on top of the Committee ordering the disposal of the legal material rather than returning it to the inmates. At no time were any of the other inmates charged with trafficking or trading their material, or charged with assisting me by giving me their statements. Only I was charged

The Committee concentrates on me assisting inmates, claiming that I am prohibited because its not consistent with the security of the institution. The Committee reasons that I'm only a porter, not a law clerk. This has absolutely nothing to do with possessing statements to support my defense and grievance. It was the last disciplinary report that assisting inmates was the central issue. Nevertheless, the Orientation Manual, page 8, Section F instructs inmates that they should pay particular attention to certain Department Rules, among which is Section 430. (Manual, p. 9) Section 430.20 provides that "[e]ach correctional facility shall provide opportunities for access to library services and legal material." Section 430.30 provides that "[c]ommitted persons may assist one another in the preparation of legal documents to the extent

consistent with institutional security." (Manual, p.69) The Committee tries to summarily justify why I cannot assist inmates under the escape clause of a security risk. At the same time, the Committee fails to identify what the security threat is. Everything an inmate does poses a security threat, whether it be flushing the toilet too many times, conversing with inmates, walking to the yard, or going on visits. The "security of the institution" clause has already been contemplated in Section 430.30. The regulation is not written to imply institutions can unilaterally prohibit its inmates from assisting one another such as what Western has undertaken to do in my case. To the contrary, Section 430.30 is written to specifically authorize inmates to assist one another as long as the inmates abide by the rules and regulations of DOC and the particular institution which they are confined. There is no rule that contradicts Section 430.30, and it is generally accepted that for an inmate to assist another in the preparation legal documents that the inmate will have to have the inmate's legal documents to complete the task. In my case, I'm charged merely with possessing inmates' legal documents and assisting them, but no actual security violation is alleged. Western is enforcing a rule/policy that has no valid rational connection to security.

Section 430.30 does not contemplate that only law clerks are allowed to assist other inmates either. It

specifies "committed persons." And, the 71 individual rules of the institution does not prohibit inmates from assisting one another. (Manual, ps. 9-15) Moreover, while the Orientation Manual remarks of law clerks in terms of visiting inmates housed in the healthcare and segregation units (Manual, p. 21) it is absent any information that law clerks alone may assist inmates. In fact, the Manual fails to explain what elevates an inmate law clerk's knowledge and skill over an inmate who is not a law clerk yet versed in the legal field.

Assuming, arguendo, that only law clerks may assist inmates, Section 430.20 does not define what constitutes "access" to legal materials in terms of adequacy of the law library. Presumably it is the individual institution's responsibility to ensure its law library is adequate. Western's law library is not. There are over 2000 inmates at Western. The vast majority of them are unskilled in the law, while many are illiterate and/or mentally deficient. No training course exits to educate inmates regarding how to conduct research that is meaningful, assess whether an infringement of their rights occurred regarding their conviction or conditions of confinement, how to comprehend what it is they read (i.e., reading legalese is like reading Greek to many), or how to write cogently.

An inmate is typically restricted to 1 ½ hours per week to attend the law library, unless a lockdown occurs. Un-

beknowst to some inmates, they are often close to deadlines and cannot become educated/skilled in time. Many inmates have filed grievances and made other forms of complaints asserting that, despite their requests to attend the law library, they are unable to for weeks. Some inmates who do attend the law library often srt in the law library on non-legal related matters, which merely amounts to needless distractions for the inmates who have legitimate legal issues.

Since May of 2005, only one inmate law clerk is assigned to the law library. The qualifications that made him a law clerk is a test. However, the test is open book, and, upon information, other inmates often help those who have taken the test. Outside this test, no training course exists to further educate law clerks. Since my time at this institution, I have observed inmates being ill-advised to complete fill-in-the-blank forms when some forms are not tailored enough to accomodate the inmate's problem. Inmates have been turned away because some forms do not exist, instead of the law clerk(s) simply educating the inmate as to how to draft their own documents. Law clerks have rarely taught inmates how to conduct meaningful research. Inmates who have sought advice or direction from law clerks have received perfunctory answers, and, even omitted identification of non-frivolous issues.

