## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| STEVEN P. HIBBERD, #B-70027, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 07-3131 |
| | ) | |
| JOSEPH JENNINGS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NOW COME the Defendants, ROGER WALKER, JR., FORREST ASHBY, JOSEPH JENNINGS, JULIA VINCENT, PHILIP CRARY, JAMES WATKINS, ROGER ZIMMERMAN and PHILLIP POOL, by and through their attorney, Lisa Madigan, Attorney General for the State of Illinois, and in support of their Motion for Summary Judgment, state as follows:

## INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. §1983 for alleged violations of his civil rights while he was incarcerated at Western Illinois Correctional Center "Western").  Specifically, Plaintiff alleges that Defendants violated his right of access to the courts, his due process and free speech rights, and that they retaliated against him for filing a previous lawsuit and doing legal work for other inmates.  On July 25, 2005, Plaintiff, who was assigned as a janitor, was found to be in possession of legal materials belonging to several other inmates for whom he was doing legal work.  He was written a disciplinary report, found guilty and was demoted to C-grade for a month.  Two months later, Plaintiff was disciplined again for possessing other inmates' legal documents, and he was demoted to C-grade again for a month.

Plaintiff seeks compensatory and punitive damages on all claims and injunctive relief in the form of an order expunging the disciplinary actions at issue in this case. Defendants deny that they violated Plaintiff's constitutional rights and that Plaintiff is entitled to any relief.

## MATERIAL FACTS CLAIMED TO BE UNDISPUTED

1.      At all times relevant to this case, Plaintiff was incarcerated at Western. (Complaint.)

2.      At all times relevant to this case, Defendant Walker was Director of the Illinois Department of Corrections.  (Complaint; Affidavit of Roger E. Walker, para. 1, attached hereto as Ex. B.)

3.      At all times relevant to this case, Defendant Zimmerman was Warden at Western.  (Affidavit of Roger Zimmerman, para. 1, attached hereto as Ex. C.)

4.      At all times relevant to this case, Defendant Ashby was a member of the Adjustment Committee at Western.  (Affidavit of Forrest Ashby, para. 1, attached hereto as Ex. D.)

5.      At all times relevant to this case, Defendant Jennings was a Correctional Officer assigned to Western's Intelligence unit.  (Affidavit of Joseph Jennings, para. 1, attached hereto as Ex. E.)

6.      At all times relevant to this case, Defendant Vincent was a member of the Adjustment Committee at Western.  (Affidavit of Julia Vincent, para. 1, attached hereto as Ex. F.)

7.      At all times relevant to this case, Defendant Crary was a Correctional Officer assigned to Western's Internal Affairs unit.  (Affidavit of Philip Crary, para. 1, attached hereto as Ex. G.)

8.    At all times relevant to this case, Defendant Watkins was a Correctional Officer at Western.  (Affidavit of James Watkins, para. 1, attached hereto as Ex. H.)

9.    At all times relevant to this case, Defendant Pool was a member of the Adjustment Committee at Western.  (Affidavit of Phillip Pool, para. 1, attached hereto as Ex. I.)

10.    At all times relevant to this case, Defendants acted of color of state law.

11.    At all times relevant to this case, Plaintiff's job assignment was as a wing porter. (Ex. E, para. 7;.Ex. G, para. 7.)

12.    Plaintiff was transferred to Western on November 4, 2004, after he was disciplined for having his mother mail money to another inmate.  (Affidavit of Steven Hibberd, p. 9, relevant pages of which are attached hereto as Ex. A; Ex. D, para. 9.)

13.    In that ticket, Plaintiff was also found to have had outside sources send money to unidentified inmates so that they could buy commissary items for him.  (Ex. D, para. 9; Ex. D3.)

14.    While at Western, Plaintiff did legal work for other inmates.  (Complaint, Ex. A, p. 12-4.)

15.    Prison rules allow inmates to assist each other with their legal work to the extent consistent with institutional security.  (20 Ill. Admin. Code 430.30, a courtesy copy of which is attached hereto as Ex. M.)

16.    However, prison rules prohibit an inmate from possessing another inmate's legal property.  (Ex. C, para. 6; Ex. E, para. 6; Ex. H, para. 5; Offense Numbers and Definitions, attached hereto as Ex. L, Rule 308.)

