IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

STEVEN HIBBERD, #B-70027,          )
                                   )
          Plaintiff,               )
                                   )
     vs.                           )     No. 07-3131
                                   )
JOSEPH JENNINGS, et al.,           )
                                   )
          Defendants.              )

          Deposition of Steven Hibberd, taken at the

instance of the Defendants, on March 27, 2009, scheduled

for the hour of 10:00 A.M., at the Taylorville

Correctional Center, Taylorville, Illinois, before Cynthia

M. Smith, Certified Shorthand Reporter and Notary Public,

pursuant to the stipulation attached hereto.

GOLEMBECK REPORTING SERVICE
Connie S. Golembeck, Owner
(217) 523-8244
(217) 632-8244



9

1    Western?

2          A    November of 2004.

3          Q    Okay.

4          A    I think the 4th.

5          Q    Okay.  Do you know why you were transferred to

6    Western?

7          A    It was a disciplinary transfer from Dixon.

8          Q    Do you recall what the discipline was for?

9          A    I was having my mother mail in money to another

10    inmate.  Transfer of funds.

11          Q    Okay.  And how long were you at Western before

12    you had any problems, anything to complain about

13    essentially?

14          A    Well, until July of -- July of 2005 when -- the

15    first disciplinary report in this lawsuit.

16          Q    Okay.  What was your relationship like with any

17    of the defendants before July of 2005?

18          A    I did not have any issue with any of the

19    defendants before that time.  I really didn't have any

20    interaction with them except for Officer Watkins and he

21    was our wing officer.  And up until that point there was

22    not any -- there wasn't any problem.

23          Q    Okay.

24          A    Our communication was very cordial and ordinary.

10

1    There wasn't an issue.

2        Q    Okay.  And then in July of 2005 -- I mean I'm

3    gonna' ask you a bunch of questions.  I have read your

4    complaint, but I want you to explain that.

5        A    Okay.  I understand.

6        Q    Tell me what happened in July of 2005.

7        A    Oh, I had other inmates' legal work.  And I was

8    attending the law library that day.  And I'm walking into

9    the library.  And, when I get into the library, the

10   Library's Section 2 Internal Affairs officers -- I

11   believed they were Internal Affairs at the time, but one

12   was -- one was just an intelligence officer.  I have since

13   learned that Officer Jennings and Officer Crary came to

14   the library and said he was gonna' search me, do a pat

15   down search.

16            And it's not really out of the ordinary.  It's

17   not unusual to be patted down.  So they patted me down.

18   And he went through my legal file that I had and pulled

19   out other inmates' legal material.  He pulled out case law

20   that I had.  He inquired into the case law first.  And

21   they -- I don't think that they quite understood what it

22   was.  And I -- and I had to explain it to them.  But then

23   they pulled out Appellate briefs belonging to other

24   inmates and transcripts and other memorandum of law.

1         They asked me why I had them because they

2    weren't mine.  And I told them that I was helping these

3    guys on their cases.  And they told me I couldn't have

4    'em.  So they ended up telling me that I was going to

5    receive a disciplinary report for it.  And they weren't

6    quite sure of the charges at the time.  And they left the

7    library.

8         They came back about 40 minutes later after

9    shaking down my room.  And they had more legal material

10   belonging to one of the inmates that I was helping.  And

11   they -- that inmate was -- they walked into the library

12   with me.

13        Q    Okay.  That was Malone?

14        A    Mr. Walter Malone.

15        Q    Okay.

16        A    And they gave his material back to him.  They

17   told me it's July 25th, you can't have any other inmates

18   name, number or legal documents.  And they declared to the

19   other inmate that Mr. Hibberd thinks that he is an

20   attorney, but he is not, don't give these to him again.

21        Q    Okay.  I want to go over some of the stuff that

22   you said.

23        A    Okay.

24        Q    They shook you down in the library?

12

1    A    Yes.

2    Q    Inside the library?

3    A    Yes.   They shook me down inside the library.

4    Q    Did they pat down anyone else in the library?

5    A    Yes, ma'am, they did.

6    Q    So this was a routine thing?

7    A    I didn't think anything was unusual because

8  anywhere you go at Western -- it's a particularly punitive

9  institution.   So you can expect to be patted down or

10  searched a lot more often.   So it's not unusual.

11    Q    So -- and when you said you had legal documents,

12  you said it was transcripts and case law?

13    A    (Nods affirmatively.)

14    Q    These were -- were these -- these were not

15  things that you were using from other inmates for your own

16  legal --

17    A    No.   Absolutely not.

18    Q    -- legal documents?

19    A    No.

20    Q    You were doing their legal work?

21    A    I was -- yes, I was doing their legal work.   But

22  I do want to be clear here, though.   To say I was doing

23  that -- I recall legal work generally.   It was just me

24  reading the documents and them getting my opinion --

13

1      Q    Okay.

2      A    -- or interpreting letters that they were

3  getting from the court or from their attorney or going

4  through actual petitions or motions.  Just so you know.

5      Q    Okay.  And were these all belonging to Mr.

6  Malone?

7      A    No.  The documents belonged to Walter Malone --

8      Q    Uh-huh.

9      A    -- Jeffrey Estrada, Marvin Greer --

10     Q    Okay.

11     A    -- and Daniel Escobedo.

12     Q    Okay.

13     A    I think that's -- that those were the ones that

14  I had at the time.

15     Q    And do you recall how long you had those

16  documents?

17     A    No.  Certainly for a few days.

18     Q    Okay.  They weren't things that were handed to

19  you in the library or on the way to the library?

20     A    As a matter of fact, I was actually going to

21  return 'em to the guys at the time.  That's why I had 'em

22  on me at the time.  Mr. Malone was with me.  Estrada I

23  believe was in the library that day.  And Escobedo was

24  either there or he was supposed to be there.  I don't

1    recall.

2        Q    How do you know he was supposed to be there?

3        A    It's a prior meeting place where I return the

4    documents or I would accept them.

5        Q    Where you would arrange to meet them there?

6        A    Yes.  Prior.

7            You can't give -- I wouldn't accept stuff in the

8    yard or any other place other than the library.

9        Q    Okay.

10       A    Because the yard is not exactly to me a mutual

11   meeting place or something like that.  It doesn't look

12   right.  So I would much rather do it in the library.

13       Q    Okay.  So your -- your allegation about access

14   to the courts --

15       A    Yes.

16       Q    -- is not that you -- that you were prevented

17   from doing your own legal work, but that you were

18   prevented from doing other people's legal work; is that

19   correct?

20       A    Both.

21       Q    Okay.

22       A    The allegation is that I was prevented from

23   assisting other inmates with their legal work.

24       Q    Uh-huh.

1       A    But the access to court issue, if I'm correct,

2    it goes deeper because at the time I was litigating

3    another Civil Rights action against the Department of

4    Corrections.  And the allegations also involve me

5    defending myself in a disciplinary hearing and filing a

6    grievance to challenge the disciplinary hearing results.

7    And while I'm seeking access to the courts through those

8    processes being retaliated against by issuing these

9    disciplinary reports.

10       Q    Okay.

11       A    So --

12       Q    Well, let's -- and I'm not clear.

13       A    Okay.

14       Q    And I understand that yes, part of your claim is

15    that you should be allowed to do other inmates' legal

16    work --

17       A    Sure.

18       Q    -- but I want to focus on --

19       A    I understand.

20       Q    -- on the claim about your legal work.

21       A    Okay.

22       Q    You said that you had an -- a lawsuit pending?

23       A    Yes, ma'am.

24       Q    Are you alleging that you were -- I can't even

16

1    think of the word -- that you had a problem with that case

2    because of any of the defendant's actions?

3        A    I do not have a problem with that case.  I don't

4    think I had a problem with that case.

5        Q    Okay.

6        A    You know the timing of Officer Jennings and

7    Officer Crary's actions was very suspect coupled with

8    words that they said to me during the course of the shake

9    down.

10        Q    Okay.

11        A    It was simply like this.  Just a few days prior

12    the Department of Corrections officials were served with a

13    summons in the case.

14        Q    Okay.

15        A    I think that was a Friday.  The facts are in the

16    complaint.  I know that.

17        Q    Right.

18        A    It's been two years since --

19        Q    Sure.  And we will get to the retaliation claim.

20    I'm -- I'm not trying to avoid this.  I think that this is

21    the easiest claim to deal with first.

22        A    Okay.  On that note then --

23        Q    Yes.

24        A    -- did it affect the case?  It did not affect

17

1    the case.

2         Q    So you weren't prejudiced in your existing

3    lawsuit?

4         A    I absolutely was not prejudiced.

5         Q    Okay.  But you are saying, also, though that the

6    other ticket that you were written --

7         A    Yes.

8         Q    -- for -- strike that.

9              The other ticket that you were written for

10   possessing what you said were affidavits --

11        A    Yes.

12        Q    -- you are saying that, that part of it affected

13   your ability to litigate that claim?

14        A    I believe so, yes.

15        Q    Okay.  And tell me about that.

16        A    Oh, this is actually tied into the first

17   disciplinary report.

18        Q    Sure.

19        A    After I received the first disciplinary report,

20   which is the July 25 one, Officer Jennings -- I asked

21   those inmates that I was assisting if I can get statements

22   from them to support my defense.  Mainly that the

23   documents were publicly available.  They gave 'em to me.

24   I was authorized to have 'em through them.  And when I

18

1    went and heard my ticket on that, I presented those

2    documents, those statements, the affidavits from the

3    inmates.  The committee didn't have any use for 'em.  They

4    tried to return 'em to me.

5        Q    Okay.

6        A    So I attached 'em to my grievance on that ticket

7    on the July 25th disciplinary report.  When I attached

8    them to the grievance, that was pended for a few months.

9    I didn't get a response back on it.

10            Well, in October while that grievance was still

11    pending, during a shake down, they confiscated the

12    original statements that were attached to the grievance

13    and said I couldn't have 'em.  Officer Watkins actually

14    said that I could keep copies, but I can't have the

15    originals.  I didn't quite understand that.  So I just

16    left it alone.

17            But -- and my contention is -- is you have just

18    took 'em from me supporting my claim that I've already

19    turned over to the administration.  You took evidence from

20    me to support my claims of the disciplinary report and

21    that implicates staff misconduct which leads into their

22    supporting the retaliation issue that I put in, in my

23    grievance.  And I'm being penalized essentially I feel for

24    garnering evidence to support my complaints.

19

1        Q    Okay.  And that was what led to this lawsuit?

2        A    Yes.

3        Q    So were you able to file this lawsuit?

4        A    Yes, ma'am.

5        Q    Okay.  Let me go back and ask on the first

6    ticket in the library --

7        A    Okay.

8        Q    -- from the library on the 25th --

9        A    Okay.

10       Q    -- what exactly did the -- what were you told

11   about the documents that -- I'm sorry.  I think that you

12   testified that you were told that you couldn't have

13   inmates' names and inmates' numbers and personal

14   information --

15       A    Yes.

16       Q    -- and legal property?

17       A    Yes.  Legal documents.

18       Q    Of other inmates?

19       A    Of other inmates, yes.

20       Q    I meant to ask you also about when you said that

21   you had previous trading and trafficking tickets?

22       A    Yes.

23       Q    What were you accused of trading and

24   trafficking?

20

1        A   I don't really remember.  I know it's on my

2  record in the master file.  I know that.

3        Q   Do you remember when you got it or what

4  institution you were at when you got it?

5        A   Probably Centralia and Dixon.  No.  Probably

6  Centralia and Dixon.  I don't recall.  It's been several

7  years.  It's been quite awhile actually.

8        Q   Okay.  So you got these two tickets and you were

9  found guilty of both?

10       A   Yes.

11       Q   Okay.

12       A   I'm sure I was.  Let's put it this way.  I'm

13  sure I was.

14       Q   Okay.  And do both of those guilty findings

15  still stand?

16       A   Well, they are on my record I'm sure.  Let's put

17  it that way.

18       Q   They didn't get overturned?

19       A   No.  They were never overturned.

20       Q   Okay.

21       A   I probably didn't grieve 'em either.  So that's

22  probably why they didn't overturn 'em.

23       Q   You didn't grieve --

24       A   I probably did not grieve the guilty findings.

51

1      A      He presided over the first disciplinary report,

2      the July 25th one.

3      Q      Okay.

4      A      And insofar as the exact claims that I have

5      against Lieutenant Ashby with regards to the July the 25th

6      report, that's -- I mean it's the same exact -- he heard

7      my defense.

8      Q      He should have found you not guilty?

9      A      I believe that he should have found me not

10     guilty.  He didn't put the evidence that I submitted in

11     the final summary report exactly the same as I have

12     against Lieutenant Ashby for the July the 25th report.

13     Q      What about Warden Zimmerman?

14     A      He is the warden.  He approves the policies and

15     actions of his officers.  And I believe that he may not be

16     aware of everything that goes on in the institution.  I

17     believe that he is aware of some of the things.  And I

18     know that I am not the first inmate that's been charged

19     with possessing other inmates' legal work to assist them.

20     You have known jailhouse litigators.  So I believe that

21     Warden Zimmerman had knowledge of what was going on and he

22     allowed it to transpire.

23     Q      How do you know that he knew that you did other

24     inmates' legal work and had their property?

52

1        A    I don't have actual constructive knowledge.   It

2    is my belief from his position and knowing that other

3    inmates have been charged with this, that I would assume

4    that he would know what goes on in his institution.   Not

5    every micro confrontation with officers he is going to

6    know about.   Not every issue he is going to know about.

7    He is not going to know every single thing that goes on,

8    but I think that for the most part he is going to know

9    when there is a broad implementation of rules against

10    inmates for a certain form of misconduct.