The single library employee, Ms. Olsen, holds the

17

position of Library Associate, not paralegal. I have never had occasion to see her offer legal advice to inmates, except to refer inmates to the law clerk(s). She cannot even answer questions pertaining to how many copies of certain documents should be sent to court officials, or even identify the general court officials who should receive the legal documents. In addition to this, while Ms. Olsen is not required to be nice to inmates, she is too often abrasive, contentuous, and cross. This is a well known issue to staff as inmates have filed countless grievances against her over time. Her attitude is often characterized as hostile and has actually disswayed inmates from asking the simplest of questions, such as if they could use the restroom, where to place a signature on a form, or if they could receive an envelope for mailing legal documents.

The totality of circumstances create an inadequate law library. But, none of it matters because inmates who are versed in the law/legal field compensate for the inadequacies.

Any rule or policy at Western prohibiting non-inmate law clerks from assisting inmates is unjust, particularly because no rule or policy is published in the Department Rules, Orientation Manual, or Warden's Bulletins. to place inmates on notice prior to rendering assistance. The lack of legitimacy and rationality of the policy/rule is evident in Grievance Officer Rodshaw and Warden

18

Polk failing to offer any legitimate reason in responding to the first grievance over this matter. Western Illinois Correctional Center is a known disciplinary institution housing inmates who sustained disciplinary infractions at other institutions, parole violators, and new inmates fresh into the system. Meanwhile, Western is notorious for malicious staff misconduct against inmates. Inmates are provoked, harassed, threatened, falsely charged, and demeaned seemingly on a daily basis in one way or another. Legitimate complaints and grievances are ignored, not investigated, and/or perfunctorily responded to. There is a delay in mail distribution to inmates anywhere from 8-14 days, which the institution never accepts fault for. Some mail addressed to the Director has been intercepted one or more times. (Examples of which I could provide but would require me to disclose personal information, which would subject me to further disciplinary action) Enforcing a policy prohibiting inmates from assisting one another promotes inmates' degeneration and is tantamount to silencing the typical inmate from making legitimate complaints regarding the conditions of their confinement or conviction(s).

Officer Watkins' false disciplinary report and the Committee's actions on it are yet another matter. Without receiving any information, or conducting any preliminary investigation, Officer Watkins charged me with stealing paper from the printshop. This is despite the obvious

oversized characteristics of the paper, that the paper sells art supplies, and, it being well known that inmates often draw and make cards. It's difficult to believe that Officer Watkins has never observed during shakedowns or otherwise, inmates who had the same type of paper.

The Committee noted that I failed to produce a commissary receipt showing that I purchased the paper, and claimed that I admitted that I got the paper from another inmate. At no time did I claim that I got the paper THAT OFFICER WATKINS CONFISCATED from another inmate. Rather, I only admitted in my letter to the Committee that the sheet of paper I sent them was obtained from another inmate. (Letter, p. 2) I was not charged with that sheet of paper; only the 75 that Watkins took. A commissary receipt does not prove that the paper was not stolen. It only proves that at some point I bought paper in general. Accordingly, my defense was one of logic: Because Officer Watkins confiscated 9×12 paper, and the printshop did not print on 9×12 paper, then the paper obviously could not be stolen.

In lieu of a Theft conviction, the Committee reduced the charge to 404 Violation of Rules for violating Rule #60 of the Orientation Manual. This is erroneous for three reasons.

20

First, Violation of Rules is defined as:

"Willfully disobeying any rule of the facility. If the specific offense is stated elsewhere in this Part, a committed person may not be charged with this offense. <u>The rule violated must be specified in the disciplinary report.</u>" (Manual, p. 131)

Accordingly, Rule 60 of the Orientation Manual states:

"Offenders are not to be involved or attempt to involve others in trafficking of contraband. Offenders may not give, loan, trade, or receive <u>anything</u> from another offender." (Emphasis in the original) (Manual, p. 14)

Officer Watkins never specified that I violated Rule 60 in his disciplinary report. Thus, the charge must be vacated.

Second, Rule 60 is anagolous to 406 Trading or Trafficking, defined as "Trading or trafficking with any person." (Manual, p. 131) This rule is found in the same part as 404 Violation of Rules. The Committee abused its discretion and the charge should be vacated.

Third, Section 504.80k(4) provides that the

21

Committee shall "[f]ind that the offender did committe the offense or a lesser offense for which the elements were included in the original charge." (Manual, p. 97) The elements of Rule 60 do not include the same elements of 305 Theft, which is defined as "[t]aking property belonging to another person or entity or the facility without the owner's authorization." (Manual, p. 130) Thus, the Committee reduced the charge to an offense which has no relation to the offense charged.