17.    This prohibition helps prevent inmates from bartering legal services for contraband.  Allowing inmates to barter goods and services makes it harder to enforce

the Department's contraband rules and creates security concerns when one inmate owes another inmate something.  (Ex. C, para. 6; Ex. E, para. 6.)

18.    Prison rules also prohibit inmates from possessing another inmate's personal information, including inmates number.  (Ex. C, para. 7, Ex. L, Rule 211.)

19.    Possession of another inmate's inmate number would allow him to steal money or charge commissary purchases from the other inmate's trust account.  (Ex. C, para. 7.)

20.    On July 25, 2005, Plaintiff had in his possession legal documents belonging to several other inmates when he went to the law library.  (Ex. A, p. 10; Ex. E, para, 5 ; Ex. G, para. 5.)

21.    Defendants Jennings and Crary found these documents during a routine search of Plaintiff.  (Ex. A, p. 10; Ex. E, para. 4; Ex. G, para. 4.)

22.    Inmates are commonly searched on their way into the law library because it is one of only a few places where inmates from all four wings come together, and it is common for inmates to pass contraband there.  (Ex. E, para. 4; Ex. G, para. 4.)

23.    After Plaintiff was found with other inmates' legal property, his cell was searched, and more legal materials belonging to another inmate was found.  (Ex. A, p. 11; Ex. G, para. 8; Ex G, para. 9.)

24.    The documents belong to Inmates Walter Malone, Jeffrey Estrada, Marvin Greer and Daniel Escobedo.  (Ex. A, p. 13.)

25.    Plaintiff had the other inmates' legal property because he was helping them with their legal matters.  He was not using them to help him with his own legal matters.  (Ex. A, p. 12.)

26.    Plaintiff concedes he had had their documents for a few days when he was found with them.  (Ex. A, p. 13.)

27.    Plaintiff said he had brought them with him to the law library because he planned to return them to the inmates there.  (Ex. A, p. 13.)

28.    This was Plaintiff's arranged meeting place for accepting or returning other inmates' legal documents.  (Ex. A, p. 14.)

29.    Defendant Jennings wrote Plaintiff a disciplinary report charging Plaintiff with contraband/unauthorized property and possession or solicitation of unauthorized personal information.  (Ex. D1; Ex. E, para. 9; Ex. G, para. 10.)

30.    Plaintiff was served with the ticket on July 25, 2005.  (Ex. D1.)

31.    Defendants Pool and Ashby held an Adjustment Committee hearing on July 29, 2009.  At the hearing, Plaintiff requested no witnesses, and he admitted that he was assigned as a porter and that he was in possession of other inmates' legal materials.  (Ex. D, para. 4; Ex. D1; Ex. I, para. 4.)

32.    The Adjustment Committee found Plaintiff guilty of both charges, based on Plaintiff's admission that he was assigned as a wing porter, and his admission that he had other inmates' legal materials.  (Ex. D, para. 4; Ex. D1; Ex. I, para. 4.)

33.    The Adjustment Committee's only recommendation for discipline was that Plaintiff's grade status be reduced to C-grade for one month.  (Ex. D, para. 4; Ex. D1; Ex. I, para. 4.)

34.    The Adjustment Committee also recommended that the contraband be disposed of in accordance with DR 501C, which gives the owner the opportunity to determine whether it will be destroyed or sent out of the institution.  (Ex. D, para. 4; Ex. D1; Ex. I, para. 4.)

35.    Warden Polk concurred in the recommendation.  (Ex. C, para. 4; Ex. D1.)

36.     After Plaintiff was served with the ticket, he obtained from the four inmates whose legal property he had affidavits in which he states that the inmates had given Plaintiff their legal documents.  (Ex. A, p. 17-8.)

37.     Plaintiff attached those affidavits to a grievance dated August 18, 2005, which is attached to Plaintiff's Complaint.  (Complaint; Ex. A, p. 17-18.)

38.     Plaintiff alleges that the Adjustment Committee refused to look at the affidavits. (Ex. A, p. 18.)

39.     Although Defendants Ashby and Pool do not recall whether Plaintiff submitted these affidavits to the Adjustment Committee, they would reinforce Plaintiff's admissions that he was in possession of other inmates' legal property.  (Ex. D, para. 5; Ex. I, para. 5.)

40.     Defendants' actions were taken solely because they believed Plaintiff had violated Department contraband rules, and they would have been taken regardless of any legal actions taken by Plaintiff.  (Ex. D, para. 4-5; Ex. E, para. 11; Ex. G, para. 13; Ex. I, para. 4-5.)