11        Q    Okay.

12        A    And that's my premise with Zimmerman.

13        Q    And you said that you know other inmates --

14        A    Yes.

15        Q    -- who were in possession of other inmates'

16    legal property --

17        A    Yes.

18        Q    -- were charged with --

19        A    Yes.

20        Q    -- that -- with violating prison rules?

21        A    Yes.

22        Q    Okay.   Do you know who those are?

23        A    I know one --

24        Q    Okay.

53

1        A    -- for sure right now.  I actually have a copy

2    of his report if you would like to see it.

3        Q    Sure.

4        A    His name is Miles Barnes (phonetic).  He was an

5    inmate at Western, also.  I have the document here.  This

6    consists of three pages.  The disciplinary report is the

7    first page.  The shake down receipt is the second page.

8    And the final summary report from the hearing is the third

9    page.

10       Q    There were five dates before you got your ticket?

11       A    Can I see the date, please?

12                               (At which time, said document

13                               was reviewed by the deponent.)

14       A    No.

15       Q    Yours was on --

16       A    Mine was on July the 25th of '05.  His was on

17   April the 20th of that same year.

18       Q    Sorry.  I'm way off.

19       A    That's okay.

20                               (At which time, said document

21                               was reviewed by the deponent.)

22       Q    Okay.  Thanks.

23            Is there anything else against Warden Zimmerman?

24       A    No.  Nothing more that's against Warden

54

1    Zimmerman.

2        Q    And that leaves Roger Walker.  What did he do

3    wrong?

4        A    It's -- well --

5                           (Pause.)

6        Q    That's okay.  Take your time.

7        A    I'm sorry.  I will be fair.  I don't think

8    Walker is liable whatsoever.  I received his

9    interrogatories.  He said that he didn't have any contact

10   with the Attorney General or anybody else.  He was never

11   contacted in the prior lawsuit.  So you know I think it's

12   genuine.  I don't think that he had anything to do with

13   it.

14       Q    Okay.

15       A    It would fall more under respondeat superior.

16   And that doesn't apply in this context.

17       Q    Right.

18       A    So I don't think that --

19       Q    So you don't have a claim against the director?

20       A    No, I don't.  I don't have a claim against him

21   anymore.

22       Q    Okay.

23       A    At the time, I thought that I did.  But in

24   recent years, I have discovered that I do not.  I don't

1    think that he would have a vendetta or would have an issue

2    with Steven Hibberd out of all 40,000 inmates in the

3    Department of Corrections.

4        Q    Okay.  Do you have any other allegations against

5    any of the defendants regarding these claims?  Have we

6    discussed everything?

7        A    I can't think of anything right now off the top

8    of my head.

9        Q    I think that we have pretty much covered

10   everything in the complaint, which was very complete, but

11   ·I wanted to give you a chance to say everything.

12       A    Oh, one other thing.

13       Q    Okay.

14       A    This is not in regards to the defendants.  But

15   is there a chance that I can get a copy of the transcript

16   after it's completed?

17       Q    Only if you pay for it.  We can talk about that

18   off the record.

19            Do you have anything else to talk about?

20       A    I can't think of anything else.

21       Q    Okay.  She's been patiently taking down

22   everything that we have said.  She is going to produce a

23   transcript.  And you have the right to review the

24   transcript.  And I assume that you want to review it.

STATE OF ILLINOIS       )               *Hibberd v. Jennings, et al.,*
                        ) ss.          Case No. 07-3131
COUNTY OF SANGAMON   )

## AFFIDAVIT OF ROGER E. WALKER JR.

I, ROGER E. WALKER JR., the undersigned, being first duly sworn on oath, depose and state that the following information is true and correct to the best of my knowledge and belief:

1.     I was the Director of the Illinois Department of Corrections ("Department") from June 1, 2003, to June 7, 2009.

2.     The Department operates 28 adult correctional centers, as well as various work camps, boot camps, and adult transition centers. The agency is responsible for approximately 80,000 adult inmates and parolees. As a cabinet level member appointed by the Governor, I administered a department with an annual operating budget of over one billion dollars.

3.     As Director, I was required to meet pressing and often unexpected demands and needs, not only from the many correctional facilities under my control throughout the State, but also from the executive and legislative branches of government, the media, and numerous other entities and individuals throughout the State and, occasionally, the nation.

4.     Due to the large amount of correspondence directed to me as the Director, the responsibility for reviewing and addressing correspondence received by the Director's Office from offenders was delegated to subordinates.



EXHIBIT

B

5.     Reviewing and addressing correspondence from inmates which pertained to a grievance or a matter which was appropriate for a grievance was the responsibility of the Office of Inmate Issues, and any and all such inmate correspondence received in my office was forwarded by my office staff to the Office of Inmate Issues for appropriate handling in accordance with Department policy.

6.     I have no personal knowledge of the facts and allegations concerning Inmate Steven P. Hibberd, #B-70027.

7.     I have no personal knowledge of, nor do I have any recollection of receiving any correspondence from Inmate Hibberd.

8.     I have reviewed the two ARB responses in this case that purports to bear my signature. Both of those signatures were affixed by Terri Anderson, who has my signature authority and to whom the duty of reviewing ARB decisions was delegated. This is evidenced by the initials "TA" beneath the name. I had no involvement in and no knowledge of either of these decisions. These letters are attached hereto.

**Further, Affiant sayeth not.**


_____
ROGER E. WALKER JR.

Subscribed and sworn to before
me this _____ day of September, 2009.


_____
Notary Public

2



**Rod R. Blagojevich**
Governor

**Illinois**
Department of
**Corrections**

**Roger E. Walker Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

October 31, 2005

Steven Hibberd
Register No. B70027
Western Illinois Correctional Center

Dear Mr. Hibberd:

This is in response to your grievance received on October 24, 2005, regarding a disciplinary report dated July 25, 2005 and staff (conduct C/O Jennings-7/25/05 )which was alleged to have occurred at Western Illinois Correctional Center. This office has determined the issue will be addressed without a formal hearing.

The Grievance officer's report (05-0716) and subsequent recommendation dated October 6, 2005 and approval by the Chief Administrative Officer on October 8, 2005 have been reviewed.

The 7/25/05 disciplinary report written by C/O Jennings citing 308-Contraband/Unauthorized Property and 211-Possession or Solicitation of Unauthorized Personal Information was reviewed. The report was served on 7/25/05.

The Western Illinois Adjustment Committee reviewed the report (200502805/1) on 7/29/05. You were found guilty of 211 and 308. Disciplinary action recommended was 1-month C grade and disposal of contraband. The CAO concurred on 8/1/05.

Based on a review of all available information and a compliance check of the procedural due process safeguards outlined in Department Rule 504, this office is reasonably satisfied you committed the offense and recommends the grievance be denied. Further, staff misconduct cannot be substantiated.

FOR THE BOARD: _s/ Jackie Miller_

Jackie Miller
Administrative Review Board
Office of Inmate Issues

CONCURRED: _Roger E Walker_

Roger E. Walker Jr.
Director

cc: Warden Terry Polk, Western Illinois Correctional Center
Steven Hibberd, Register No. B70027



**Illinois**
Department of
**Corrections**

**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

December 27, 2005

Steven Hibberd
Register No. B70027
Western Illinois Correctional Center

Dear Mr. Hibberd:

This is in response to your grievance received on December 21, 2005, regarding a disciplinary report dated October 2, 2005 and staff conduct (C/O Watkins-10/2/05) which was alleged to have occurred at Western Illinois Correctional Center. This office has determined the issue will be addressed without a formal hearing.

The 10/2/05 disciplinary report written by C/O Watkins citing 104-Dangerous Contraband, 203-Drugs & Drug Paraphernalia, 305-Theft and 308-Contraband/Unauthorized Property was reviewed. The report was served on 10/2/05.

The Western Illinois Adjustment Committee reviewed the report on 10/6/05. You were found guilty of 404 IOM #60 (305 reduced) and 308. Disciplinary action recommended was 1-month C grade and disposal of contraband. The CAO concurred on 10/12/05.

The Grievance officer's report (05-0867) and subsequent recommendation dated December 6, 2005 and approval by the Chief Administrative Officer on December 8, 2005 have been reviewed.

Based on a review of all available information and a compliance check of the procedural due process safeguards outlined in Department Rule 504, this office is reasonably satisfied you committed the offense and recommends the grievance be denied.

FOR THE BOARD: _____ s/ Jackie Miller _____

Jackie Miller
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____

Roger E. Walker Jr.
Director

cc:    Warden Roger Zimmerman, Western Illinois Correctional Center
Steven Hibberd, Register No. B70027

STATE OF ILLINOIS            )              *Hibberd v. Jennings, et al.,*
                             ) ss.                Case No. 07-3131
COUNTY OF BROWN              )

## AFFIDAVIT OF ROGER ZIMMERMAN

I, ROGER ZIMMERMAN, the undersigned, being first duly sworn on oath, depose and state that the following information is true and correct to the best of my knowledge and belief:

1.  I was employed by the Illinois Department of Corrections ("IDOC") as a Warden at Western Illinois Correctional Center ("Western") from January 2006 until May 16, 2007. Prior to that, I was Assistant Warden of Operations at Western from January 2004 through January 2006.

2.  As Warden, I was responsible for the overall operation of Western. As Assistant Warden of Operations, I was responsible for the safety and security of the institution.

3.  I have no recollection of Inmate Steven P. Hibberd, #B-70027, but I have read the allegations in *Hibberd v. Jennings, et al.*, 07-3131, and I have reviewed the documents attached to it.

4.  I was not involved in either disciplinary action or the denial of Inmate Hibberd's grievance. Warden Terry Polk concurred in both Adjustment Committee recommendations as well as the denial of his grievance. I was Assistant Warden of Operations at the time these actions were taken, and I had no knowledge of either disciplinary action or the allegations contained in the grievance until I was served with this lawsuit.

5.  A review of these documents shows that Inmate Hibberd was not disciplined for assisting other inmates with their legal work. He was disciplined for the unauthorized possession of their material and personal information without a court order of approval of the Chief Administrative Officer.

EXHIBIT

*C*

6.   IDOC rules prohibit inmates from possessing items belonging to other inmates. This includes legal materials, unless the inmate in possession of these materials is assigned as a law clerk to assist other inmates with their legal work. It is my understanding that this rule is designed to prevent inmates from bartering legal services for contraband, which creates security concerns.

7.   The rules also prohibit inmates from possessing or soliciting unauthorized personal information of other offenders, releasees, and current and former employees. This type of information of employees and other inmates must be controlled because it poses a security threat. For example, possession of another inmate's inmate number would allow him to steal money or charge commissary purchases from the other inmate's trust account, and another inmate's home address would allow him to harass his family.

8.   Both of these rules were enacted at the Department level.

9.   I had no knowledge or any lawsuit filed by Inmate Hibberd until I was served with this one.

10.  At no time did I retaliate against Inmate Hibberd.

**Further, Affiant sayeth not.**

s/ Roger Zimmerman
ROGER ZIMMERMAN

Subscribed and sworn to before
me this _8_ day of September, 2009.

s/ Amy J. Hendricker
Notary Public

"OFFICIAL SEAL"
AMY J. HENDRICKER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES JAN. 12, 2010

2

TOTAL P.01

STATE OF ILLINOIS     )
                      ) ss.
COUNTY OF BROWN    )

*Hibberd v. Jennings, et al.,*
Case No. 07-3131

### AFFIDAVIT OF FORREST ASHBY

I, FORREST ASHBY, the undersigned, being first duly sworn on oath, depose and state that the following information is true and correct to the best of my knowledge and belief:

1.    I am currently employed as a Correctional Lieutenant at Western Illinois Correctional Center, and I have held this position since August 1, 2003. I have been employed by the Illinois Department of Corrections since 1993.

2.    In 2005, I was assigned to Western's Adjustment Committee, which conducts disciplinary hearings on disciplinary reports issued to inmates, determines whether the inmates are guilty of the infractions with which they are charged, and recommends discipline to the warden's office.

3.    I am familiar with Inmate Steven P. Hibberd, #B-70027, and I have read the allegations in *Hibberd v. Jennings, et al.*, 07-3131.

4.    On July 29, 2005, Philip Pool and I conducted the hearing on the Disciplinary Report that Inmate Hibberd received on July 25, 2005, for possession of contraband/unauthorized property and unauthorized possession or solicitation of personal information. At the hearing, the charges were read to Inmate Hibberd, who pled not guilty. Inmate Hibberd stated that he was going to the library, and that he had in his possession other inmates' legal work because he was doing their legal work for them. He also stated that he was assigned as a porter. Based on these admission, the Adjustment Committee found Inmate Hibberd

**EXHIBIT D**

guilty of both offenses, and recommended that his status be reduced to C-grade. The Adjustment Committee also recommended that the contraband that had been confiscated be disposed of pursuant to DR 501C.

5.    I do not recall whether Inmate Hibberd submitted to the Adjustment Committee the affidavits he attached to his Complaint. However, they would have had no effect on my decision because they reinforced Inmate Hibberd's admissions that he was in possession of their legal property. Nor do I recall whether he submitted the 2000 ARB letter that is attached to his Complaint. However, I note that the ARB letter pre-dates the enactment of the rules Inmate Hibberd was charged with violating.

6.    A true and accurate copy of the July 2005 Disciplinary Report and Adjustment Committee Summary is attached hereto as Ex. 1.

7.    On October 6, 2005, Julia Vincent and I conducted the hearing on the Disciplinary Report that Inmate Hibberd received on October 2, 2005, for possession of dangerous contraband, drugs and drug paraphernalia, theft and contraband/unauthorized property. At the hearing, the charges were read to Inmate Hibberd, who pled not guilty. Inmate Hibberd stated he was a 2D wing porter or janitor, and that he was allowed to have the documents in question because he got their at Dixon Correctional Center. He also stated that the paper he was accused of stealing was available at the commissary and that he had received it from another inmate, and that the pills, razors and food belonged to his cellmate. He also submitted a written statement in which he said the

2

confiscated documents were statements from inmates that he obtained to support a grievance that he had previously filed.