The conviction for Unauthorized Property / Contraband based on the "thick paper" should also be vacated as it is inconsistent with the allegations in the disciplinary report and the evidence submitted. The allegation is that I <u>stole</u> paper. It ill behooves the Committee to not find me guilty of Theft, yet still claim that I had unauthorized possession of it. Because Officer Watkins observations were that it was stolen, all there was to prove was that it wasn't stolen to end the issue. The Committee appears to rely on the paper that Officer Watkins did not charge me with to justify the Unauthorized Property conviction.

I am prejudiced and suffer actual injury in numerous respects from the retaliation. Among which, I am unable to file an adequate grievance and support my claims with evidence or specific facts such as other inmates' names, numbers, times, dates, descriptions, documents, etc., or I would face disciplinary action again. I remain in

constant fear of further disciplinary action from keeping copies of inmate statements and the ARB Coleman Memorandum.  I cannot gather evidence, if necessary, to defend myself and support my claims in subsequent proceedings.  I remain in constant fear that more false charges will be lodged against me, and that the charges will be more severe, penalties worse, and that the evidence manufactured, or planted.

The destruction of the original statements inhibits my ability to verify my claims if required to.  Copies of documents detract from their veracity and diminishes any proof I have to a nullity.  I cannot simply go out and get the inmates to re-verify their signatures 1) because I would be disciplined like in the instant case, and 2) two inmates have transferred, while other inmates are assigned to other units which are not accessible to me.

The reduction in grade status effects my security, obstructs my ability to place calls to my attorney, to communicate with him on the civil rights suit, and prevents me from becoming eligable for a transfer. The transfer was particularly personal whereas, my mother is sick and no longer able to travel long distances to visit me.  With the amount of time I have left, it is likely that I won't see her if she passes away.  Dixon Correctional Center was the closest prison to enable me to see her, I am effectively precluded from seeing her, for what boils

down to malicious motives by staff here. I have
been at this institution for over a year as of
November 3, 2005 and was reclassified as 3AL
in May, 2005. Absent the July 25th and
October 2nd disciplinary reports, it is likely I
would have been eligable for a transfer.


Relief Sought: Retaliation to cease; Return of my
   legal documents; Expungment of the disciplinary
   charges and convictions from all records; Provide
   a legitimate penological purpose for why I am not
   allowed to possess inmate statements or other
   documents to support a defense and grievance, and,
   assist inmates with legal matters; Transfer to
   Dixon Correctional Center; and, all other relief
   deemed necessary to curb staff misconduct.

# WILLIAMS & MCCARTHY

**MARC C. GRAVINO**
facsimile: 815/965-5134
E-Mail:    mgravino@wilmac.com

May 20, 2005

COPY

*Via Telefax: (217) 773-2202*
Western Illinois Correctional Center
Attn: Clinical Services
RR#4, P.O. Box 196
Mt. Sterling, IL 62353-9479

> **Re:  Inmate Steven P. Hibberd, #B70027**
> **Hibberd v. Walker, et al**
> **Case No. 05 C 50080, Northern District of Illinois**

To Whom it May Concern:

I have been appointed by the United States District Court, Northern District of Illinois, to represent Steven Hibberd in the above referenced matter. A copy of the order appointing me as counsel for Mr. Hibberd is attached.

The distance between my office and your location (approx. 240 miles) prohibits me from visiting Mr. Hibberd and although we can communicate via mail, it is necessary for me to have an initial telephone conference with him prior to the first court status which is currently set for July 6, 2005.

As such, I am hereby requesting a telephone conference be set for Friday, June 3, 2005, between the hours of 10:00 a.m. and 12:00 noon. Mr. Hibberd should call me collect at (815) 987-8900. Please contact me with any questions or comments.