41.     On October 2, 2005, Defendant Watkins conducted a random search of Plaintiff's cell.  (Ex. H, para. 4.)

42.     During the search, Defendant Watkins noticed some legal documents that bore other inmates' names and inmate numbers, and approximately 75 sheets of paper believed to be stolen from the print shop, as well as some other contraband.  (Ex. H, para. 4.)

43.     After checking with his cellhouse sergeant, Defendant Watkins wrote Plaintiff a shakedown slip and a disciplinary report  charging him with dangerous contraband, drug and drug paraphernalia, theft and contraband/unauthorized property.  (Ex. H, para. 7, 8.)

44.    Although the pills, razors and food were found in Plaintiff's cellmate's property box, it is common to charge both cellmates with possession of the contraband until ownership can be determined.  (Ex. H, para. 8.)

45.    Plaintiff was served with the ticket on October 2, 2005.  (Ex. D4.)

46.    Defendants Vincent and Ashby were members of the Adjustment Committee that heard the ticket on October 6, 2005.  (Ex. D, para. 7; Ex. F, para. 4.)

47.    Plaintiff requested one witness, Counselor Tara Goins, whose testimony the Adjustment Committee determined was not relevant, since she did not witness the shakedown or confiscate the items in question.  (Ex. D4.)

48.    At the hearing, Plaintiff pleaded not guilty, and stated that he was a 2D wing porter, that he was allowed to have the other inmates' legal documents because he had obtained them at Dixon Correctional Center.  He also stated that he had obtained the 75 sheets of paper from another inmate, and that the pills, razors and food belonged to his cellmate.  (Ex. D, para. 7; Ex. D4; Ex. F, para. 4.)

49.    The Adjustment Committee deleted the dangerous contraband and drug charges. (Ex. D, para. 8; Ex. F, para. 5.)

50.    Plaintiff was found guilty of contraband/unauthorized property, and the theft charge was reduced to violation of rules, specifically Rule 60 of the Inmate Orientation Manual.  (Ex. D, para. 8; Ex. F, para. 5.)

51.    Rule 60 prohibits inmates from giving, loaning, trading or receiving anything from another offender.  (*See* Rule 60, attached hereto as Ex. D2.)

52.    The Adjustment Committee's only recommendation for discipline was that Plaintiff's grade status be reduced to C-grade for one month.  (Ex. D, para. 8; Ex. D4; Ex. F, para. 5.)

53.    The Adjustment Committee also recommended that the contraband be disposed of in accordance with DR 501C.  (Ex. D, para. 8; Ex. D4; Ex. F, para. 5.)

54.    The decision was based on Plaintiff's admissions that he was assigned as a wing porter, and not as a legal assistant in the law library, that he had the documents in question, and that he obtained the thick paper from anther inmate.  The committee also noted that Plaintiff had numerous prior tickets for contraband or trading and trafficking. (Ex. D, para. 9; Ex. D4; Ex. F, para. 6.)

55.    Warden Polk concurred in the recommendation.  (Ex. C, para. 4; Ex. D4.)

56.    Defendants' actions were taken solely because they believed Plaintiff had violated Department contraband rules, and they would have been taken regardless of any legal actions taken by Plaintiff.  (Ex. D, para. 4-5; Ex. E, para. 11; Ex. F, para. 6; Ex. H, para. 9.)

57.    The guilty findings on these two tickets still stand; neither has been overturned. (Ex. A, p. 20.)

58.    Plaintiff alleges that the July 25, 2005, ticket was issued in retaliation for a lawsuit he had filed in the Northern District,  *Hibberd v. Walker, et al.*, 05-50080.  (Complaint.)

59.    That lawsuit addressed events that allegedly occurred at Dixon Correctional Center, and named as defendants Assistant Warden Trancoso and Lt. Rick Sambdman, both Dixon employees.  (*See* First Amended Complaint, attached hereto as Ex. J.)

60.    Plaintiff believes Defendants in the previous case were served with summons just days before the July 25, 2005, confiscation of the documents.  (Ex. A, p. 16.)

61.    The only Defendant in this case who was named as a Defendant in the previous case is Defendant Walker.  (Ex. K; PACER from 05-50080, attached hereto as Ex. L.)