8. Ms. Vincent and I found Inmate Hibberd guilty of the contraband/unauthorized property charge, and reduced the theft charge to violation of Rule 60 in the Orientation Inmate Manual, which prohibits inmates from giving, loaning, trading or receiving anything from another inmate. A copy of Rule 60 is attached hereto as Ex. 2. The charges of dangerous contraband and drugs and drug paraphernalia were deleted. We recommended that Inmate Hibberd's status be reduced to C-grade for one month, and that the contraband be disposed of pursuant to DR 501C.

9. My decision was based on Inmate Hibberd's admissions that he possessed other inmates' documents and that he received the paper in question from another inmate. The Adjustment Committee also noted that Inmate Hibberd had numerous prior tickets for contraband or trading and trafficking, including one the previous year in which he admitted doing legal work for other inmates and having outside sources send money to unidentified inmates so that they could buy commissary items for him. A true and accurate copy of the 2004 disciplinary documents are attached hereto as Ex. 3.

10. A true and accurate copy of the October 2005 Disciplinary Report and Adjustment Committee Summary is attached hereto as Ex. 4.

11. Inmate Hibberd was not disciplined for assisting other inmates with their legal work. He was disciplined for the unauthorized possession of their material and

3

personal information without a court order of approval of the Chief Administrative Officer.

12. At no time did I retaliate against Inmate Hibberd.

13. I had no knowledge or any lawsuit filed by Inmate Hibberd until I was served with this one. Even if I had been aware that Inmate Hibberd had filed a lawsuit, that knowledge would have had no effect on my decision to find him guilty of these offenses.

**Further, Affiant sayeth not.**

s/ Forrest Ashby
_____
FORREST ASHBY

Subscribed and sworn to before
me this _4th_ day of September, 2009.

s/ Marcia K. Dormire
_____
Notary Public

OFFICIAL SEAL
MARCIA K DORMIRE
Notary Public, State of Illinois
My Commission Expires 2-25-2011

4

State of Illinois - - Department of Corrections
**DISCIPLINARY** ~~REPORT~~ ORT

Page ___ of ___

☐ Disciplinary Report  7/25/05
_____ Date

☐ Investigative Report _____ Date

Committed Person: HIBBERD   No. B70027   Facility: W.I.C.C.

Observation Date: 7/25/05   Time: APP. 900/am   ☐ am ☑ pm Location: LIBRARY

C/o Jennings #10124
PRINT Employee's Name

s/ C/O Jennins : 7/25/05  9
Employee's Signature/Date/Time

① 308 CONTRABAND / UNAUTHORIZED PROPERTY
Offense: 504 B  211 POSSESSION OR SOLICITATION OF UNAUTHORIZED PERSONAL INFORM

Observation: ON THE ABOVE DATE & APP. TIME, DURING ROUTINE FRISK SEARCH OF I/m HIBBERD B70027, AS I/m ENTERED THE LIBRA THIS C/o FOUND & CONFISCATED LEGAL MATERIALS BELONGING TO 3) OT W.I.C.C. I/ms. I/m WAS POSITIVELY IDENTIFIED BY I.D.O.C. I.O. & APPEARS TO BE ASSISTING OTHER I/ms WITH LEGAL PAPERWORK I/m HIBBERD IS A 2D PORTER, & IS NOT ASSIGNED AS A LIBRARY WORKER. D.C. 434 & 252 WRITTEN.

Witnesses, if any: _____

NOTE: Use continuation page if necessary to describe observation and/or list witnesses.

☐ Temporary Confinement   ☐ Investigative Status   Reasons: _____

_____
PRINT Name

_____
Shift Supervisor's Signature and Date
(For Community Correctional Centers, Chief Adm. Off.)

☐ Confinement Reviewed by Reviewing Officer   Comment: _____

_____
PRINT Name

_____
Signature/Date

☑ MAJOR, submitted to Adjustment Committee   ☐ MINOR, submitted to Program Unit

Maj McKee
PRINT Name

s/ Maj McKee   7/25/05
Reviewing Officer's Signature and Date

☐ Reviewed by Hearing Investigator:
(Adult Division Major Reports Only)   PRINT Name   Signature and Date

**PROCEDURES APPLICABLE TO ALL HEARINGS ON INVESTIGATIVE AND DISCIPLINARY REPORTS**

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

**PROCEDURES APPLICABLE TO HEARINGS CONDUCTED BY THE ADJUSTMENT COMMITTEE ON DISCIPLINARY REPORTS**

You may ask that witnesses be interviewed and, if necessary, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing. If you are found guilty of a serious rule violation, you may be placed in confinement and/or lose privileges, and/or be required to make restitution. In addition, juveniles may receive a delay in recommended parole.

_____
Committed Person's Signature and Number

s/ King
PRINT Serving Employee's Name   Serving Employee's Signature

Committed Person Refused to Sign ☑

7-25-05   ☐ am ☐ pm
Date and Time Served

I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

Offense Date: _____   _____
Committed Person's Signature and Number

— — — — — (DETACH AND RETURN TO THE ADJUSTMENT COMMITTEE OR PROGRAM UNIT PRIOR TO THE HEARING) — — — — —

I would like the Adjustment Committee or Program Unit to consider calling the following witnesses regarding disciplinary report of _____
Date

NAME OF WITNESS: _____   Number/Cell/Title: _____

Witness can testify to: _____

NAME OF WITNESS: _____   Number/Cell/Title: _____

Witness can testify to: _____

**EXHIBIT**
tabbies
1

DC 7205 (Rev. 4/98)   Distribution: 1) Master File; 2) Committed Person;
IL 426-0361        3) Facility; 4) Facility

Committed Person's Name and Number

SHAKEDOWN RECORD/CONF    ATED CONTRABAND
(Tag/Receipt/Report/Chain-of-Custody Record)

EXHIBIT NO.
CLIC NO.

Date _____ Time _____ Bldg/Area _____

Living Area # _____ Occupied? Yes ___ No ___

Violator _____ No. _____

Was Any Contraband Found? Yes ___ No ___

Item(s) (Description and Circumstances of Discovery) _____

Witness _____

Was a Disciplinary Report Written? Yes ___ No ___

Was an Incident Report Written? Yes ___ No ___

Employee's Signature _____

Badge No. _____ Date _____ Time _____

Supervisor's Date Received _____ Time _____

Major ___ Minor ___ Signature _____

Disposition _____

Date _____ Time _____ Initials _____

Custodian's Date Received _____ Time _____

Major ___ Minor ___ Signature _____

Chain of Custody After the Custodian has Received the Item

From _____ Date _____ Time _____

From _____ Date _____ Time _____

From _____ Date _____ Time _____

From _____ Date _____ Time _____

From _____ Date _____ Time _____

Final Disposition _____

Date _____ Custodian's Initials _____

---

SHAKEDOWN RECORD/CONFISCATED CONTRABAND
(Tag/Receipt/Report/Chain-of-Custody Record)

EXHIBIT NO.
CLIC NO.

Date _____ Time _____ Bldg/Area _____

Living Area # _____ Occupied? Yes ___ No ___

Violator _____ No. _____

Was Any Contraband Found? Yes ___ No ___

Item(s) (Description and Circumstances of Discovery)
LEGAL MATERIALS
BELONGING TO 3 OTHER
RIGCO I/M

Witness _____

Was a Disciplinary Report Written? Yes ___ No ___

Was an Incident Report Written? Yes ___ No ___

Employee's Signature    s/ C/O Jennings

Badge No. _____ Date _____ Time _____

Supervisor's Date Received _____ Time _____

Major ___ Minor ___ Signature _____

Disposition _____

Date _____ Time _____ Initials _____

Custodian's Date Received _____ Time _____

Major ___ Minor ___ Signature _____

Chain of Custody After the Custodian has Received the Item

From _____ To _____

Date _____ Time _____

From _____ To _____

Date _____ Time _____

From _____ To _____

Date _____ Time _____

From _____ To _____

Date _____ Time _____

Final Disposition _____

Date _____ Custodian's Initials _____

# STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS

## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

**Name:** HIBBERD, STEVEN P                 **IDOC Number:** B70027                 **Race:** WHI

**Hearing Date/Time:** 7/29/05   10:23 AM          **Living Unit:** WIL-02-D-37          **Orientation Status:** N/A

**Incident Number:** 200502805/1 - WIL               **Status:** Final

| Date | Ticket # | Incident Officer | Location | Time |
|------|----------|------------------|----------|------|
| 7/25/05 | 200502805/1-WIL | JENNINGS, JOSEPH D | LIBRARY | 09:00 AM |

| Offense | Violation | Final Result |
|---------|-----------|--------------|
| 308 | Contraband/Unauthorized Property | Guilty |
| | Comments:*OTHER INMATES LEGAL MATERIAL* | |
| 211 | Pos. or Sol. of U/A Personal Information | Guilty |
| | Comments:*LEGAL WORK BELONGING TO 3 OTHER I/M'S* | |

| Witness Type | Witness ID | Witness Name | Witness Status |
|--------------|------------|--------------|----------------|

**No Witness Requested**

## RECORD OF PROCEEDINGS
DR504 CHARGES READ INMATE PLED; NOT GUILTY. I WAS GOING TO THE LIBRARY. I HAD OTHER INMATES LEGAL WORK. I WAS DOING LEGAL WORK FOR OTHER INMATES. I WAS A PORTER.

## BASIS FOR DECISION
INMATE WAS IDENTIFIED BY HIS STATE ISSUED ID.
INMATE ADMITS TO HAVING OTHER INMATES LEGAL MATERIAL AND ADMITS DOING LEGAL WORK FOR OTHER INMATES.
WRITING STAFF JENNINGS DC7205 REFLECTS UPON SHAKING DOWN INMATE HIBBERD GOING TO LIBRARY INMATE WAS FOUND TO HAVE LEGAL MATERIAL OF OTHER INMATES.

## DISCIPLINARY ACTION   *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|-------------|-------|
| 1 Months C Grade | 1 Months C Grade |
| Other : DISP OF CONTRA IN ACRD OF 501C | Other : DISP OF CONTRA IN ACRD OF 501C |
| **Basis for Discipline:**SERIOUSNESS OF OFFENSE | |

## Signatures
**Hearing Committee**

| | Signature | Date | Race |
|---|-----------|------|------|
| POOL, PHILLIP D  - Chair Person | s/ Phillip Pool | 07/29/05 | WHI |
| ASHBY, FORREST J | s/ Lt. Ashby | 07/29/05 | BLK |
| Recommended Action Approved | | | |

**Final Comments:** N/A

| TERRY L POLK / TLP  8/1/05 | s/ Terry Polk | 08/01/05 |
|---|---|---|
| Chief Administrative Officer | Signature | Date |

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504: Subpart F.

| s/ C/O Unknown | | |
|---|---|---|
| Employee Serving Copy to Committed Person | | When Served - - Date and Time |

Run Date: 8/2/05 09:00:15                                    Page 1 of 1

53. Animals or pets of any kind are not permitted. Plants or flowers are not allowed in inmate rooms.

54. Inmates are not to handle, provoke, or feed an animal on institutional grounds.

55. Inmates are prohibited from signing petitions. Inmates may address a request slip to appropriate staff on an individual basis to resolve a concern/problem.

56. All inmates must follow the directions and orders of any staff member. It is necessary for you to comply with such orders as fully and quickly as possible. If you feel the order is unfair or inappropriate, you should comply with it and grieve the matter at a later time.

57. Movement is not permitted during count. Assignment area supervisor will designate an area for count.

58. Inmates must be ready to leave for yard, gym, and meals when called. Lateness will be handled appropriately.

59. All call passes must be honored. Inmates have up to ten minutes (10) minutes to reach your destination. Failure to do so may result in disciplinary action.

60. Inmates are not to be involved or attempt to involve others in trafficking of contraband. Inmates may not give, loan, trade or receive anything from another inmate.

61. Any type of pressuring, intimidation, etc., either of a verbal or physical nature, for commissary, etc., will not be tolerated at the Western Illinois Correctional facility. No resident or group of inmates is permitted to have control or authority over another. If any resident is found committing such behavior, every effort will be made to seek an indictment in the county court if a crime has been committed, and the inmate will also be disciplined under provisions of Departmental Rule #504A.

62. Inmates must have ID cards in their possession at all times when outside their rooms. Loss of ID card must be reported immediately to a staff member. ID cards will be reissued due to a change in appearance, or if the card is lost or damaged there will be a cost of $4.00 per occurrence. You are to produce your ID card at the request of any staff member.

63. During periods of extreme cold, inmates will be allowed to wear a gray sweatshirt under their State Blue shirt to all assignments, excluding the Visiting Room.

G. Drug and Alcohol Testing of Inmates

As required by Administrative Directive 04.02.105, the following information is made available. All inmates are subject to drug or alcohol tests and are subject to disciplinary action in accordance with Department Rules 504 for any drug or alcohol related offense such as:

14

EXHIBIT

2

# STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS

## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

| | | | |
|---|---|---|---|
| **Name:** HIBBERD, STEVEN P | **IDOC Number:** B70027 | | **Race:** WHI |
| **Hearing Date/Time:** 10/18/04  11:40 AM | **Living Unit:** DIX-MS-MS-04 | | **Orientation Status:** N/A |
| **Incident Number:** 200405858/1 - DIX | **Status:** Final | | |

| Date | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| 10/14/04 | 200405858/1-DIX | BOCK, ████████ | NORTHEAST HOUSING UNIT 28 | 11:00 AM |

| Offense | Violation | Final Result |
|---|---|---|
| 306 | Transfer Of Funds | Guilty |
| 405 | Trading Or Trafficking | Guilty |

| Witness Type | Witness ID | Witness Name | Witness Status |
|---|---|---|---|
| | | | |

## RECORD OF PROCEEDINGS
Ticket read, inmate states the department takes any money he has on the books and he did have money sent in so he can have hygiene items. States he might help someone occasionally but not on a regular basis. States he works on his case mainly.