Very truly yours,

WILLIAMS & McCARTHY

Marc C. Gravino

MCG/th
Attachment
cc: Steven P. Hibberd (*via mail*)
H:\Teresa\MCG\Hibberd, Steven\Western Illinois.L01.wpd

69

# WILLIAMS & MCCARTHY

**MARC C. GRAVINO**
facsimile:  815/965-5134
E-Mail:       mgravino@wilmac.com

June 6, 2005

COPY

*Via Telefax: (217) 773-2202*
Western Illinois Correctional Center
Attn: Clinical Services
RR#4, P.O. Box 196
Mt. Sterling, IL 62353-9479

   **Re: *Inmate Steven P. Hibberd, #B70027***
     ***Hibberd v. Walker, et al***
     ***Case No. 05 C 50080, Northern District of Illinois***

To Whom it May Concern:

   You previously granted my request for an initial telephone conference with Mr. Hibberd regarding representation.  This telephone conference was held June 3, 2005.  To continue discussions regarding this matter, it is necessary for me to have an additional telephone conference with Mr. Hibberd.

   As such, I am hereby requesting that an additional  telephone conference be set for Friday, June 10, 2005, between the hours of 10:00 a.m. and 12:00 noon.   Mr. Hibberd should call me collect at (815) 987-8900.   Please contact me with any questions or comments.

   Very truly yours,

   WILLIAMS & McCARTHY

   Marc C. Gravino

MCG/th
cc: Steven P. Hibberd (*via mail*)
H:\Teresa\MCG\Hibberd, Steven\Western Illinois.L02.wpd

84

# WILLIAMS & McCARTHY

**MARC C. GRAVINO**
facsimile: 815/965-5134
E-Mail: mgravino@wilmac.com

June 14, 2005

COPY

*Via Telefax: (217) 773-2202*
Western Illinois Correctional Center
Attn: Clinical Services
RR#4, P.O. Box 196
Mt. Sterling, IL 62353-9479

> **Re:** **Inmate Steven P. Hibberd, #B70027**
> **Hibberd v. Walker, et al**
> **Case No. 05 C 50080, Northern District of Illinois**

To Whom it May Concern:

You previously granted my requests for a telephone conference with Mr. Hibberd regarding representation. To continue discussions regarding this matter, it is necessary for me to have an additional telephone conference with Mr. Hibberd.

As such, I am hereby requesting that an additional telephone conference be set for Friday, June 17, 2005, between the hours of 9:00 a.m. and 11:00 a.m.. Mr. Hibberd should call me collect at (815) 987-8900. Please contact me with any questions or comments.

Very truly yours,

WILLIAMS & McCARTHY

Marc C. Gravino

MCG/th
cc: Steven P. Hibberd (*via mail*)
H:\Teresa\MCG\Hibberd, Steven\Western Illinois.L04.wpd

**Attorneys at Law**
**321 West State Street, P.O. Box 219    Rockford, Illinois 61105-0219**
**(815)987-8900    Facsimile: (815)968-0019    Regional Office: Oregon, Illinois**
**Web Site: www.wilmac.com    E-Mail: mail@wilmac.com**

95

# WILLIAMS & MCCARTHY

**MARC C. GRAVINO**
facsimile:  815/965-5134
E-Mail:    mgravino@wilmac.com

September 28, 2005

*Via Telefax: (217) 773-2202*
Western Illinois Correctional Center
Attn: Clinical Services
RR#4, P.O. Box 196
Mt. Sterling, IL 62353-9479

       Re:    *Inmate Steven P. Hibberd, #B70027*
              *Hibberd v. Walker, et al*
              *Case No. 05 C 50080, Northern District of Illinois*

To Whom it May Concern:

      You previously granted my requests for a telephone conference with Mr. Hibberd regarding representation.  To continue discussions regarding this matter, it is necessary for me to have an additional telephone conference with Mr. Hibberd.

      As such, I am hereby requesting that an additional  telephone conference be set for Tuesday, October 11, 2005, between the hours of 10:00 a.m. and 12:00 noon.  Mr. Hibberd should call me collect at (815) 987-8900.   Please contact me with any questions or comments.

               Very truly yours,

               WILLIAMS & McCARTHY

               Marc C. Gravino

MCG/th
cc: Steven P. Hibberd (*via mail*)
H:\Teresa\MCG\Hibberd, Steven\Western Illinois.L04.wpd

**Attorneys at Law**
**321 West State Street, P.O. Box 219    Rockford, Illinois 61105-0219**
**(815)987-8900    Facsimile: (815)968-0019    Regional Office: Oregon, Illinois**
**Web Site: www.wilmac.com    E-Mail: mail@wilmac.com**