62.    However, Defendant Walker was never served, and in fact, summons was never issued as to him.  (Ex. L.)

63.    The Northern District ordered summonses to issue for the two defendants at Dixon in that case on July 19, 2005, but the executed waivers were not returned until August 12, 2005.  (Ex. L, Doc. 9.)

64.    The Defendants in this case were not aware of the prior lawsuit until they were served with this one.  (Ex. C, para. 9; Ex. D, para. 13; Ex. E, para. 14; Ex. F, para. 10; Ex. G, para. 14; Ex. H, para. 12; Ex. I, para. 9.)

65.    Plaintiff concedes the confiscation of his documents did not hurt his previously filed case.   (Ex. A, p. 17.)

66.    He believes that the confiscation of the documents on the second ticket affected his ability to file the current lawsuit because the affidavits that he would use for evidence were confiscated.  (Ex. A, p. 18.)

67.    This lawsuit was filed on July 18, 2007.  (Complaint.)

68.    The affidavits in question are attached to his Complaint.  (Complaint.)

69.    The guilty findings on both tickets still stand because neither has been overturned.  (Ex. A, p. 20.)

70.    Plaintiff concedes he has no claim against Defendant Walker.  (Ex. A, p. 54.)

71.    Defendant Zimmerman had no involvement in either discipline, and Plaintiff has no evidence to the contrary.  (Ex. A, p. 51-2; Ex. C, para. 4.)

72.    The actions of Defendants Jennings, Crary and Watkins were taken solely because they believed Plaintiff had violated Department contraband rules, and they would have been taken regardless of any legal actions taken by Plaintiff.  (Ex. E, para. 11, 14; Ex. G, para. 13, 14; Ex. H, para. 9, 12.)

# APPLICABLE LAW

**A.    Personal Involvement**

Defendants in a suit brought pursuant to 42 U.S.C. 1983 can only be held liable for their own individual wrongdoing. *Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir. 1985). An individual satisfies this personal responsibility requirement if he fails to act with a deliberate or reckless disregard of the plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). Notifying prison officials in writing of alleged unconstitutional conditions of confinement does not make them personally liable for those conditions. *Id.*

**B.    Due Process**

In order to establish a due process violation, an inmate must demonstrate that the state deprived him of a protected liberty or property interest. *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000). A prisoner has no such protected interest in remaining in general population or in a particular grade level or in other privileges. *See Whitford v. Boglino*, 63 F.3d 527, 533 n.7 (7th Cir. 1995

Even if a protected liberty or property interest could be established, the minimum requirements necessary to satisfy the due process under the Fourteenth Amended only require that an inmate receive written notice of the charges against him, at least 24 hours to prepare a defense before a disciplinary hearing, and an impartial hearing board. *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2964 (1974). The purpose of the notice of the allegations is to allow the inmate to marshal the facts and prepare a defense. *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2964 (1974); *Northern v. Hanks*, 326 F.3d 909 (7th Cir. 2003). The inmate may also be allowed to present witnesses or documentary evidence at the discretion of the disciplinary committee, and there must be

a written statement by the finders of fact as to the evidence relied on and reasons for the disciplinary action. *Id.* Due process requirements are satisfied if *some* evidence supports the disciplinary board's decision. *Superintendent v. Hill*, 472 U.S. 445, 105 S. Ct. 2768 (1985). Moreover, a hearing before the Adjustment Committee terminates an officer's possible liability for the filing of a false disciplinary report. *Hanrahan v. Lane*, 747 F.2d 1137 (7th cir. 1984). Finally, prison disciplinary regulations do not confer on inmates any constitutionally-protected liberty interests. *Sandin v. Conner*, 515 U.S. 472 (1995). In other words, even if Department officials fail to follow their own rules, "[t]he Constitution does not compel states to follow their own laws." *Allison v. Snyder, et al.*, 332 F.3d 1076 (7th Cir. 2003).