## BASIS FOR DECISION
Based on evidence in ticket that inmate did have money from outside sources sent in to other inmate's so the other inmate's could buy him commissary items, inmate's admission of guilt and reporting staff's positive id of inmate by photo id the committee finds him guilty.

## DISCIPLINARY ACTION  (Consecutive to any priors)

| RECOMMENDED | FINAL |
|---|---|
| 1 Months Segregation<br>Other : TRANSFER | 1 Months Segregation<br>Other : TRANSFER |

## Signatures
### Hearing Committee

| | | |
|---|---|---|
| DANIELS, ERNESTINE  - Chair Person | s/Lt. Daniels | BLK |
| | Signature / Date | Race |
| LOPEZ, STEVEN M | s/ Steven Lopez | HSP |
| | Signature / Date | Race |
| Recommended Action Approved | | |

**Final Comments:** N/A

Received
Record Office
Dixon Correctional
Center

| | | |
|---|---|---|
| NEDRA R CHANDLER / VDT  10/19/04 | s/ Nedra Chandler | 10/22/04 |
| **Chief Administrative Officer** | Signature | Date |

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504: Subpart F.

| | |
|---|---|
| s/ Weiser  8300 | 10-22-04   Opg 9:00P |
| **Employee Serving Copy to Committed Person** | **When Served -- Date and Time** |

EXHIBIT
3

2004's 858

State of Illinois - - Department of Corrections
**DISCIPLINARY REPORT**

Page _1_ of _2_

☒ Disciplinary Report  _10-14-04_    ☐ Investigative Report
Date                                                                          Date

Committed Person: _HIBBARD STEVEN_    No. _B70027_    Facility: _Dixon C.C._

Observation Date: _10-14-04_    Time: _Apprx 11_ am/pm    Location: _Hu 28_

_wolBock  7924_    _wolBock  10-14-04  apx 11 am_
PRINT Employee's Name                    Employee's Signature/Date/Time

Offense: 504 B 306. TRANFER OF FUNDS  406. TRADING AND TRAFFICKING

Observation: _Im Hibbard Identified by photo Id was placed on Investigative_
_Status on 9.28.04 For possible involvement in a business venture._
_By Im Hibbards own admission he assists other Inmates in preparing_
_court documents But denies accepting gratuities for his services. A_
_Review of Im Hibbards trust Fund account indicated that he is_
_in debt to the department and has not shopped at the inmate_
_Commisary in over a year. During Im Hibbards interview he_

Witnesses, if any: _N/A_

NOTE: Use continuation page if necessary to describe observation and/or list witnesses.

☒ Temporary Confinement  ☐ Investigative Status  Reasons: _Currently in seg For Security_
_reason_
_Meyer_    s/ Meyer    _10-14-04_
PRINT Name                    Shift Supervisor's Signature and Date
                             (For Community Correctional Centers, Chief Adm. Off.)

☐ Confinement Reviewed by Reviewing Officer    Comment: _____

PRINT Name                    Signature/Date

☒ MAJOR, submitted to Adjustment Committee  ☐ MINOR, submitted to Program Unit
_Major Dusing_    s/ Major Dusing
PRINT Name                    Signature and Date

☒ Reviewed by Hearing Investigator    _E. Lancaster_  s/ Unknown DOC emp  _10/17/04_
(Adult Division Major Reports Only)    PRINT Name    Signature and Date

**PROCEDURES APPLICABLE TO ALL HEARINGS ON INVESTIGATIVE AND DISCIPLINARY REPORTS**

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

**PROCEDURES APPLICABLE TO HEARINGS CONDUCTED BY THE ADJUSTMENT COMMITTEE ON DISCIPLINARY REPORTS**

You may ask that witnesses be interviewed and, if necessary, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing. If you are found guilty of a serious rule violation, you may be placed in confinement and/or lose privileges, and/or be required to make restitution. In addition, juveniles may receive a delay in recommended parole.

_Steven P Hibbard B70027_
Committed Person's Signature and Number    Committed Person Refused to Sign ☐

_Manzans_    s/ Manzans    _10-14-04_  _725_ am/pm
PRINT Serving Employee's Name    *Serving Employee's Signature    Date and Time Served

I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

Offense Date: _____
Committed Person's Signature and Number

- - - - - - - - (DETACH AND RETURN TO THE ADJUSTMENT COMMITTEE OR PROGRAM UNIT PRIOR TO THE HEARING) - - - - - - - -

I would like the Adjustment Committee or Program Unit to consider calling the following witnesses regarding disciplinary report of _____
Date

NAME OF WITNESS: _____    Number/Cell/Title: _____

Witness can testify to: _____

NAME OF WITNESS: _____    Number/Cell/Title: _____

Witness can testify to: _____

DC 7205 (Rev. 4/98)    Distribution: 1) Master File; 2) Committed Person;
IL 496-0361                                3) Facility; 4) Facility

Committed Person's Name and Number

State of Illinois - - Department of Corrections
**DISCIPLINARY REPORT/SUMMARY**
(Continuation Page)

Page 2 of 2

☒ Disciplinary Report     ☐ Disciplinary Summary

Committed Person: Hibbard, STEVEN          No. B70027

Offense Date: 10-14-04  Time: 10:11 am/pm  Location: HU 28  Facility: Dixon CC

ADMITTED THAT HE HAS NOT SHOPPED AT THE INMATE
COMMISSARY AND DOES NOT DENY OWING THE DEPARTMENT.
I/m HIBBARD WAS QUESTIONED AS TO HOW HE WAS ABLE TO
MAINTAIN HIS HYGENE AND BE IN POSSESSION OF HYGENE ITEMS
PLUS COMMISSARY ITEMS IF HE DOESN'T SHOPPED I/m HIBBARD
ADMITTED TO HAVING OUTSIDE SOURCES, SEND MONEY TO
UNIDENTIFIED INMATES SO THEY WOULD SHOP FOR HIM. I/m
HIBBARD DOES NOT HAVE MONEY SENT TO HIS ACCOUNT SO
THE DEPARTMENT WOULD NOT TAKE THE MONEY TO PAY
FOR HIS DEBT. THERE WAS NO EVIDENCE OBTAINED INDICATING
THAT I/m HIBBARD CHARGED INMATES FOR HIS SERVICES.

E O R

State of Illinois -- Department of Corrections
**DISCIPLINARY REPORT**

Page _1_ of _____

☒ Disciplinary Report _10-2-05_     ☐ Investigative Report _____

Date                                           Date

Committed Person: _Hibberd_   No. _B70027_   Facility: _WICC_

Observation Date: _10-2-05_   Time: _7:40 Am_ approx   am/pm   Location: _R2 D-37_

_C/o Watkins_                    s/ C/O Watkins   10-2-05   7:40 am

PRINT Employee's Name          Employee's Signature/Date/Time

Offense: 504 B ® 104 Dangerous Contraband 203 Drug and Drug Paraphernalia 305 Theft
C 308 Contraband/unauthorized Property

Observation: On The Above Date and approx time During A routine shakedown of Cell R
This C/o Found in I/m Hibberds property box 5 Documents Containing Legal material for
5 other Inmates; Also Aprox 75 Thick sheets of paper Stolen From The print sho
This C/o Also Found in I/m Estradas property box 20 pills wrapped in A piece
of ramen noodle bag concealed in a half bag of Coffee, 1 lb of sugar at 32¢ a
1/2 lb of Dry oatmeal at 15¢ which was verified by CFSS III Powell, Also 2 Extra
Double Edge Razors were Found in I/m Estradas property box. I/m Hibberd was positi
Identified by State I.d.   C/o Swerttin #10225

Witnesses, if any: _____

NOTE: Use continuation page if necessary to describe observation and/or list witnesses.

```
┌─────────────────────┐
│      EXHIBIT        │
│ tabbies             │
│        4            │
└─────────────────────┘
```

☐ Temporary Confinement   ☐ Investigative Status   Reasons: _____

_____          _____
PRINT Name                     Shift Supervisor's Signature and Date
                               (For Community Correctional Centers, Chief Adm. Off.)

☐ Confinement Reviewed by Reviewing Officer   Comment: _____

_____          _____
PRINT Name                     Signature/Date

☒ MAJOR, submitted to Adjustment Committee   ☐ MINOR, submitted to Program Unit

_Max McKee_                    s/ Maj McKee   10/2/05

PRINT Name                     Reviewing Officer's Signature and Date

☐ Reviewed by Hearing Investigator: _____
(Adult Division Major Reports Only)   PRINT Name   Signature and Date

**PROCEDURES APPLICABLE TO ALL HEARINGS ON INVESTIGATIVE AND DISCIPLINARY REPORTS**

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

**PROCEDURES APPLICABLE TO HEARINGS CONDUCTED BY THE ADJUSTMENT COMMITTEE ON DISCIPLINARY REPORTS**

You may ask that witnesses be interviewed and, if necessary, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing. If you are found guilty of a serious rule violation, you may be placed in confinement and/or lose privileges, and/or be required to make restitution. In addition, juveniles may receive a delay in recommended parole.

Committed Person Refused to Sign ☒

_____   _____   _____  am/pm
Committed Person's Signature and Number

_____   _____   _____
PRINT Serving Employee's Name   Serving Employee's Signature   Date and Time Served

I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

# STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS

## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

**Name:** HIBBERD, STEVEN P          **IDOC Number:** B70027          **Race:** WHI

**Hearing Date/Time:** 10/6/05  12:22 PM          **Living Unit:** WIL-02-D-37          **Orientation Status:** N/A

**Incident Number:** 200503569/1 - WIL          **Status:** Final

| Date | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| 10/2/05 | 200503569/1-WIL | WATKINS, JAMES A | R2 HOUSE D WING | 07:40 AM |

| Offense | Violation | Final Result |
|---|---|---|
| 104 | Dangerous Contraband<br>*Comments:pills/excess razors* | Deleted |
| 203 | Drugs & Drug Paraphernalia<br>*Comments:pills* | Deleted |
| 305 | Theft<br>Reduced to : 404<br>*Comments:IOM #60* | Guilty |
| 308 | Contraband/Unauthorized Property<br>*Comments:thick paper/other inmates' paperwork* | Guilty |

| Witness Type | Witness ID | Witness Name | Witness Status | |
|---|---|---|---|---|
| Staff | | GOINS, TARA | Testimony Would Be Irrelevant | Requested By Inmate |

**Statement:** Counselor Goins did not witness the shakedown nor confiscation items listed in the disciplinary report.

*s/ Julia Vincent*
Witness Interviewer Signature          I attest to the statements as being a correct reflection of the statements provided to me by witnesses.

## RECORD OF PROCEEDINGS
DR504 charges read, inmate pled Not Guilty. "I'm a 2D wing porter. I'm in 2D37. These are documents I got at Dixon and I can have them. I got the paper from another inmate, they sell it on commissary. The pills and razors and food were my cellie's.
Inmate submitted written statement.

## BASIS FOR DECISION
I/M was positively identified by his IDOC ID card and was assigned to R2D37 where contraband was found.
Inmate admits to having other inmates' documents and receiving paper from another inmate.
C/O Watkins' DC7205 reflects during a routine shakedown of cell 2D37 he found five documents containing legal material from five other inmates and also 75 thick sheets of paper stolen from the print shop.
Inmate did not produce any commissary receipt showing he purchased the paper from commissary.
I/M Hibberd's written statement that contained documents pertaining to other inmates including an ARB decision from another inmate, and inmate admits in his written statement that he received the thick paper from other inmates. Inmate submitted DR430.30, but Inmate Hibberd is not permitted to assist other inmates with legal work as this is not consistent with institutional security as he is assigned as a porter, not a legal assistant in the law library.
Prior tickets for Contraband or trade/traffic on 7/25/05, 1/9/05, 10/14/04, 9/28/04.

## DISCIPLINARY ACTION  *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|---|---|
| 1 Months C Grade | 1 Months C Grade |
| Other : Dispose of Contra per DR501C | Other : Dispose of Contra per DR501C |
| Basis for Discipline:Seriousness of Offense | |

## Signatures
### Hearing Committee

VINCENT, JULIA I - Chair Person          *s/ Julie Vincent*          10/06/05          ASN
                                          Signature          Date          Race

## STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS

### ADJUSTMENT COMMITTEE
### FINAL SUMMARY REPORT

**Name:** HIBBERD, STEVEN P      **IDOC Number:** B70027      **Race:** WHI

**Hearing Date/Time:** 10/6/05  12:22 PM      **Living Unit:** WIL-02-D-37      **Orientation Status:** N/A

**Incident Number:** 200503569/1 - WIL      **Status:** Final

---

## Signatures
### Hearing Committee

| ASHBY, FORREST J | s/ Lt. Ashby | 10/06/05 | BLK |
|---|---|---|---|
| | **Signature** | **Date** | **Race** |

Recommended Action Approved

---

**Final Comments:** N/A

---

| TERRY L POLK / TLP  10/12/05 | s/ Terry Polk | 10/12/05 |
|---|---|---|
| **Chief Administrative Officer** | **Signature** | **Date** |

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504: Subpart F.

| s/ Unknown DOC emp | 10/20/05   3⁰⁰ p |
|---|---|
| **Employee Serving Copy to Committed Person** | **When Served - - Date and Time** |

---

Steven P. Hibberd
Reg. No. B70027
Unit R-2, Cell 37


Adjustment Committee
C/o Lt. Ashby
C/o Mr. Pool


October 2, 2005


Members of the Committee:

I am writing in regards to a disciplinary report written and served on me October 2nd, 2005. The charges are 104 Dangerous Contraband; 203 Drug and Drug Paraphennilia; 305 Theft; and, 308 Contraband/Unauthorized Property. I have accompanied this letter with evidence, and the Adjustment Committee request slip for witness which seeks the Committee to contact Counselor Tara Goins and a Commissary Supervisor.