# SHAKEDOWN RECORD/CONFISCATED CONTRABAND
(Tag/Receipt/Report/Chain-of-Custody-Record)

EXHIBIT NO. _____
CLIC. NO. _____

Date 10-2-05  Time 248  Bldg/Area  23

Living Area # 2D27

Violator Collman  11 1b.2  No. 14-372

Occupied? Yes X No _____

Was Any Contraband Found? Yes _____  No _____

Item(s) (Description and Circumstances of Discovery) _____

Witness _____

Was a Disciplinary Report Written? Yes X No _____

Was an Incident Report Written? Yes X No _____

Employee's Signature _____

Badge No. _____  Date 10-2-05  Time 228

Supervisor _____ Date Received _____ Time _____

Major _____ Minor _____ Signature _____

Disposition _____

_____ Date _____ Time _____ Initials _____

Custodian _____ Date Received _____ Time _____

Major _____ Minor _____ Signature _____

Chain-of-Custody-After-the-Custodian-has-Received-the-Item

From _____ To _____

_____ Date _____ Time _____

From _____ To _____

_____ Date _____ Time _____

From _____ To _____

_____ Date _____ Time _____

From _____ To _____

_____ Date _____ Time _____

Final Disposition _____

_____ Date _____ Custodian's Initials _____

DC232 (Rev. 5/87)  IL426-0042

cc: 1 White Item (Tag); 2 Supervisor; 3 Employee; 4 Disciplinary Report; 5 Violator

Rd U-31

State of Illinois - - Department of Corrections
**DISCIPLINARY REPORT**

Page 1 of

☒ Disciplinary Report  10-2-05  ☐ Investigative Report ___
Date                                                    Date

Committed Person: Hibberd  No. B70027  Facility: WICC

Observation Date: 10-2-05  Time: 7:40 Approx am/pm  Location: R2 D-37

C/O Watkins                          C/O Watkins  10-2-05  7:40 am/pm
PRINT Employee's Name                Employee's Signature/Date/Time

Offense: 504 B (A) 104 Dangerous Contraband 203 Drug and Drug Paraphernalia 305 Theft
C 308 Contraband/unauthorized property

Observation: On the above date and aprox time during a routine shake down of Cell R.
This C/o Found in I/m Hibberds property box 5 Documents containing legal material &
5 other inmates; also Aprox 75 thick sheets of paper stolen from the print sho.
This C/o also found in I/m Estradas property box 20 pills wrapped in a piece
of ramen noodle bag concealed in a half bag of coffee, 1 lb of sugar at 32¢ an
1/2 lb of dry oatmeal at 15¢ which was verified by CFSS II Powell, also 2 extra
Double Edge Razons were found in I/m Estradas property box. I/m Hibberd was positiv
Identified by State I.d.  C/o Sweetin #10225

Witnesses, if any: ___

NOTE: Use continuation page if necessary to describe observation and/or list witnesses.

☐ Temporary Confinement  ☐ Investigative Status  Reasons: ___

PRINT Name ___  Shift Supervisor's Signature and Date (For Community Correctional Centers, Chief Adm. Off.)

☐ Confinement Reviewed by Reviewing Officer  Comment: ___

PRINT Name ___  Signature/Date ___

☒ MAJOR, submitted to Adjustment Committee  Max McFee  ☐ MINOR, submitted to Program Unit  Max McFee 10/2/05
PRINT Name ___  Reviewing Officer's Signature and Date

☐ Reviewed by Hearing Investigator: ___
(Adult Division Major Reports Only)  PRINT Name ___  Signature and Date ___

**PROCEDURES APPLICABLE TO ALL HEARINGS ON INVESTIGATIVE AND DISCIPLINARY REPORTS**

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

**PROCEDURES APPLICABLE TO HEARINGS CONDUCTED BY THE ADJUSTMENT COMMITTEE ON DISCIPLINARY REPORTS**

You may ask that witnesses be interviewed and, if necessary, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing. If you are found guilty of a serious rule violation, you may be placed in confinement and/or lose privileges, and/or be required to make restitution. In addition, juveniles may receive a delay in recommended parole.