## C.     Free Speech

Inmates retain only those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the prison system. *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also Turner v. Safley*, 482 U.S. 78, 95 (1987). When a prison regulation impinges on these rights, the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 42 U.S. 342, 349, 107 S. Ct. 2400, 2404 (1987), citing *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261 (1987). Such interests include inmate security and the proper allocation of limited prison resources. *See Id.*, at 348, 352-53; *Turne*r, 482 U.S. at 90. In applying this standard, the Court must give substantial deference to the prison administrators responsible for implementing and enforcing prison rules. *See Thornburgh v. Abbott*, 490 U.S. 401, 407-8, 109 S. Ct. 1874 (1989). Further, the U.S. Supreme Court has explicitly held that inmates have no legal right to provide legal assistance to other inmates. *Shaw v. Murphy*, 532 U.S. 223, 121 S. Ct. 1465 (2001). In that case, an inmate who provided legal assistance to his fellow prisoners in his capacity as an official inmate law clerk,

alleged that the discipline he received for sending another inmate a letter containing legal advice, violated his First Amendment rights, his right of access to the courts and due process rights. However, the Court concluded that *Turner* does not permit an increase in constitutional protection simply because legal advice is involved. In so holding, the Court noted that although "supervised inmate legal assistance programs may serve valuable ends, it is 'indisputable' that inmate law clerks are prisoners 'are sometimes a menace to prison discipline,'" and that inmates have an "acknowledged propensity . . . to abuse both the giving and the seeking of [legal] assistance. *Id.*, at 231, citing *Johnson v. Avery*, 393 U.S. 483, 488, 490, 89 S. C5. 747 (1969). The Court also noted that prisoners have used legal correspondence as a means for passing contraband and communicating instructions on how to manufacture drugs or weapons. *Id.* at 231.

### D.  Retaliation

It is well-established law that an act in retaliation for the exercise of a constitutionally protected right is actionable under §1983 even if the act, when taken for different reasons, would have been proper. *Buise v. Hudkins*, 584 F.2d 233, 229 (7th Cir. 1978). However, a bald allegation of the ultimate fact of retaliation is insufficient. *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985). To establish a retaliation claim, Plaintiff must establish first that he engaged in a constitutionally protected activity, and second, that engaging in that activity was a substantially motivating factor in the defendants' actions against him. *See Mt. Healthy City Sch. Dist. V. Doyle*, 429 U.S. 274, 97 S. Ct. 568, 50 L. Ed. 471 (1977); *Brookings v. Kolb*, 990 F.2d 308, 315 (7th Cir. 1993). If the Defendants establish that a legitimate reason existed for their actions and they would have taken the same actions regardless of whether the plaintiff engaged in the protected activity, then the plaintiff can prove retaliation only if he can show that the

legitimate reason for the allegedly retaliatory act is pretextual. *Mt. Healthy City Sch. Dist.*, 429 U.S. at 575.

### E.    Access to the Courts

In order to establish a cognizable claim for denial of the right of access to the courts, an inmate must show that the conduct of the defendant caused actual injury to a non-frivolous court case challenging his conditions of confinement or his conviction or sentence. *Lewis v. Casey*, 518 U.S. 343, 351 (1996.)  The injury, or "prejudice," element (which stems from the constitutional principle of standing) has long been required by the Seventh Circuit in its formulation of the claim.  *See Ortloff v. U.S.*, 335 F.3d 652, 656 (7th Cir. 2003) (must make specific allegations as to the prejudice suffered because of the defendants' conduct).  Moreover, to prove this alleged constitutional violation, a plaintiff must demonstrate that the alleged deprivation of his access to the courts was intentional and that the state's conduct was unreasonable. *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992); *Ortloff*, 335 F.3d at 656.

### F.    Injunctive Relief

A federal court can only grant injunctive relief when there is an ongoing violation of federal law.  *Green v. Mansour*, 474 U.S. 64, 71, 106 S. Ct. 423, 427 (1985).

### G.    Qualified Immunity

Government officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 102 S. Ct. 2727, 2738, 457 U.S. 817, 818 (1982).  To determine if an official is entitled to qualified immunity, a two part inquiry is required: (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right alleged to have been violated was clearly established.  *Saucier v. Katz*, 533 U.S.

194, 200, 121 S. Ct. 2151, 2155 (2001).  The second prong must be undertaken in light
of the specific context of the case, not as a broad general proposition.  *Id*. at U.S. 201,
S. Ct. 2156.  The relevant, dispositive inquiry in determining whether a right is clearly
established is whether it would be clear to a reasonable official that his conduct was
unlawful in the situation he confronted.  *Id*. at U.S. 202, S. Ct. 2156.  An official who
makes a reasonable mistake as to what the law requires is entitled to the defense of
qualified immunity.  *Id*. at U.S. 205, S. Ct. 2158.