Concerning the matters within the disciplinary report pertaining to me ("5 Documents containing legal material from 5 other inmates; Also approx. 75 thick sheets of paper stolen from the print shop), the legal documents are statements that I obtained from inmates that I used as

evidence/exhibits to support a grievance that I filed dated August 18, 2005. I have included a copy of that grievance for your reference, which pends at this time. You will notice that the inmates' statements directly pertain to me, in that, my name is written in those statements. Counselor Tara Goins can verify that the grievance pends. Following the confiscation of the statements, Officer Watkins, the author of the disciplinary report, was informed by me of the statements and that they are in support of a pending grievance.

Also, the "thick paper" is not from a print shop. It is from the commissary. The commissary sells Dick Blick Art Paper at sizes of 9x12, and 18x24. The paper that was taken was the Dick Blick Paper. I have provided with this letter another sheet of paper, which measures 9x12. I had to get this sheet from another inmate to prove this issue, as Officer Watkins took my supply. If you measure the paper and feel the consistency of it, you will see that the paper Watkins took is consistent with the commissary paper. Officer Watkins never inquired into the origin of the paper prior to taking it. In addition, I do not believe the print shop (as c/o Watkins says there is) makes 9x12 paper. The Commissary Supervisor can verify this.

Thank you for looking into these matters,

Steven Hibberd

Steven P. Hibberd 870027

STATE OF ILLINOIS      )                     *Hibberd v. Jennings, et al.,*
                              ) ss.          Case No. 07-3131

COUNTY OF BROWN     )

## AFFIDAVIT OF JOSEPH JENNINGS

I, JOSEPH JENNINGS, the undersigned, being first duly sworn on oath, depose and state that the following information is true and correct to the best of my knowledge and belief:

1. I am currently employed as a Correctional Officer at Western Illinois Correctional Center, and I have held this position November 1995.

2. In 2005, I was assigned to Western's Intelligence Office, which is responsible for gathering intelligence regarding inmates by such means as conducting cell searches and monitoring inmates' non-legal phone calls.

3. I am familiar with Inmate Steven P. Hibberd, #B-70027, and I have read the allegations in his Complaint.

4. On July 25, 2005, Officer Crary and I were assigned to search inmates entering and exiting Western's library. These searches are routinely conducted because the library is one of only a few places where inmates from all four wings come together, and it is common for inmates to pass contraband there.

5. Officer Crary searched Inmate Hibberd and the property in his possession as Inmate Hibberd entered the law library, and discovered legal documents in Inmate Hibberd's possession that belong to other inmates. Inmate Hibberd admitted that he had other inmates' property in his possession, but he contended that he was allowed to have it.



EXHIBIT

*E*

6.    IDOC rules prohibit inmates from possessing items belonging to other inmates. This includes legal materials, unless the inmate in possession of these materials is assigned as a law clerk to assist other inmates with their legal work. It is my understanding that this rule is designed to prevent inmates from bartering legal services for contraband, which is a security concern.

7.    Inmate Hibberd was not authorized to possess other inmates' legal property because he was assigned as 2D wing porter, not as an inmate law clerk.

8.    When an inmate is found with contraband on his person, the scope of the search is routinely broadened to include the property in his cell. Consequently, Officer Crary and I searched Plaintiff's cell and found more legal materials belonging to other inmates.

9.    The contraband items were confiscated, and I wrote Inmate Hibberd a disciplinary report charging him with Contraband/Unauthorized Property and Possession or Solicitation of Unauthorized Personal Information. A copy of this ticket is attached to the affidavit of Forrest Ashby.

10.    I did not order the search of Inmate Hibberd's cell on October 2, 2005. Nor do I recall being involved in any way with that shakedown.

11.    I wrote this disciplinary report solely because I believed that Inmate Hibberd had violated Department rules.

12.    Inmate Hibberd was not disciplined for assisting other inmates with their legal work. He was disciplined for the unauthorized possession of their material without a court order of approval of the Chief Administrative Officer.

2

13.  At no time did I retaliate against Inmate Hibberd.

14.  I had no knowledge or any lawsuit filed by Inmate Hibberd until I was served with

this one.  Even if I had been aware that Inmate Hibberd had filed a lawsuit, that

knowledge would have had no effect on my decision to search Inmate Hibberd

and write him the ticket.

**Further, Affiant sayeth not.**

s/ Joseph Jennings

JOSEPH JENNINGS

Subscribed and sworn to before
me this ___4th___ day of September, 2009.

s/ Marcia K. Dormire

Notary Public

OFFICIAL SEAL
MARCIA K DORMIRE
Notary Public, State of Illinois
My Commission Expires 2-25-2011

3

STATE OF ILLINOIS      )
                       ) ss.
COUNTY OF BROWN        )

*Hibberd v. Jennings, et al.,*
Case No. 07-3131

## AFFIDAVIT OF JULIA VINCENT

I, JULIA VINCENT, the undersigned, being first duly sworn on oath, depose and state that the following information is true and correct to the best of my knowledge and belief:

1.   I am currently employed as a Correctional Counselor II at Western Illinois Correctional Center, and I have held this position September 1, 2001.

2.   In 2005, I was assigned to Western's Adjustment Committee, which conducts disciplinary hearings on disciplinary reports issued to inmates, determines whether the inmates are guilty of the infractions with which they are charged, and recommends discipline to the warden's office.

3.   I am familiar with Inmate Steven P. Hibberd, #B-70027, and I have read the allegations in *Hibberd v. Jennings, et al.,* 07-3131.

4.   On October 6, 2005, Forrest Ashby and I conducted the hearing on the Disciplinary Report that Inmate Hibberd received on October 2, 2005, for possession of dangerous contraband, drugs and drug paraphernalia, theft and contraband/unauthorized property.  At the hearing, the charges were read to Inmate Hibberd, who pled not guilty.  Inmate Hibberd stated he was a 2D wing porter or janitor, and that he was allowed to have the documents in question because he got their at Dixon Correctional Center. He also stated that the paper he was accused of stealing was available at the commissary and that he had received it from another inmate, and that the pills, razors and food belonged to

EXHIBIT
F

his cellmate.  He also submitted a written statement in which he said the confiscated documents were statements from inmates that he obtained to support a grievance that he had previously filed.

5.   Mr. Ashby and I found Inmate Hibberd guilty of the contraband/unauthorized property charge, and reduced the theft charge to violation of Rule 60 in the Orientation Inmate Manual, which prohibits inmates from giving, loaning, trading or receiving anything from another inmate.  A copy of Rule 60 is attached to Forrest Ashby's Affidavit as Ex. 2.  The charges of dangerous contraband and drugs and drug paraphernalia were deleted.  We recommended that Inmate Hibberd's status be reduced to C-grade for one month, and that the contraband be disposed of pursuant to DR 501C.

6.   My decision was based on Inmate Hibberd's admissions that he possessed other inmates' documents and that he received the paper in question from another inmate.  The Adjustment Committee also noted that Inmate Hibberd had numerous prior tickets for contraband or trading and trafficking, including one the previous year in which he admitted doing legal work for other inmates and having outside sources send money to unidentified inmates so that they could buy commissary items for him.  A true and accurate copy of the 2004 disciplinary documents are attached to Forrest Ashby's Affidavit as Ex. 3.

7.   A true and accurate copy of the October 2005 Disciplinary Report and Adjustment Committee Summary is attached to Forrest Ashby's Affidavit as Ex. 4.

2

8.    Inmate Hibberd was not disciplined for assisting other inmates with their legal work.  He was disciplined for the unauthorized possession of their material and personal information without a court order of approval of the Chief Administrative Officer.

9.    At no time did I retaliate against Inmate Hibberd.

10.   I had no knowledge or any lawsuit filed by Inmate Hibberd until I was served with this one.  Even if I had been aware that Inmate Hibberd had filed a lawsuit, that knowledge would have had no effect on my decision to find him guilty of these offenses.

**Further, Affiant sayeth not.**

s/ Julia Vincent

JULIA VINCENT

Subscribed and sworn to before me this ___4th___ day of September, 2009.

s/ Marcia K. Dormire

Notary Public

OFFICIAL SEAL
MARCIA K DORMIRE
Notary Public, State of Illinois
My Commission Expires 2-25-2011

3

STATE OF ILLINOIS     )  
                  ) ss.  
COUNTY OF BROWN    )

*Hibberd v. Jennings, et al.,*  
Case No. 07-3131

## AFFIDAVIT OF PHILIP M. CRARY

I, PHILIP M. CRARY, the undersigned, being first duly sworn on oath, depose and state that the following information is true and correct to the best of my knowledge and belief:

1. I am currently employed as a Correctional Officer at Western Illinois Correctional Center, and I have held this position May 13, 1996.

2. In 2005, I was assigned to Western's Internal Affairs Unit, which is responsible for investigating allegations of rules violations by inmates.

3. I am familiar with Inmate Steven P. Hibberd, #B-70027, and I have read the allegations in *Hibberd v. Jennings, et al.,* 07-3131.

4. On July 25, 2005, Officer Jennings and I were assigned to search inmates entering and exiting Western's library. These searches are routinely conducted because the library is one of only a few places where inmates from all four wings come together, and it is common for inmates to pass contraband there.

5. I searched Inmate Hibberd and the property in his possession on the walk in front of the library building, and I discovered legal documents in Inmate Hibberd's possession that belong to other inmates. Inmate Hibberd admitted that he had other inmates' property in his possession, but he contended that he was allowed to have it.

6. IDOC rules prohibit inmates from possessing items belonging to other inmates. This includes legal materials, unless the inmate in possession of these materials

EXHIBIT  
G

is assigned as a law clerk to assist other inmates with their legal work. It is my understanding that this rule is designed to prevent inmates from bartering legal services for contraband, which is a security concern.

7.   Inmate Hibberd was not authorized to possess other inmates' legal property because he was assigned as 2D wing porter, not as an inmate law clerk.

8.   I confiscated the materials from Inmate Hibberd and informed him that he would receive a disciplinary report for possessing the materials.

9.   When an inmate is found with contraband on his person, the scope of the search is routinely broadened to include the property in his cell. Consequently, Officer Jennings and I searched inmate Hibberd's cell and found more legal materials belonging to other inmates was found there.

10.   These items were also confiscated, and Officer Jennings wrote Inmate Hibberd a disciplinary report charging him with Contraband/Unauthorized Property and Possession or Solicitation of Unauthorized Personal Information.

11.   I went to the library, where Inmate Hibberd was waiting, and advised him that he was not allowed to possess the personal property or personal information of another inmate.

12.   I do not recall being involved in a search of Inmate Hibberd's cell on October 2, 2005.

13.   I confiscated the documents in question solely because I believed that they constituted contraband under the Department's rules.

2

14.  Inmate Hibberd was not disciplined for assisting other inmates with their legal work.  He was disciplined for the unauthorized possession of their material without a court order of approval of the Chief Administrative Officer.

13.  At no time did I retaliate against Inmate Hibberd.

14.  I had no knowledge or any lawsuit filed by Inmate Hibberd until I was served with this one.  Even if I had been aware that Inmate Hibberd had filed a lawsuit, that knowledge would have had no effect on my decision to search Inmate Hibberd and confiscate the documents in question.

**Further, Affiant sayeth not.**

s/ Philip M. Crary

PHILIP M. CRARY

Subscribed and sworn to before me this 4th day of September, 2009.

s/ Diana M. DeSalle

Notary Public

OFFICIAL SEAL
**DIANA M. DE SALLE**
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 6-14-2011

3

STATE OF ILLINOIS        )                    *Hibberd v. Jennings, et al.,*
                              ) ss.       Case No. 07-3131
COUNTY OF BROWN       )

## **AFFIDAVIT OF JAMES WATKINS**

I, JAMES WATKINS, the undersigned, being first duly sworn on oath, depose and state that the following information is true and correct to the best of my knowledge and belief:

1. I am currently employed as a Correctional Officer at Western Illinois Correctional Center, and I have held this position since January 1996.

2. In 2005, I was a gallery officer assigned to Western's Housing Unit 2. As a gallery officer, my duties included providing security for the galleries to which I was assigned. This including conducting random searches of inmates' cells.

3. I am familiar with Inmate Steven P. Hibberd, #B-70027, and I have read the allegations in *Hibberd v. Jennings, et al.*, 07-3131.

4. On October 2, 2005, I conducted a random search of Inmate Hibberd's cell. During the search, I found in Inmate Hibberd's property box five documents containing legal materials that included other inmates' names and inmate numbers on them, and approximately 75 sheets of thick paper that I believed were stolen from the prison's print shop based on the paper's texture. I also found in his cellmate's property box some pills wrapped in a ramen noodle bag and concealed in a half bag of coffee, a pound of sugar, half a pound of oatmeal, and two extra razors.

5. IDOC rules prohibit inmates from possessing items belonging to other inmates, including legal materials, as well as other inmates' personal information, including inmate numbers. It is my understanding that this rule is designed to prevent inmates from bartering legal services for contraband, which is a security concern.

6. Inmate Hibberd was not authorized to possess other inmates' legal property because

**EXHIBIT**

tabbies

*H*

he was assigned as wing porter, not as an inmate law clerk.

7.    I consulted the cellhouse sergeant regarding the items that I found, and he told me to write Inmate Hibberd a disciplinary report.

8.    As a result, I confiscated these materials from Inmate Hibberd, and wrote him a disciplinary report charging him with Dangerous Contraband, Drug and Drug Paraphernalia, Theft and Contraband/Unauthorized Property. When contraband is found in a cell occupied by two inmates, both inmates are usually charged with possession of the contraband until it can be determined who it belongs to.