Committed Person's Signature and Number ___  Committed Person Refused to Sign ☒

___ 10225  ___ 10225  10-2-05 ___ am/pm
PRINT Serving Employee's Name  Serving Employee's Signature  Date and Time Served

I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

Steven P. Hibberd
Reg. No. B70027
Unit R-2, Cell 37

Adjustment Committee
C/o Lt. Ashby
C/o Mr. Pool


October 2, 2005


Members of the Committee:

I am writing in regards to a disciplinary report written and served on me October 2nd, 2005. The charges are 104 Dangerous Contraband; 203 Drug and Drug Paraphennilia; 305 Theft; and, 308 Contraband/ Unauthorized Property. I have accompanied this letter with evidence, and the Adjustment Committee request slip for witness which seeks the Committee to contact Counselor Tara Goins and a Commissary Supervisor.

Concerning the matters within the disciplinary report pertaining to me ("5 Documents containing legal material from 5 other inmates; Also approx. 75 thick sheets of paper stolen from the print shop), the legal documents are statements that I obtained from inmates that I used as

evidence/exhibits to support a grievance that I filed dated August 18, 2005. I have included a copy of that grievance for your reference, which pends at this time. You will notice that the inmates' statements directly pertain to me, in that, my name is written in those statements. Counselor Tara Goins can verify that the grievance pends. Following the confiscation of the statements, Officer Watkins, the author of the disciplinary report, was informed by me of the statements and that they are in support of a pending grievance.

Also, the "thick paper" is not from a print shop. It is from the commissary. The commissary sells Dick Blick Art Paper at sizes of 9 x 12, and 18 x 24. The paper that was taken was the Dick Blick Paper. I have provided with this letter another sheet of paper, which measures 9 x 12. I had to get this sheet from another inmate to prove this issue, as Officer Watkins took my supply. If you measure the paper and feel the consistency of it, you will see that the paper Watkins took is consistent with the commissary paper. Officer Watkins never inquired into the origin of the paper prior to taking it. In addition, I do not believe the print shop (as c/o Watkins says there is) makes 9 x 12 paper. The Commissary Supervisor can verify this.

Thank you for looking into these matters,

Steven Hibberd

Steven P. Hibberd B70027

Steven P. Hibberd
Reg. No. B70027
R-2, D-37


Counselor Tara Goins
Unit 2 Counselor


October 2, 2005


Dear Counselor Goins:

I am writing you in regards to a disciplinary report written on October 2, 2005 by Officer Watkins. (See attached copy) I require your assistance as a witness regarding the allegations pertaining to the possession of other inmate's legal material. I will explain.

On July 25, 2005, Internal Affairs' Officer Jennings confiscated from me legal work belonging to three other inmates, then wrote a disciplinary report for Unauthorized Possession of Personal Information and Unauthorized Property/Contraband. Prior to the Adjustment Committee hearing, which occurred on July 25, 2005, I obtained five statements from inmates who supported my defense that they gave me their legal material and sought my assistance regarding their legal issues.

1

I presented copies of their statements at the hearing, pertaining only to the three inmates whose material was taken from me. The other two statements I saved in case a grievance needed to be filed.

Nonetheless, I was found guilty, and accordingly, I filed a grievance dated August 18, 2005. (I have included a copy for you) The grievance has not been answered yet by any counselor, and, I filed it prior to your return from maternity leave. As you can see, attached to the grievance are statements from Walter Mabne, Daniel Escobedo, Jeffrey Estrada, Marvin Greer, Tyrone Powells, and Shad Hammond. I retained copies of the original statements.

On October 2, 2005, Officer Watkins conducted a search of my room, and during which, confiscated the statements. I told him after the search that those were my originals which are appended to a grievance that I filed with this institution that has yet to be answered. I even showed him a copy of the August 18th grievance with all its attachments. Officer Watkins did not appear to me to care, which is another matter.

Unfortunately, I have little confidence that the Committee will investigate this defense, and I turn to you as a witness to verify to the Committee

2

that the statements are in use supporting a
pending complaint.

   I also have an additional request outside of
the inmate's statements. Officer Watkins charged
me with Theft, claiming I stole 75 thick sheets
of paper from the printshop. This is wholly false.
Officer Watkins confiscated 9×12 Dick Blick
Drawing Paper which is sold in the inmate
commissary. I do not believe he knows that, and,
to my knowledge, the printshop does not manufacture
9×12 paper. It manufactures $8\frac{1}{2} \times 11$ and
$8\frac{1}{2} \times 14$ paper. Again, I do not have confidence
that the Committee will take the time to investigate
this, and this belief stems from prior experience.

   If you could be of any assistance, I
could definitely use it, and will be grateful.