## ARGUMENT

**A.    Defendants Walker and Zimmerman Were Not Personally Involved in the
       Alleged Constitutional Violations of Which Plaintiff Claims.**

Plaintiff alleges that his constitutional rights were violated by the confiscation of
legal materials belonging to other inmates and the resulting discipline.  However,
Plaintiff concedes that Defendant Walker had no involvement in the alleged
constitutional violations.  (Undisputed Fact 70.)  Further, Defendant Zimmerman was
not involved in either Disciplinary Action, and Plaintiff has no evidence to the contrary.
(Undisputed Fact 71.)  Because Plaintiff cannot establish that either Defendant Walker
or Zimmerman was personally involved in the alleged constitutional violations, both
Defendants are entitled to summary judgment in their favor.

**B.    Plaintiff Cannot Establish His Due Process Claims Because He Did Not
       Lose  Any Good Time and Because He Was Afforded All the Due Process
       To Which He Was Entitled.**

Plaintiff alleges that his due process rights were violated during the disciplinary
process associated with tickets he received on July 25, 2005, and October 2, 2005.   On
the first ticket, Plaintiff was disciplined after he was found in possession of legal
materials belonging to several other inmates whom he was helping with their legal work.
In the second ticket, he was disciplined after a random search of his cell turned up more

legal materials of other inmates.  He alleges Defendants Jennings and Watkins violated his due process rights by writing him the tickets and that Adjustment Committee members Ashby, Pool and Vincent violated his due process rights by finding him guilty of the offenses.  Specifically, he alleges that they should have found him not guilty because prison rules allow him to possess other inmates' legal property if he is doing legal work for them.  He also alleges that Defendants Ashby and Vincent improperly found him guilty of an offense with which he was not charged.

However, Plaintiff's due process rights were never implicated because he did not lose any good conduct credits as a result of either of these tickets.  Both tickets only cost Plaintiff a total of two months in C-grade.  (Undisputed Facts 33 and 52.)  Because Plaintiff only lost grade status for two months, his due process rights were never implicated.  Consequently, his due process claims must be dismissed.

Even if he could establish that his due process rights were implicated, they were not violated.

July 25, 2005, Ticket

Plaintiff received written notice of the charges in the July 25, 2005,  disciplinary report issued to him by Defendant Jennings on July 25, 2005, (Undisputed Facts 29, 30), and he had four days to prepare for his Adjustment Committee hearing. (Undisputed Facts 30, 31.)  Adjustment Committee members Ashby and Pool held the hearing on the ticket, at which Plaintiff requested no witnesses.  (Undisputed Fact 31.) However, he admitted that he was assigned as a porter, and that he was in possession of other inmates' legal materials.  (Undisputed Fact 31.)  Plaintiff was found guilty based on his admissions, and the committee provided Plaintiff with a written summary of the basis for its decision and the evidence relied on.  (Undisputed Fact 32.)  Obviously, there was more than the "some" evidence required to find him guilty.  Plaintiff alleges

that he should have been found not guilty because 20 Ill. Admin. Code 430.30

authorizes him to provide legal assistance to other inmates.  However, this section limits

such assistance to that which is "consistent with institutional security," and the

Department's security measures prohibit inmates from possessing the property of other

inmates, including legal property, and from possessing other inmates' personal

information, including inmate numbers.  (Undisputed Facts 15, 16, 18.)  It must also be

noted that because Plaintiff had a disciplinary hearing on the ticket, Defendant Jennings

cannot be held to have violated Plaintiff's due process rights.   Further, Defendants

Walker and Zimmerman had no involvement in the disciplinary action.  (Undisputed

Facts 70, 71.)  For these reasons, Defendants should be granted summary judgment on

this due process claim.

 October 2, 2005, Ticket

        Plaintiff was served with the second ticket on October 2, 2005, which gave him

four days to prepare for his Adjustment Committee hearing.  (Undisputed Facts 45, 46.)