9.    I wrote this disciplinary report solely because I believed that Inmate Hibberd had violated Department rules.

10.    Inmate Hibberd was not disciplined for assisting other inmates with their legal work. He was disciplined for the unauthorized possession of their material without a court order of approval of the Chief Administrative Officer.

11.    At no time did I retaliate against Inmate Hibberd.

12.    I had no knowledge or any lawsuit filed by Inmate Hibberd until I was served with this one. Even if I had been aware that Inmate Hibberd had filed a lawsuit, that knowledge would have had no effect on my decision to write Inmate Hibberd the ticket for violating prison rules.

**Further, Affiant sayeth not.**

_____
James Watkins


Subscribed and sworn to before
me this _____ day of September, 2009.
_____
Notary Public


2

STATE OF ILLINOIS       )
                      ) ss.
COUNTY OF BROWN     )

*Hibberd v. Jennings, et al.,*
Case No. 07-3131

## <u>AFFIDAVIT OF PHILLIP POOL</u>

I, PHILLIP POOL, the undersigned, being first duly sworn on oath, depose and state that the following information is true and correct to the best of my knowledge and belief:

1.    I am currently employed as a Correctional Leisure Activity Specialist II at Western Illinois Correctional Center, and I have held this position April 1, 1990.

2.    In 2005, I was assigned to Western's Adjustment Committee, which conducts disciplinary hearings on disciplinary reports issued to inmates, determines whether the inmates are guilty of the infractions with which they are charged, and recommends discipline to the warden's office.

3.    I am familiar with Inmate Steven P. Hibberd, #B-70027, and I have read the allegations in *Hibberd v. Jennings, et al.*, 07-3131.

4.    On July 29, 2005, Forrest Ashby and I conducted the hearing on the Disciplinary Report that Inmate Hibberd received on July 25, 2005, for possession of contraband/unauthorized property and unauthorized possession or solicitation of personal information. At the hearing, the charges were read to Inmate Hibberd, who pled not guilty. Inmate Hibberd stated that he was going to the library, and that he had in his possession other inmates' legal work because he was doing their legal work for them. He also stated that he was assigned as a porter. Based on these admission, the Adjustment Committee found Inmate Hibberd guilty of both offenses, and recommended that his status be reduced to C-grade. The Adjustment Committee also recommended that the contraband that had been confiscated be disposed of pursuant to DR 501C.

EXHIBIT

*I*

tabbies

5.  I do not recall whether Inmate Hibberd submitted to the Adjustment Committee the affidavits he attached to his Complaint. However, they would have had no effect on my decision because they reinforced Inmate Hibberd's admissions that he was in possession of their legal property. Nor do I recall whether he submitted the 2000 ARB letter that is attached to his Complaint. However, I note that the ARB letter pre-dates the enactment of the rules Inmate Hibberd was charged with violating.

6.  A true and accurate copy of the July 2005 Disciplinary Report and Adjustment Committee Summary is attached to the Affidavit of Forrest Ashby as Ex. 1.

7.  Inmate Hibberd was not disciplined for assisting other inmates with their legal work. He was disciplined for the unauthorized possession of their material and personal information without a court order of approval of the Chief Administrative Officer.

8.  At no time did I retaliate against Inmate Hibberd.

9.  I had no knowledge or any lawsuit filed by Inmate Hibberd until I was served with this one. Even if I had been aware that Inmate Hibberd had filed a lawsuit, that knowledge would have had no effect on my decision to find him guilty of these offenses.

**Further, Affiant sayeth not.**

s/ Phillip Pool

PHILLIP POOL

Subscribed and sworn to before me this ____ day of September, 2009.

s/ Marcia K. Dormire

Notary Public

OFFICIAL SEAL
MARCIA K DORMIRE
Notary Public, State of Illinois
My Commission Expires 2-25-2011

2

IN THE UNITED STATES DISTRICT COURT **FILED**
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

JUN 2 7 2005

MICHAEL W. DOBBINS, CLERK
UNITED STATES DISTRICT COURT

| | |
|---|---|
| STEVEN P. HIBBERD, )<br><br>Plaintiff, )<br><br>vs. )<br><br>ROGER WALKER, Director of the Illinois )<br>Department of Corrections, JACKIE MILLER, )<br>Member of the Administrative Review Board, )<br>JERRY L. STERNES, Ex-Chief Executive )<br>Officer of Dixon Correctional Center, NEDRA )<br>CHANDLER, Acting Chief Executive Officer of )<br>Dixon Correctional Center, all four in their )<br>individual and official capacities, ASSISTANT )<br>WARDEN JAMES TRANSCOSO, )<br>SUPERINTENDENT MARY HENRY, )<br>GRIEVANCE OFFICER JAMES MARTENS, )<br>COUNSELOR ROSS ANDERSON, OFFICER )<br>WILLIAMS, EDUCATORS SUSAN DEVERS, )<br>MS. BAILEY, MS. WHEAT, LT. RICK )<br>SAMBDMAN, VARIOUS MEMBERS OF )<br>THE ORANGE CRUSH TACTICAL TEAM )<br>and OFFICER SOLBERG, each in their )<br>individual capacities. )<br><br>Defendants. ) | Case No. 05 C 50080<br><br><br>Judge Philip G. Reinhard<br><br>Magistrate Judge P. Michael Mahoney |

## FIRST AMENDED COMPLAINT

Plaintiff, STEVEN P. HIBBERD, complains against ASSISTANT WARDEN JAMES

TRANSCOSO, and LT. RICK SAMBDMAN, and various unknown officers and employees of the

Dixon Correctional Center, as follows:

1.  Plaintiff, Steven P. Hibberd ("Hibberd") brings this action pursuant to 42 U.S.C. §

1983, alleging violations of his federally protected rights as guaranteed by the Fourth, Eighth and

Fourteenth Amendments to the U. S. Constitution, as set forth in detail below.

**EXHIBIT**

**J**

2.      At all times relevant to this amended complaint, Hibberd was an inmate at the Dixon Correctional Center in Dixon, Lee County, Illinois, and who currently resides at Western Illinois Correctional Center, Mt. Sterling, Illinois.

3.      Defendant James Transcoso ("Transcoso") was, at all times relevant to this amended complaint, employed by the Illinois Department of Corrections as the Assistant Warden for Operations at the Dixon Correctional Center, and was, thereby, acting under color of law.

4.      Defendant Lt. Rick Sambdman ("Sambdman") was, at all times relevant to this amended complaint, employed by the Illinois Department of Corrections, at the Dixon Correctional Center as a corrections officer holding the supervisory rank of Lieutenant and was the supervisor of a tactical unit commonly referred to as the "Orange Crush."

5.      Jurisdiction is proper in the district court pursuant to 28 U.S.C. §§ 1331 and 1343 because the allegations of this amended complaint present a federal question.

6.      Venue is appropriate under 28 U.S.C. § 1391(b) because the events giving rise to this claim occured at the Dixon Correctional Center in Lee County, Illinois, which is located within the U.S. District Court for the Northern District of Illinois, Western Division.

### Factual Allegations

7.      On or about June 23, 2004, Hibberd was assigned to Unit 28 at the Dixon Correctional Center when at approximately 8:00 a.m. all inmates in the institution were ordered to go to their cells for a lockdown.

8.      About a half-hour later several members of the Orange Crush tactical unit, all wearing "riot gear" rushed into Unit 28 (the west wing of the facility). All inmates, including Hibberd were ordered by Orange Crush officers to stand at the doors of their individual cells. The Orange Crush officers were acting in an unnecessarily aggressive and threatening manner in that the inmates were

-2-

all locked into their cells and officers were shouting, using profanity, vulgarity and obscenity, and were pounding on cell doors with riot batons.

9.      Once all inmates were standing quietly at their cell doors, the cell doors were unlocked and opened. An officer of the Orange Crush unit directed Hibbard and his cell mate to come to the door so they could be handcuffed. Both Hibberd and his cell mate complied and were handcuffed.

10.      After all of the inmates in Unit 28 were similarly subdued they were directed to leave their cells and proceed to the "West Day Room" of Unit 28. While proceeding to the Day Room, Hibberd observed a correctional officer with a dog who identity is unknown but whom Hibberd believes to have been a canine officer and his dog.

11.      Upon entering the Day Room, Hibberd and the other inmates, who all remained handcuffed, were ordered to stand and face the wall and not to talk. The inmates complied, standing facing the wall approximately a foot and a half apart from each other. During this time the dog was being agitated by its handler so that it was barking and growling so that Hibberd felt threatened and in imminent fear of a dog attack.

12.      Hibberd and the other inmates remained in this position for approximately a half-hour while officers of the Orange Crush searched each inmate, one at a time.

13.      As each inmate was searched, an officer would remove that inmate's handcuffs and the inmate was directed to disrobe. During this process, all other inmates remained facing the wall and handcuffed while officers, both male and female, conversed and the dog continued to bark and growl. Several of the inmates, who were all male, including Hibberd, complained to officers about having to disrobe in the presence of female correctional employees.

14.      The strip-searches conducted in the Day Room were not only in the presence of all

-3-

other involved inmates but were observed by all of the correctional employees, both male and female, present in the Day Room, but also by correctional employees, both male and female, in the "control room" through windows.

15.    Rather than responding to inmate complaints about the conditions under which the strip searches were being conducted, members of the Orange Crush unit threatened inmates with segregation (solitary confinement) if they spoke or otherwise failed to submit to the search. Additionally, the dog continued to be used in an aggressive manner in close proximity to the inmates, including Hibberd, for the clear purpose of intimidating and threatening the individual inmates into compliance with the strip search.

16.    As the strip search proceeded, inmates who continued to complain about the presence of female correctional employees or other humiliating and unnecessary methods being employed were singled out for retaliation by officers of the Orange Crush Members in that they were further humiliated by being forced to bend over, spread their buttocks and lift their scrotums.

17.    While Hibberd was being strip searched he personally observed other inmates in the Day Room naked and being searched by the Orange Crush unit, numerous unidentified employees of the correctional center standing, walking around and talking in the area, two female corrections officers in the control room (one later identified as Officer William), three unidentified females, in civilian attire, in the Day Room in close proximity to him (later identified as Educators Susan Devers, Ms. Bailey, and Ms. Wheat), an African-American Orange Crush Member whose identity is not known, and a dog (which appeared to be a large black German Shepherd) near a table in an alert or ready position facing Hibberd and the other inmates.

18.    Hibberd did not complain to the officers searching him about having to take his clothes off in the Day Room in front of various people, including females whose presence did not

-4-

appear to him to relate in any way to the strip search, security or the need to maintain order, because

it appeared to be futile based on the unheeded complaints of the other inmates. Despite and in

response to those complaints, the inmates were threatened with segregation if he did not comply so,

without further complaint or resistence, Hibberd disrobed and submitted to the strip search. During

the search Hibberd was further humiliated in that he was ordered, in the presence of the other

inmates and both male and female correctional center employees, "bend over and spread your ass"

and to "lift your nuts." Hibberd who suffers from cystic acne (and has acne and acne scars on his

back), was laughed at and mocked by officers searching him because of his acne.

19.    On information and belief, while the strip searches were being conducted in the Day

Room, individual cells were being searched by other members of the Orange Crush unit.

20.    When Hibberd was ultimately returned to his cell he discovered the contents of the

cell were in disarray and that several items of non-contraband personal property had been removed

from his cell and were missing.

21.    Although Hibberd complained to correctional center officers about his missing

property he was never told what happened to the property, nor has any of the property been returned.

These items include but are not limited to:

    a)    a handcrafted ID Cardholder;
    b)    two "Highlighter" marking pens;
    c)    several pens;
    d)    a notebook which contained personal notes including research conducted by
          Hibberd in the correctional center's law library; and
    e)    two portrait drawings mounted to cardboard and covered in plastic.

22.    During the events described above, both Transcoso and Sambdman were physically

present and were seen directing and supervising the activities of the Orange Crush and other

employees of the Dixon Correctional Center involved in the above-described lockdown and search.

-5-

23.    Title 20, Chapter 1, Subchapter e, Subpart c, § 501.220(b) of the Illinois Administrative Code provides the following for searches of committed persons:

Strip searches and visual searches of anal or vaginal body cavities of committed person shall be conducted by persons of the same sex as the committed person and in an area where the search cannot be observed by persons not conducting the search, except in cases of an emergency.

24.    Title 20, Chapter 1, Subchapter e, Subpart c, § 501.220(b) of the Illinois Adminstrative Code provides for the following for the confiscation of property of committed persons:

(5)    All items of contraband discovered during a search shall be confiscated, marked, and placed in a secure area until disposition in accordance Section 501.230.

(6)    An employee conducting the search of a committed person's cell, room or dormitory shall complete a form indicating the date and time of the search, the identities of participating officers, and a list of property confiscated, if any, and present it to the committed person within a reasonable time after the search."

25.    Title 20, Chapter 1, Subchapter e, Subpart c, § 501.230(c) of the Illinois Administrative Code provides for the disposition of confiscated property if it is determined that property is contraband, including:

(1)    Have the property shipped at his own expense or have it picked up at the facility during certain hours by a person designated in writing.

(2)    Request in writing that the property be destroyed.

(3)    Indicate, in writing, that he has filed a grievance regarding the confiscation of the property.

26.    On information and belief, no "emergency" circumstances existed which would justify a strip search of Hibberd in a manner not allowed by Illinois regulation.

27.    Hibberd has never received any of the inventory documentation, including the form

-6-

commonly known as a "shake-down slip," and was expressly told by Sambdman that not all inmates whose cells were searched received a shake-down slip. In addition, he was never advised that the property taken from him was contraband, despite the dictates of Illinois regulation.

28.     In response to a formal grievance filed by Hibberd he has only been informed that while inmates do have some limited right of privacy, the tactics of the Orange Crush are not subject to review by the formal grievance procedure. (See Exhibits A, B, C, D and E).