                    Sincerely,

                    Steven P. Hibberd

           Steven P. Hibberd

                    3

# STATE OF ILLINOIS - DEPARTMENT OF CORRECTIONS

## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

**Name:** HIBBERD, STEVEN P    **IDOC Number:** B70027    **Race:** WHI

**Hearing Date/Time:** 10/6/05  12:22 PM    **Living Unit:** WIL-02-D-37    **Orientation Status:** N/A

**Incident Number:** 200503569/1 - WIL    **Status:** Final

| Date | Ticket # | Incident Officer | Location | Time |
|------|----------|------------------|----------|------|
| 10/2/05 | 200503569/1-WIL | WATKINS, JAMES A | R2 HOUSE D WING | 07:40 AM |

| Offense | Violation | Final Result |
|---------|-----------|--------------|
| 104 | Dangerous Contraband<br>Comments:pills/excess razors | Deleted |
| 203 | Drugs & Drug Paraphernalia<br>Comments:pills | Deleted |
| 305 | Theft<br>Reduced to : 404<br>Comments:IOM #60 | Guilty |
| 308 | Contraband/Unauthorized Property<br>Comments:thick paper/other inmates' paperwork | Guilty |

| Witness Type | Witness ID | Witness Name | Witness Status | |
|--------------|-----------|--------------|----------------|--|
| Staff | | GOINS, TARA | Testimony Would Be Irrelevant | Requested By Inmate |

**Statement:** Counselor Goins did not witness the shakedown nor confiscation items listed in the disciplinary report.

_Witness Interviewer Signature_    I attest to the statements as being a correct reflection of the statements provided to me by witnesses.

## RECORD OF PROCEEDINGS

DR504 charges read, inmate pled Not Guilty. "I'm a 2D wing porter. I'm in 2D37. These are documents I got at Dixon and I can have them. I got the paper from another inmate, they sell it on commissary. The pills and razors and food were my cellie's.
Inmate submitted written statement.

## BASIS FOR DECISION

I/M was positively identified by his IDOC ID card and was assigned to R2D37 where contraband was found.
Inmate admits to having other inmates' documents and receiving paper from another inmate.
C/O Watkins' DC7205 reflects during a routine shakedown of cell 2D37 he found five documents containing legal material from five other inmates and also 75 thick sheets of paper stolen from the print shop.
Inmate did not produce any commissary receipt showing he purchased the paper from commissary.
I/M Hibberd's written statement that contained documents pertaining to other inmates including an ARB decision from another inmate, and inmate admits in his written statement that he received the thick paper from other inmates. Inmate submitted DR430.30, but Inmate Hibberd is not permitted to assist other inmates with legal work as this is not consistent with institutional security as he is assigned as a porter, not a legal assistant in the law library.
Prior tickets for Contraband or trade/traffic on 7/25/05, 1/9/05, 10/14/04, 9/28/04.

## DISCIPLINARY ACTION  (Consecutive to any priors)

| RECOMMENDED | FINAL |
|-------------|-------|
| 1 Months C Grade<br>Other : Dispose of Contra per DR501C | 1 Months C Grade<br>Other : Dispose of Contra per DR501C |

**Basis for Discipline:** Seriousness of Offense

## Signatures
### Hearing Committee

VINCENT, JULIA I - Chair Person    Signature    10/06/05 Date    ASN Race

un Date: 10/13/05 07:42:00

# STATE OF ILLINOIS DEPARTMENT OF CORRECTIONS

## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

**Name:** HIBBERD, STEVEN P      **IDOC Number:** B70027      **Race:** WHI

**Hearing Date/Time:** 10/6/05   12:22 PM      **Living Unit:** WIL-02-D-37      **Orientation Status:** N/A

**Incident Number:** 200503569/1 - WIL      **Status:** Final

---

## Signatures
### Hearing Committee

| | | | |
|---|---|---|---|
| ASHBY, FORREST J | *LT, A___* | 10/06/05 | BLK |
| | Signature | Date | Race |

Recommended Action Approved

---

**Final Comments:** N/A

---

TERRY L POLK / TLP   10/12/05           10/12/05

**Chief Administrative Officer**        Signature        Date

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504: Subpart F.

                                    10/20/15   3ᵂ p

**Employee Serving Copy to Committed Person**        **When Served - - Date and Time**

---