Plaintiff requested a single witness, whose testimony was determined by the Adjustment

Committee to be irrelevant because she did not witness the shakedown or confiscate

the items in question.  (Undisputed Fact 47.)  Adjustment Committee Members Ashby

and Vincent found Plaintiff guilty of the contraband/unauthorized property charge based

on Plaintiff's admissions that he was a wing porter and that he had the documents in

question, and they provided Plaintiff with a written decision, which explained the basis

for their decision.  (Undisputed Facts 54.)  Additionally, based on Plaintiff's admission

that Plaintiff had obtained the 75 pages of paper from another inmate, the Adjustment

Committee found Plaintiff guilty of the offense of violating Rule 60 of the Inmate

Orientation Manual, which prohibits inmates from giving, loaning, trading or receiving

anything from another inmate.  (Undisputed Facts 50, 51.)  Plaintiff alleges this change

was improper.  However, the purpose of providing notice of the allegations is to allow
the inmate to marshal the facts and prepare a defense.   In this case, the allegations
were that he was in unauthorized possession of the paper that was believed to have
been stolen from the print shop.  The fact that his defense was, in essence, a
confession that he had obtained the paper he was not authorized to have by violating a
different rule, did not constitute a violation of Plaintiff's due process rights.

Additionally, Plaintiff's admissions provided Defendants Ashby and Vincent with
more than the "some" evidence needed to support their guilty finding.  The Adjustment
Committee also took note of Plaintiff's numerous prior tickets for contraband or trading
and trafficking, including one in which he was also found to have arranged payment for
his services by having outside sources send money to unidentified inmates so that they
could buy commissary items for him.  (Undisputed Facts 12, 13, 54.)  The Adjustment
Committee provided him with the basis for its decision and the evidence it relied on in its
summary.  (Undisputed Facts 50, 52.)

Moreover, because Plaintiff had a disciplinary hearing on the ticket, Defendants
Watkins cannot be held to have violated Plaintiff's due process rights.   Further,
Defendants Walker and Zimmerman had no involvement in the disciplinary action.
(Undisputed Facts 70, 71.)  For these reasons, Defendants should be granted summary
judgment on this due process claim.

Because Plaintiff received the due process protections afforded him under *Wolff*,
Defendants are entitled to summary judgment.

## C.    Defendants Did Not Violate Plaintiff's Free Speech Rights.

In this case, Plaintiff alleges that refusing to allow him to possess legal
documents of other inmates so he could provide legal assistance to them violates his
First Amendment free speech rights.  However, as an inmate, he is entitled only to

those First Amendment rights that are not inconsistent with the Department's legitimate

penological objectives, and allowing inmates to possess other inmates' legal property

creates security problems.  Although the Department's rules allow inmates to assist

each other, they are not allowed to possess other inmates' legal property because it

helps prevent them from bartering legal services for contraband.  Allowing inmates to do

so makes it harder to enforce the Department's security measures regarding

contraband and property rules.  Additionally, safety concerns arise when one inmate

owes another inmate something.  (Undisputed Fact 17.)  Inmates also are not allowed

to be in possession of other inmates' personal information, including inmate numbers.

This rule helps prevent inmates from stealing money or charging commissary purchases

from the other inmate's trust account.  (Undisputed Facts 18, 19.)  Because these rules

are reasonably related to legitimate penological interests, they are valid, and

Defendants should be granted summary judgment on Plaintiff's First Amendment claim.

**D.      Plaintiff Cannot Establish a Retaliation Claim Because Legitimate Reasons Existed for Defendants' Actions and Defendants Would have Taken the Same Actions Regardless of Plaintiff's Protected Activity.**

In this case, Plaintiff claims that Defendants Jennings, Crary and Watkins

confiscated from him other inmates' legal materials and wrote him disciplinary reports,

and that Defendants Ashby, Pool and Vincent found him guilty in retaliation for a lawsuit

he filed in the Northern District and because he performed legal services for other

inmates.

However, Plaintiff cannot establish that Plaintiff's actions were a substantially

motivating factor in the Defendants' actions.  First, none of the Defendants knew about

Plaintiff's previous lawsuit until they were served with this one.  (Undisputed Fact 64.)

This is supported not only by Defendants' assertions, but by the fact the previous

lawsuit dealt with employees and allegations at a different prison and that the only

Defendant common to both cases is Defendant Walker, and he was never ordered to be served in the Northern District case. (Undisputed Facts 61, 62.) Further, although Plaintiff believes that the Defendants in the previous case were served with summons just days before the July 25, 2005, incident, a review of PACER establishes that the waivers for the two Dixon Correctional Defendants were not executed until August 12, 2005. (Undisputed Facts 60, 63.)