29.     Strip-searching Hibberd in the presence of female employees, degrading, intimidating, threatening and humiliating in the manner set forth above is in clear contravention of procedure as established by the Illinois Administrative Code and thereby constitutes a violation of his right to be free from unreasonable searches and to be free from cruel and unusual conditions of confinement as guaranteed by the Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution.

30.     Confiscation of Hibberd's personal effects without required notice and opportunity to protest is in clear contravention of procedure as established by the Illinois Administrative Code and thereby constitutes a violation of his right to be secure in his effects, a deprivation of his property without due process and a violation of his right to be free from cruel and unusual conditions of confinement as guaranteed by the Fourth, Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution.

31.     All of the above described acts were done under the direction and supervision of defendants Transcoso and Sambdman, who knowingly, intentionally and with reckless disregard for the rights of Hibberd and other inmates, violated the dictates of the Illinois Administrative Code and the U.S. Constitution, all in an effort to purposely humiliate and summarily punish Hibberd and other inmates.

32.     As yet unknown officers of the Orange Crush carried out the unlawful orders of

Transcoso and Sambdman knowing those orders to be in clear violation of the rights Hibberd and

other inmates as established by the Illinois Administrative Code and secured by the Fourth, Fifth,

Eighth and Fourteenth Amendments to the U.S. Constitution, and further failed to act to stop these

violations.

    33.    As a direct and proximate result of the acts of Transcoso, Sambdman and other as yet

unknown employees of the Dixon Correctional Center, Hibberd has been embarrassed, humiliated,

caused to suffer distress and has lost personal property.

    For all of the foregoing reasons, plaintiff, Steven P. Hibberd, prays this court for entry of

judgment in his favor finding each of the defendants liable in their individual capacities and

awarding compensatory and punitive damages in a total amount in excess of $100,000, and costs

reasonable attorney's fees, in accordance with 42 U.S.C. § 1988.

### PLAINTIFF DEMANDS A TRIAL BY JURY

            STEVEN P. HIBBERD, Plaintiff, by his
            attorneys, WILLIAMS & McCARTHY


            BY: s/ Marc C. Gravino
                   Marc C. Gravino


Marc C. Gravino, Esq.
Williams & McCarthy
321 W. State Street, Suite 400
Rockford, IL  61101
Telephone: (815) 987-8900
H:\Teresa\MCG\Hibberd, Steven\1st Amended Complaint.wpd

CLOSED, MAHONEY

# United States District Court
## Northern District of Illinois - CM/ECF LIVE, Ver 3.2.3 (Rockford)
### CIVIL DOCKET FOR CASE #: 3:05-cv-50080

Hibberd v. Walker et al
Assigned to: Honorable Philip G. Reinhard
Referred to: Honorable P. Michael Mahoney
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 04/29/2005
Date Terminated: 09/05/2006
Jury Demand: Defendant
Nature of Suit: 550 Prisoner: Civil Rights
Jurisdiction: Federal Question

**Plaintiff**

**Steven P Hibberd**              represented by **Steven P Hibberd**
B-70027
Taylorville
P.O.Box 900
Taylorville, IL 62568
PRO SE

**Marc Charles Gravino**
Williams & McCarthy
120 W. State Street
PO Box 219
Rockford , IL 61105-0219
(815) 987-8900
Fax: (815) 965-5134
Email: mgravino@wilmac.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Roger Walker**              represented by **Illinois Department of Corrections**
*Director of the Illinois Department of*              100 West Randolph, Suite 4-200
*Corrections in his individual and*              Chicago , IL 60601
*official capacities*              *ATTORNEY TO BE NOTICED*

**Defendant**

**Jackie Miller**              represented by **Illinois Department of Corrections**
*Member of the Administrative Review*              (See above for address)
*Board in individual and official*              *ATTORNEY TO BE NOTICED*
*capacities*



**Defendant**

**Jerry L Sternes**
*Ex-Chief Executive Officer of Dixon*
*Correctional Center in his individual*
*and official capacities*

represented by **Illinois Department of Corrections**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Nedra Chandler**
*Acting Chief Executive Officer of Dixon*
*Correctional Center in individual and*
*official capacities*

represented by **Illinois Department of Corrections**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Assistant Warden James Transcoso**
*in his individual capacity*

represented by **Alexandra C. Buzanis**
Illinois Attorney General's Office
100 West Randolph Street
13th Floor
Chicago , IL 60601
(312)814-3713
Email: abuzanis@atg.state.il.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Illinois Department of Corrections**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Superintendent Mary Henry**
*in her individual capacity*

represented by **Illinois Department of Corrections**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Grievance Officer James Martens**
*in his individual capacity*

represented by **Illinois Department of Corrections**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Counselor Ross Anderson**
*in his individual capacity*

represented by **Illinois Department of Corrections**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Officer Williams**
*in individual capacity*

represented by **Illinois Department of Corrections**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Educator Susan Devers**

represented by **Illinois Department of Corrections**

*in her individual capacity* | (See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Educator Ms Bailey**          represented by   **Illinois Department of Corrections**
*in her individual capacity*                     (See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Educator Ms Wheat**           represented by   **Illinois Department of Corrections**
*in her individual capacity*                     (See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Educator Lt Rick Sambdman**   represented by   **Alexandra C. Buzanis**
*in his individual capacity*                     (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Illinois Department of Corrections**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Orange Crush Tactical Team**  represented by   **Illinois Department of Corrections**
*various members in their individual*            (See above for address)
*capacity*                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**Officer Solberg**             represented by   **Illinois Department of Corrections**
*in individual capacity*                         (See above for address)
*ATTORNEY TO BE NOTICED*

**Service List**                represented by   **Prisoner Correspondence - Internal Use Only**
Email:
Prison1_ILND@ilnd.uscourts.gov
*TERMINATED: 04/29/2005*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/21/2005 | 1 | RECEIVED Complaint by Steven P Hibberd (clb, ) (Entered: 04/22/2005) |
| 04/21/2005 | 2 | CIVIL Cover Sheet (clb, ) (Entered: 04/22/2005) |
| 04/21/2005 | 3 | MOTION by Plaintiff Steven P Hibberd for leave to proceed in forma pauperis (clb, ) (Entered: 04/22/2005) |
| 04/21/2005 | 4 | MOTION by Plaintiff Steven P Hibberd to appoint counsel (clb, ) (Entered: 04/22/2005) |

| 04/25/2005 | 5 | MINUTE entry before Judge Philip G. Reinhard : Plaintiff's motions 3 4 to proceed in forma pauperis and for appointment of counsel are held in abeyance pending further order of court. judge's staff mailed notice (jat, ) (Entered: 04/26/2005) |
| 04/29/2005 | 6 | COMPLAINT filed by Steven P Hibberd; Jury Demand.(jat, ) (Entered: 05/02/2005) |
| 04/29/2005 | 7 | MINUTE entry before Judge Philip G. Reinhard : The plaintiff's motion for leave to proceed in forma pauperis [#3] is granted. The court authorizes and orders the trust fund officer at the plaintiff's current place of incarceration to deduct $3.17 from the plaintiff's account for payment to the clerk of court as an initial partial filing fee, and to continue making deductions and payments in accordance with this order. The clerk is directed to send a copy of this order to the trust fund officer at the Western Illinois Correctional Center. However, summonses shall not issue at this time. The plaintiff's motion for appointment of counsel [#4] is hereby granted. Marc C. Gravino/ Williams & McCarthy/ 321 West State St, Suite 400/ Rockford, Illinois 61101/ (815)987-8900 is appointed to represent the plaintiff in accordance with counsel's trial bar obligations under the District Court's local rule 83.37. The complaint on file is dismissed without prejudice to appointed counsel filing an amended complaint within 60 days if the amended complaint comports with appointed counsel's obligations under Rule 11 of the Federal Rules of Civil Procedure. This case is set for an inital status conference at 1:30pm on 7/6/2005, before Magistrate Judge Michael P. Mahoney. [For further details see text below.] docketing mailed notice (jat, ) (Entered: 05/02/2005) |
| 05/12/2005 | 8 | LETTER from Marc Gravino dated 5/11/05. (jat, ) (Entered: 05/13/2005) |
| 05/12/2005 | | Set/Reset Hearings Status hearing re-set for 7/6/2005 at 11:00 AM; to be held telephonically (jat, ) (Entered: 05/13/2005) |
| 06/27/2005 | 9 | first AMENDED complaint by Steven P Hibberd against all defendants; with Jury Demand(jat, ) (Entered: 06/28/2005) |
| 07/06/2005 | 10 | MINUTE entry before Judge P. Michael Mahoney : Pursuant to request of counsel, Telephnic Status hearing reset for 7/13/2005 at 11:45 AM. Telephoned notice (glg, ) (Entered: 07/06/2005) |
| 07/13/2005 | 11 | MINUTE entry before Judge P. Michael Mahoney : Telephonic Status hearing held on 7/13/2005. Status hearing set for 9/30/2005 at 01:30 PM. Telephoned notice (glg, ) (Entered: 07/13/2005) |
| 07/19/2005 | 12 | SUMMONS Issued as to Defendants Lt Rick Sambdman, James Transcoso (jat, ) (Entered: 07/19/2005) |
| 08/12/2005 | 13 | SUMMONS Returned Executed by Steven P Hibberd as to Lt Rick Sambdman on 7/22/2005, answer due 8/11/2005; James Transcoso on 7/22/2005, answer due 8/11/2005 (jmm-r, ) (Entered: 08/15/2005) |
| 08/15/2005 | 14 | ATTORNEY Appearance for Defendants Lt Rick Sambdman, James Transcoso by Alexandra C. Buzanis; Notice of filing (jmm-r, ) (Entered: 08/15/2005) |
| 08/15/2005 | 15 | JURY Demand by Lt Rick Sambdman, James Transcoso (jmm-r, ) (Entered: |

| | | 08/15/2005) |
|---|---|---|
| 09/21/2005 | 16 | MOTION by Defendants Lt Rick Sambdman, James Transcoso to enlarge (time to file answer); notice of filing (jat, ) (Entered: 09/21/2005) |
| 09/30/2005 | 17 | MINUTE entry before Judge P. Michael Mahoney : Defendant's Motion for extension of time to answer 16 is granted. Telephonic Status hearing held on 9/30/2005. Response to complaint due by 11/10/2005. Telephonic Discovery Hearing set for 11/2/2005 at 09:45 AM. Telephoned notice (glg, ) (Entered: 09/30/2005) |
| 11/02/2005 | 18 | MINUTE entry before Judge P. Michael Mahoney : Telephonic Discovery hearing held on 11/2/2005. Response to complaint due 12/15/05. Telephonic Discovery Hearing/Settlement Conference set for 12/9/2005 at 09:45 AM. Telephoned notice (glg, ) (Entered: 11/02/2005) |
| 12/09/2005 | 19 | MINUTE entry before Judge P. Michael Mahoney : ?Telephonic Discovery/Settlement hearing held on 12/9/2005. Responsive pleading due 1/17/06. Telephonic Discovery Hearing/Settlement Conference set for 1/5/2006 at 09:45 AM. Telephoned notice (glg, ) (Entered: 12/09/2005) |
| 01/05/2006 | 20 | MINUTE entry before Judge P. Michael Mahoney : Telephonic Discovery hearing held on 1/5/2006. Response to complaint due by 2/28/2006. Telephonic Discovery Hearing set for 1/26/2006 at 09:45 AM. Telephoned notice (glg, ) (Entered: 01/05/2006) |
| 01/26/2006 | 21 | MINUTE entry before Judge P. Michael Mahoney : Telephonic Discovery hearing held on 1/26/2006. Response to complaint due by 3/31/2006. Telephonic Status hearing set for 3/9/2006 at 09:45 AM. Telephoned notice (glg, ) (Entered: 01/26/2006) |
| 03/09/2006 | 22 | MINUTE entry before Judge P. Michael Mahoney : Telephonic Discovery hearing held on 3/9/2006. Telephonic Discovery Hearing set for 3/30/2006 at 09:45 AM. Telephoned notice (glg, ) (Entered: 03/09/2006) |
| 03/30/2006 | 23 | MINUTE entry before Judge P. Michael Mahoney : Telephonic Discovery hearing held on 3/30/2006. Response to complaint due by 5/15/2006. Telephonic Discovery Hearing set for 5/8/2006 at 09:45 AM. Telephoned notice (glg, ) (Entered: 03/30/2006) |
| 05/08/2006 | 24 | MINUTE entry before Judge P. Michael Mahoney : Telephonic Discovery hearing held on 5/8/2006. Response to complaint due by 6/7/2006. Telephonic Settlement Conference set for 6/5/2006 at 09:45 AM. Telephoned notice (glg, ) (Entered: 05/08/2006) |
| 06/05/2006 | 25 | MINUTE entry before Judge P. Michael Mahoney : Telephonic discovery conference held and continued to 6/28/2006 at 09:45 AM. telephoned notice (jat, ) (Entered: 06/05/2006) |
| 06/28/2006 | 26 | MINUTE entry before Judge P. Michael Mahoney : Telephonic Discovery hearing held on 6/28/2006. Telephonic Discovery Hearing set for 7/24/2006 at 09:34 AM. Telephoned notice (glg, ) (Entered: 06/28/2006) |
| 07/24/2006 | 27 | MINUTE entry before Judge P. Michael Mahoney : Telephonic Discovery |

| | | hearing held on 7/24/2006. Telephonic Discovery Hearing set for 8/28/2006 at 09:30 AM. Telephoned notice (glg, ) (Entered: 07/24/2006) |
|---|---|---|
| 08/28/2006 | 28 | MINUTE entry before Judge P. Michael Mahoney : Telephonic Discovery hearing held on 8/28/2006. Parties report cause settled. Parties given to 9/28/06 to file stipulation to dismiss. Court retains jurisdiction to enforce settlement. Mailed notice (glg, ) (Entered: 08/28/2006) |
| 09/05/2006 | 29 | MINUTE entry before Judge Philip G. Reinhard : Civil case terminated.: Pursuant to Magistrate Mahoney's order of 8/28/06, this case is dismissed. Stipulation to dismiss to be filed by 9/28/06. Any pending motions are now moot. The court retains jurisdiction to enforce settlement. judge's staff mailed notice (jat, ) (Entered: 09/06/2006) |
| 09/27/2006 | 30 | MINUTE entry before Judge P. Michael Mahoney : Pursuant to request of counsel, the time to file the stipulation to dismiss is extended to 10/27/06. Court retains jurisdiction to enforce settlement. (glg, ) (Entered: 09/27/2006) |
| 10/17/2006 | 31 | STIPULATION of Dismissal (Doran, James) (Entered: 10/17/2006) |
| 10/17/2006 | 32 | NOTICE by all defendants re stipulation of dismissal 31 (Doran, James) (Entered: 10/17/2006) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/27/2009 14:59:13 | | |
| **PACER Login:** ag0061 | **Client Code:** | |
| **Description:** Docket Report | **Search Criteria:** | 3:05-cv-50080 |
| **Billable Pages:** 4 | **Cost:** | 0.32 |



20 IL ADC 504 App. A
20 Ill. Adm. Code 504.App. A
Ill. Admin. Code tit. 20, § 504.App. A

Page 1

**WEST'S ILLINOIS ADMINISTRATIVE CODE**
**TITLE 20: CORRECTIONS, CRIMINAL JUSTICE, AND LAW ENFORCEMENT**
**CHAPTER I: DEPARTMENT OF CORRECTIONS**
**SUBCHAPTER E. OPERATIONS**
**PART 504: DISCIPLINE AND GRIEVANCES**
**SUBPART G: GRIEVANCE PROCEDURES FOR RELEASEES**
Current with amendments received through October 28, 2005.