More significantly, however, there were legitimate reasons for Defendants' actions. Defendants Jennings, Crary and Watkins confiscated the documents and wrote their tickets because Plaintiff was found to be in possession of other inmates' legal materials and personal information, which is a violation of Departmental rules. All three Defendants would have taken these actions regardless of any lawsuit filed by Plaintiff. (Undisputed Facts 29, 43, 72.) Defendants Ashby, Pool and Vincent found Plaintiff guilty and recommended discipline because they believed, based on Plaintiff's admissions, that Plaintiff had, in fact, violated the Department's rules against contraband. These Defendants would have taken these actions regardless of any lawsuits filed by Plaintiff. (Undisputed Facts 32, 40, 48, 50, 54, 56.)

Because there were legitimate bases for both of these disciplinary actions, Defendants are entitled to summary judgment.

**E.    Access to the Courts**

Plaintiff claims Defendants violated his right of access to the Courts because they confiscated legal documents that belonged to other inmates and which contained their personal information. However, Plaintiff cannot establish the confiscation caused an actual injury to a non-frivolous case challenging his conditions of confinement or his conviction or sentence. Plaintiff concedes that the confiscation of these documents did not prejudice the lawsuit he filed in *Hibberd v. Walker, at al.*, 05-50080. (Undisputed

Fact 65.)  And although he alleges that the confiscation of the documents prejudiced his ability to prosecute his current case with this Court, he clearly was able to file this lawsuit, and he attached to his Complaint the affidavits that he claims were confiscated. (Undisputed Facts 67, 68.)  Further, Plaintiff has never complained to the Court or to defense counsel about his inability to file something because documents had been confiscated.  Because Plaintiff cannot establish  that he was prejudiced in a non-frivolous lawsuit due to the confiscation of the documents in question, Defendants are entitled to summary judgment on the access to the courts issue.

**F.    Plaintiff is Not Entitled to Injunctive Relief**.

Plaintiff asks this Court to expunge the discipline associated with the two tickets that were issued four years ago when he was at another institution and that resulted in a total of two months in C-grade.  In other words, the discipline is long over and the time in C-grade cannot be restored.  Consequently, Plaintiff cannot establish the requisite ongoing constitutional violation, and Plaintiff is not entitled to injunctive relief.

**G.    Defendants Are Entitled To Qualified Immunity.**

Plaintiff alleges that Defendants violated his constitutional rights by confiscating from him legal materials that he had in his possession that belonged to other inmates whose legal work he was doing and by disciplining him for possessing those documents.  However, existing case law at the time held that prison officials do not violate an official law clerk's constitutional rights when they prohibit him from providing legal assistance to other inmates.  Nothing in the case law would have put Defendants on notice that they violated the constitutional rights of an inmate janitor who violated the Department's contraband rules to provide legal assistance to other inmates.  In the absence of any such case law and to the extent that this Court rules that Defendants

can be held liable for such actions, this would represent announcement of new law and

the Defendants are entitled to qualified immunity.

Wherefore, Defendants pray this Honorable Court grant them Summary

Judgment herein.

Respectfully submitted,

ROGER WALKER, JR., FORREST ASHBY,
JOSEPH JENNINGS, JULIA VINCENT, PHILIP CRARY,
JAMES WATKINS, ROGER ZIMMERMAN
 and PHILLIP POOL,

Defendants,

LISA MADIGAN, Attorney General,
State of Illinois,

    s/ Heidi Hildebrand
Heidi Hildebrand,  #6270905
Assistant Attorney General
500 South Second Street
Springfield, IL   62706
Phone: (217) 782-9056
Fax: (217) 782 -8767
E-Mail: hhildebrand@atg.state.il.us

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| STEVEN P. HIBBERD, #B-70027, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 07-3131 |
| | ) | |
| JOSEPH JENNINGS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2009, I electronically filed Defendants'

Memorandum in Support of Motion for Summary Judgment, with the Clerk of the Court

using the CM/ECF system which will send notification of such filing to the following:

and I hereby certify that on September 8, 2009, I mailed by United States Postal

Service, the document to the following non-registered participant:

Steven P. Hibberd, #B-70027
Taylorville Correctional Center
Route 29 South
PO Box 900
Taylorville, Illinois 62568


Respectfully submitted,

  s/ Heidi Hildebrand
Heidi Hildebrand,  #6270905
Assistant Attorney General
500 South Second Street
Springfield, IL   62706
Phone: (217) 782-9056
Fax: (217) 782 -8767
E-Mail: hhildebrand@atg.state.il.us