504.APPENDIX A Offense Numbers and Definitions

### 100. VIOLENT ASSAULT OF ANY PERSON

Causing a person or an object to come into contact with another person in a deadly manner or in a manner that results in or is likely to result in serious bodily injury.

### 101. ARSON

Setting fire in any location whether public or private, including, but not limited to, any part of the facility, its grounds, or State vehicles.

### 102. ASSAULTING ANY PERSON

Causing a person, substances, or an object to come into contact with another person in an offensive, provocative, or injurious manner or fighting with a weapon.

### 103. BRIBERY & EXTORTION

Demanding or receiving anything of value in exchange for protection, to avoid bodily injury, or through duress or pressure. Giving or receiving money or anything of value to violate State or federal law or to commit any act prohibited under this Part.

### 104. DANGEROUS CONTRABAND

Possessing, manufacturing, introducing, selling, supplying to others, or using without authorization any explosive, acid, caustic material for incendiary devices, ammunition, dangerous chemical, escape material, knife, sharpened instrument, gun, firearm, razor, glass, bludgeon, brass knuckles, cutting tools, tools which may be used to defeat security measures such as hacksaw blades, keys, and lock picks, any other dangerous or deadly weapon or substance of like character, or any object or instrument that is made to appear to be or could be used as a deadly or dangerous weapon or substance.

### 105. DANGEROUS DISTURBANCES

Causing, directing, or participating in any action or group activity that may seriously disrupt activities or endanger the facility, persons, or property, including the taking or holding of hostages by force or threat of force and engaging in prohibited group activities such as work stoppages or hunger strikes.

### 106. ESCAPE OR RUNAWAY

**EXHIBIT**
tabbies
L

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



20 IL ADC 504 App. A                                                                                              Page 2
20 Ill. Adm. Code 504.App. A
Ill. Admin. Code tit. 20, § 504.App. A

For escape of a felon or runaway of a juvenile delinquent, leaving or failing to return to lawful custody without authorization, including the failure to return from furlough, leave, or authorized absence within 2 hours after the designated time.

107. SEXUAL MISCONDUCT

Engaging in sexual intercourse, sexual conduct, or gesturing, fondling, or touching done to sexually arouse, intimidate, or harass either or both persons; or engaging in any of these activities with an animal.

108. SEXUAL ASSAULT

Causing unwilling contact between the sex organ of one person and the sex organ, mouth, or anus of another person or any intrusion of any part of the body of one person or object into the sex organ or anus of another person by use of force or threat of force, including pressure, threats, or any other actions or communications by one or more persons to force another person to engage in a partial or complete sexual act.

109. ELECTRONIC CONTRABAND

Possessing, selling, receiving, supplying to others, or using without authorization any electronic device, video recording device, computer, or cellular communications equipment, including, but not limited to, cellular telephones, cellular telephone batteries, pagers, computers, and computer peripheral equipment.

110. IMPEDING OR INTERFERING WITH AN INVESTIGATION

Obstructing, impeding, or refusing to provide information relevant to an investigation.

201. CONCEALMENT OF IDENTITY

Wearing a disguise or a mask, impersonating another, or otherwise concealing one's identity.

202. DAMAGE OR MISUSE OF PROPERTY

Destroying, damaging, removing, altering, tampering with, or otherwise misusing property belonging to the State, another person, or entity, including the obstruction of locks or security devices, destroying or tampering with bar codes or identification cards, or the use of another person's identification card.

203. DRUGS AND DRUG PARAPHERNALIA

Possessing, manufacturing, introducing, selling, supplying to others, or receiving alcohol, any intoxicant, inhalant, narcotic, syringe, needle, controlled substance, or marijuana; or being under the influence of any of the above substances; or refusing to be tested for drug or alcohol use, including failure to provide a specimen within 2 hours after the request; or destroying or tampering with drug or alcohol tests or testing equipment. This offense includes medication misuse, for example, the possession or use of unauthorized amounts of prescribed medication, or selling or supplying prescribed medication to others.

204. FORGERY

Forging, counterfeiting, or reproducing without authorization any document, article of identification, money, security, or official paper.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

20 IL ADC 504 App. A                                                    Page 3
20 Ill. Adm. Code 504.App. A
Ill. Admin. Code tit. 20, § 504.App. A

### 205. SECURITY THREAT GROUP OR UNAUTHORIZED ORGANIZATIONAL ACTIVITY

Engaging, pressuring, or authorizing others to engage in security threat group or unauthorized organizational activities, meetings, or criminal acts; displaying, wearing, possessing, or using security threat group or unauthorized organizational insignia or materials; or giving security threat group or unauthorized organizational signs. Unauthorized organizational activity shall include engaging in the above activities by or on behalf of an organization that has not been approved pursuant to 20 Ill. Adm. Code 445 or 450.

### 206. INTIMIDATION OR THREATS

Expressing by words, actions, or other behavior an intent to injure any person or property that creates the reasonable belief that physical, monetary, or economic harm to that person or to another will result.

### 207. POSSESSION OF MONEY

Possessing or causing to be brought into the facility any coin, currency, or other negotiable instrument without authorization or for residents of transition centers, failure to promptly submit all income to center staff, including wages, tips, gifts, or any check for social security, disability, veteran's benefits, grants, scholarships, or loans.

### 208. DANGEROUS COMMUNICATIONS

Engaging in verbal or written communication that is likely to encourage violence against persons or that is likely to disrupt or endanger the safety and security of the facility, including, but not limited to, escape plans and manufacture of weapons.

### 209. DANGEROUS WRITTEN MATERIAL

Possessing or causing to be brought into the facility written material that presents a serious threat to the safety and security of persons or the facility, including, but not limited to, written material relating to methods of escape and the manufacture of weapons.

### 210. IMPAIRMENT OF SURVEILLANCE

Using curtains, coverings, or any other matter or object in an unauthorized manner that obstructs or otherwise impairs the line of vision into an offender's cell or room or which obstructs or otherwise impairs any viewing panel or surveillance equipment, both audio and visual, within the facility.

### 211. POSSESSION OR SOLICITATION OF UNAUTHORIZED PERSONAL INFORMATION

Possessing or soliciting unauthorized personal information regarding another offender, releasee, employee, or former employee, including, but not limited to, personnel files, master files, medical or mental health records, photographs, social security numbers, home addresses, financial information, or telephone numbers except as authorized by a court order or as approved in writing by the Chief Administrative Officer.

### 212. FRIVOLOUS LAWSUIT

A pleading, motion, or other paper filed by the offender for which the court, in accordance with 730 ILCS 5/3-6-3, has found to be frivolous.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

## 213. FAILURE TO REVEAL ASSETS

For adult offenders and juvenile offenders tried as adults, failing to fully cooperate in revealing financial assets on the form provided, including tangible and intangible property and real and personal property; providing false or inaccurate information regarding financial assets or dependants on the forms provided; or refusing to cooperate in revealing financial assets on the form provided.

## 301. FIGHTING

Fighting with another person in a manner that is not likely to cause serious bodily injury to one or the other and that does not involve the use of a weapon.

## 302. GAMBLING

Operating or playing a game of chance or skill for anything of value, making a bet upon the outcome of any event, or possessing any gambling device. This shall include participating in any lottery.

## 303. GIVING FALSE INFORMATION TO AN EMPLOYEE

Lying or knowingly providing false information to an employee, either orally or in writing.

## 304. INSOLENCE

Talking, touching, gesturing, or other behavior that harasses, annoys, or shows disrespect.

## 305. THEFT

Taking property belonging to another person or entity or the facility without the owner's authorization.

## 306. TRANSFER OF FUNDS

Causing money to be transferred from one trust fund to another or through an outside source to the account of another offender or entering into contracts or credit agreements without written approval from the Chief Administrative Officer.

## 307. UNAUTHORIZED MOVEMENT

Being anywhere without authorization or being absent from where required to be or returning late or not traveling directly to or from any authorized destination without prior staff approval.

## 308. CONTRABAND OR UNAUTHORIZED PROPERTY

Possessing, giving, loaning, receiving, or using property that an offender has no authorization to have or to receive and that was not issued to the individual through regular procedures, including the unauthorized possession of food or clothing or the possession of property in excess of that which is authorized by the facility; or property that has been altered from its original state.

## 309. PETITIONS, POSTINGS, AND BUSINESS VENTURES

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Writing, signing, or circulating a petition without authorization; unauthorized distributing or posting of any printed or written materials, including surveys; engaging in an unauthorized business venture; or representing oneself as a corporation or official of a corporation without authorization.

### 310. ABUSE OF PRIVILEGES

Violating any rule regarding visits, mail, the library, yard, commissary, telephone, or recreational activities. This includes corresponding or communicating with a victim, a victim's family member, or any other person after the offender has received notice that such person has informed the Department that he or she does not wish to receive correspondence from the offender. However, if the conduct also constitutes a violation of federal or State law, a committed person may also be charged under #501.

### 311. FAILURE TO SUBMIT TO MEDICAL OR FORENSIC TESTS

Willfully refusing to submit to, or cooperate with, testing, examinations, or the provision of samples required by court order, State law, or current standards of public health and safety, including the refusal to submit to annual tuberculosis screening and mandatory HIV or DNA testing.

### 402. HEALTH, SMOKING, OR SAFETY VIOLATIONS

Smoking in an unauthorized area; tattooing or body piercing, including, but not limited to, piercing of the ear, nose, or lip; or disregarding basic hygiene of any person, cell, living or work area, or other place in the facility or its grounds.

### 403. DISOBEYING A DIRECT ORDER

Willfully refusing or neglecting to comply with an order, including the refusal to participate in educational testing; to accept a work, educational, or housing assignment; or to perform a work assignment.

### 404. VIOLATION OF RULES

Willfully disobeying any rule of the facility. If the specific offense is stated elsewhere in this Part, a committed person may not be charged with this offense. The rule violated must be specified in the disciplinary report.

### 405. FAILURE TO REPORT

Failure to report for a work, educational, or program assignment or for transport.

### 406. TRADING OR TRAFFICKING

Trading or trafficking with any person.

### 501. VIOLATING STATE OR FEDERAL LAWS

Committing any act that would constitute a violation of State or federal law. If the specific offense is stated elsewhere in this Part, an offender may not be charged with this offense except as otherwise provided in this Section. The State or federal offense must be specified in the disciplinary report.

### 601. AIDING AND ABETTING, ATTEMPT, SOLICITATION, OR CONSPIRACY

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



20 IL ADC 504 App. A                                                    Page 6
20 Ill. Adm. Code 504.App. A
Ill. Admin. Code tit. 20, § 504.App. A


Aiding and abetting any person in the commission of any of these offenses; attempting to commit any of these offenses; making plans to commit any of these offenses; soliciting another to commit any of these offenses; or conspiring to commit any of these offenses shall be considered the same as the commission of the offense itself and shall carry the penalty prescribed for the underlying offense.


(Source: Added at 27 Ill. Reg. 6214, effective May 01, 2003)
                        <General Materials (GM) - References, Annotations, or Tables>
20 ILAC § 504.App. A

**20 IL ADC 504 App. A**
END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

20 IL ADC 430.30                                                                          Page 1
20 Ill. Adm. Code 430.30
Ill. Admin. Code tit. 20, § 430.30

c

### WEST'S ILLINOIS ADMINISTRATIVE CODE
### TITLE 20: CORRECTIONS, CRIMINAL JUSTICE, AND LAW ENFORCEMENT
### CHAPTER I: DEPARTMENT OF CORRECTIONS
### SUBCHAPTER D: PROGRAMS AND SERVICES
### PART 430. LIBRARY SERVICES AND LEGAL MATERIALS

This document is current through August 28, 2009

l30.30 Assistance by Committed Persons

Committed persons may assist one another in the preparation of legal documents to the extent consistent with institutional security. Committed persons shall not receive compensation for such assistance.

<General Materials (GM) - References, Annotations, or Tables>
20 ILAC § 430.30, **20 IL ADC 430.30**

**20 IL ADC 430.30**
END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.



EXHIBIT
M