UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

STEVEN P. HIBBERD,
      Plaintiff,

vs.                                               07-3131

JOSEPH JENNINGS, et al.,
      Defendants.

MEMORANDUM OPINION AND ORDER

    Before the court are Defendants' summary judgment motion [49], Plaintiff's amended response [57] and Defendants' reply [59]. Defendants, Roger Walker, Jr., Forrest Ashby, Joseph Jennings, Julia Vincent, Philip Crary, James Watkins, Roger Zimmerman and Phillip Pool move for summary judgment pursuant to Fed. R. Civ. P. 56.

Standard

    Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

    "Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(c). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e). Further, "[t]he plaintiff cannot merely allege the existence of a factual dispute to defeat summary judgment …. Instead, he must supply

1

evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Systems, Inc*., 176 F.3d 390, 390 (7th Cir. 1999). Failure by the non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659. It is also well settled that "conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. Keri v. Barod of Trustees of Purdue University, 458 F.3d 620, 628 (7th Cir.2006)(*citing Haywood v. N. Am. Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir.1997).

Background

Plaintiff brings this action pursuant to 42 U.S.C. §1983 for alleged violations of his civil rights while he was incarcerated at Western Illinois Correctional Center (Western). Specifically, Plaintiff alleges that Defendants violated his right of access to the courts, his due process and free speech rights, and that they retaliated against him for filing a previous lawsuit and doing legal work for other inmates. On July 25, 2005, Plaintiff, who was assigned as a janitor, was found to be in possession of legal materials belonging to several other inmates for whom he was doing legal work. He was written a disciplinary report, found guilty and was demoted to C-grade for a month. Two months later, Plaintiff was disciplined again for possessing other inmates' legal documents, and he was demoted to C-grade again for a month.

Defendants' Undisputed Material Facts[1]

1. At all times relevant to this case, Plaintiff was incarcerated at Western. (Complaint.)
2. At all times relevant to this case, Defendant Walker was Director of the Illinois Department of Corrections. (Complaint; Affidavit of Roger E. Walker, para. 1, attached as Ex. B.)
3. At all times relevant to this case, Defendant Zimmerman was Warden at Western. (Affidavit of Roger Zimmerman, para. 1, attached as Ex. C.)
4. At all times relevant to this case, Defendant Ashby was a member of the Adjustment Committee at Western. (Affidavit of Forrest Ashby, para. 1, attached as Ex. D.)
5. At all times relevant to this case, Defendant Jennings was a Correctional Officer assigned

---

[1]Exhibits for all facts can be found attached to Defendants' Memorandum of Law [50] unless otherwise noted.

2

to Western's Intelligence unit. (Affidavit of Joseph Jennings, para. 1, attached as Ex. E.)

6. At all times relevant to this case, Defendant Vincent was a member of the Adjustment Committee at Western. (Affidavit of Julia Vincent, para. 1, attached as Ex. F.)
7. At all times relevant to this case, Defendant Crary was a Correctional Officer assigned to Western's Internal Affairs unit. (Affidavit of Philip Crary, para. 1, attached as Ex. G.)
8. At all times relevant to this case, Defendant Watkins was a Correctional Officer at Western. (Affidavit of James Watkins, para. 1, attached as Ex. H.)
9. At all times relevant to this case, Defendant Pool was a member of the Adjustment Committee at Western. (Affidavit of Phillip Pool, para. 1, attached as Ex. I.)
10. At all times relevant to this case, Defendants acted of color of state law.
11. At all times relevant to this case, Plaintiff's job assignment was as a wing porter. (Ex. E, para. 7;.Ex. G, para. 7.)
12. Plaintiff was transferred to Western on November 4, 2004, after he was disciplined for having his mother mail money to another inmate. (Affidavit of Steven Hibberd, p. 9, relevant pages of which are attached as Ex. A; Ex. D, para. 9.)
13. In that ticket, Plaintiff was also found to have had outside sources send money to unidentified inmates so that they could buy commissary items for him. (Ex. D, para. 9; Ex. D3.)
14. While at Western, Plaintiff did legal work for other inmates. (Complaint, Ex. A, p. 12-4.)
15. Prison rules allow inmates to assist each other with their legal work to the extent consistent with institutional security. (20 Ill. Admin. Code 430.30, a courtesy copy of which is attached as Ex. M.)
16. However, prison rules prohibit an inmate from possessing another inmate's legal property. (Ex. C, para. 6; Ex. E, para. 6; Ex. H, para. 5; Offense Numbers and Definitions, attached as Ex. L, Rule 308.)
17 This prohibition helps prevent inmates from bartering legal services for contraband. Allowing inmates to barter goods and services makes it harder to enforce the Department's contraband rules and creates security concerns when one inmate owes another inmate something. (Ex. C, para. 6; Ex. E, para. 6.)
18. Prison rules also prohibit inmates from possessing another inmate's personal information, including inmates number. (Ex. C, para. 7, Ex. L, Rule 211.)
19. Possession of another inmate's inmate number would allow him to steal money or charge commissary purchases from the other inmate's trust account. (Ex. C, para. 7.)
20. On July 25, 2005, Plaintiff had in his possession legal documents belonging to several other inmates when he went to the law library. (Ex. A, p. 10; Ex. E, para, 5 ; Ex. G, para. 5.)
21. Defendants Jennings and Crary found these documents during a routine search of Plaintiff. (Ex. A, p. 10; Ex. E, para. 4; Ex. G, para. 4.)
22. Inmates are commonly searched on their way into the law library because it is one of only a few places where inmates from all four wings come together, and it is common for inmates to pass contraband there. (Ex. E, para. 4; Ex. G, para. 4.)
23. After Plaintiff was found with other inmates' legal property, his cell was searched, and more legal materials belonging to another inmate was found. (Ex. A, p. 11; Ex. G, para.

3

8; Ex G, para. 9.)
24. The documents belong to Inmates Walter Malone, Jeffrey Estrada, Marvin Greer and Daniel Escobedo. (Ex. A, p. 13.)
25. Plaintiff had the other inmates' legal property because he was helping them with their legal matters. He was not using them to help him with his own legal matters. (Ex. A, p. 12.)
26. Plaintiff concedes he had had their documents for a few days when he was found with them. (Ex. A, p. 13.)
27. Plaintiff said he had brought them with him to the law library because he planned to return them to the inmates there. (Ex. A, p. 13.)
28. This was Plaintiff's arranged meeting place for accepting or returning other inmates' legal documents. (Ex. A, p. 14.)
29. Defendant Jennings wrote Plaintiff a disciplinary report charging Plaintiff with contraband/unauthorized property and possession or solicitation of unauthorized personal information. (Ex. D1; Ex. E, para. 9; Ex. G, para. 10.)
30. Plaintiff was served with the ticket on July 25, 2005. (Ex. D1.)
31. Defendants Pool and Ashby held an Adjustment Committee hearing on July 29, 2009. At the hearing, Plaintiff requested no witnesses, and he admitted that he was assigned as a porter and that he was in possession of other inmates' legal materials. (Ex. D, para. 4; Ex. D1; Ex. I, para. 4.)
32. The Adjustment Committee found Plaintiff guilty of both charges, based on Plaintiff's admission that he was assigned as a wing porter, and his admission that he had other inmates' legal materials. (Ex. D, para. 4; Ex. D1; Ex. I, para. 4.)
33. The Adjustment Committee's only recommendation for discipline was that Plaintiff's grade status be reduced to C-grade for one month. (Ex. D, para. 4; Ex. D1; Ex. I, para. 4.)
34. The Adjustment Committee also recommended that the contraband be disposed of in accordance with DR 501C, which gives the owner the opportunity to determine whether it will be destroyed or sent out of the institution. (Ex. D, para. 4; Ex. D1; Ex. I, para. 4.)
35. Warden Polk concurred in the recommendation. (Ex. C, para. 4; Ex. D1.)
36. After Plaintiff was served with the ticket, he obtained from the four inmates whose legal property he had affidavits in which he states that the inmates had given Plaintiff their legal documents. (Ex. A, p. 17-8.)
37. Plaintiff attached those affidavits to a grievance dated August 18, 2005, which is attached to Plaintiff's Complaint. (Complaint; Ex. A, p. 17-18.)
38. Plaintiff alleges that the Adjustment Committee refused to look at the affidavits. (Ex. A, p. 18.)
39. Although Defendants Ashby and Pool do not recall whether Plaintiff submitted these affidavits to the Adjustment Committee, they would reinforce Plaintiff's admissions that he was in possession of other inmates' legal property. (Ex. D, para. 5; Ex. I, para. 5.)
40. Defendants' actions were taken solely because they believed Plaintiff had violated Department contraband rules, and they would have been taken regardless of any legal actions taken by Plaintiff. (Ex. D, para. 4-5; Ex. E, para. 11; Ex. G, para. 13; Ex. I, para. 4-5.)

41. On October 2, 2005, Defendant Watkins conducted a random search of Plaintiff's cell. (Ex. H, para. 4.)
42. During the search, Defendant Watkins noticed some legal documents that bore other inmates' names and inmate numbers, and approximately 75 sheets of paper believed to be stolen from the print shop, as well as some other contraband. (Ex. H, para. 4.)
43. After checking with his cellhouse sergeant, Defendant Watkins wrote Plaintiff a shakedown slip and a disciplinary report charging him with dangerous contraband, drug and drug paraphernalia, theft and contraband/unauthorized property. (Ex. H, para. 7, 8.)
44. Although the pills, razors and food were found in Plaintiff's cellmate's property box, it is common to charge both cellmates with possession of the contraband until ownership can be determined. (Ex. H, para. 8.)
45. Plaintiff was served with the ticket on October 2, 2005. (Ex. D4.)
46. Defendants Vincent and Ashby were members of the Adjustment Committee that heard the ticket on October 6, 2005. (Ex. D, para. 7; Ex. F, para. 4.)
47. Plaintiff requested one witness, Counselor Tara Goins, whose testimony the Adjustment Committee determined was not relevant, since she did not witness the shakedown or confiscate the items in question. (Ex. D4.)
48. At the hearing, Plaintiff pleaded not guilty, and stated that he was a 2D wing porter, that he was allowed to have the other inmates' legal documents because he had obtained them at Dixon Correctional Center. He also stated that he had obtained the 75 sheets of paper from another inmate, and that the pills, razors and food belonged to his cellmate. (Ex. D, para. 7; Ex. D4; Ex. F, para. 4.)
49. The Adjustment Committee deleted the dangerous contraband and drug charges. (Ex. D, para. 8; Ex. F, para. 5.)
50. Plaintiff was found guilty of contraband/unauthorized property, and the theft charge was reduced to violation of rules, specifically Rule 60 of the Inmate Orientation Manual. (Ex. D, para. 8; Ex. F, para. 5.)
51. Rule 60 prohibits inmates from giving, loaning, trading or receiving anything from another offender. (See Rule 60, attached as Ex. D2.)
52. The Adjustment Committee's only recommendation for discipline was that Plaintiff's grade status be reduced to C-grade for one month. (Ex. D, para. 8; Ex. D4; Ex. F, para. 5.)
53. The Adjustment Committee also recommended that the contraband be disposed of in accordance with DR 501C. (Ex. D, para. 8; Ex. D4; Ex. F, para. 5.)
54. The decision was based on Plaintiff's admissions that he was assigned as a wing porter, and not as a legal assistant in the law library, that he had the documents in question, and that he obtained the thick paper from anther inmate. The committee also noted that Plaintiff had numerous prior tickets for contraband or trading and trafficking. (Ex. D, para. 9; Ex. D4; Ex. F, para. 6.)
55. Warden Polk concurred in the recommendation. (Ex. C, para. 4; Ex. D4.)

56. Defendants' actions were taken solely because they believed Plaintiff had violated Department contraband rules, and they would have been taken regardless of any legal actions taken by Plaintiff. (Ex. D, para. 4-5; Ex. E, para. 11; Ex. F, para. 6; Ex. H, para.

9.)

57. The guilty findings on these two tickets still stand; neither has been overturned. (Ex. A, p. 20.)
58. Plaintiff alleges that the July 25, 2005, ticket was issued in retaliation for a lawsuit he had filed in the Northern District, Hibberd v. Walker, et al., 05-50080. (Complaint.)
59. That lawsuit addressed events that allegedly occurred at Dixon Correctional Center, and named as defendants Assistant Warden Trancoso and Lt. Rick Sambdman, both Dixon employees. (See First Amended Complaint, attached as Ex. J.)
60. Plaintiff believes Defendants in the previous case were served with summons just days before the July 25, 2005, confiscation of the documents. (Ex. A, p. 16.)
61. The only Defendant in this case who was named as a Defendant in the previous case is Defendant Walker. (Ex. K; PACER from 05-50080, attached as Ex. L.)
62. However, Defendant Walker was never served, and in fact, summons was never issued as to him. (Ex. L.)
63. The Northern District ordered summonses to issue for the two defendants at Dixon in that case on July 19, 2005, but the executed waivers were not returned until August 12, 2005. (Ex. L, Doc. 9.)
64. The Defendants in this case were not aware of the prior lawsuit until they were served with this one. (Ex. C, para. 9; Ex. D, para. 13; Ex. E, para. 14; Ex. F, para. 10; Ex. G, para. 14; Ex. H, para. 12; Ex. I, para. 9.)
65. Plaintiff concedes the confiscation of his documents did not hurt his previously filed case. (Ex. A, p. 17.)
66. He believes that the confiscation of the documents on the second ticket affected his ability to file the current lawsuit because the affidavits that he would use for evidence were confiscated. (Ex. A, p. 18.)
67. This lawsuit was filed on July 18, 2007. (Complaint.)
68. The affidavits in question are attached to his Complaint. (Complaint.)
69. The guilty findings on both tickets still stand because neither has been overturned. (Ex. A, p. 20.)
70. Plaintiff concedes he has no claim against Defendant Walker. (Ex. A, p. 54.)
71. Defendant Zimmerman had no involvement in either discipline, and Plaintiff has no evidence to the contrary. (Ex. A, p. 51-2; Ex. C, para. 4.)
72. The actions of Defendants Jennings, Crary and Watkins were taken solely because they believed Plaintiff had violated Department contraband rules, and they would have been taken regardless of any legal actions taken by Plaintiff. (Ex. E, para.11, 14; Ex. G, para. 13, 14; Ex. H, para 9, 12.)


Plaintiff's Additional Undisputed Material Facts

1. While at Western, Plaintiff regularly helped other inmates who desired his assistance which would entail speaking to them in prison, conducting research, drafting legal

documents and teaching them to perform their own work. (Plaintiff's Affidavit, Exh. A, para. 17)
2. Legal documents require the names, addresses and prison identification numbers of the inmates to whom the documents pertain. (Id. at para. 18.)
3. The Department rule for unauthorized property/contraband infers that inmates are allowed to possess property if they are authorized. The rules does not specifically refer to legal documents belonging to other inmates, what constitutes authorized activities to be exempt from the rule, nor specifies what procedures an inmate must take to possess another's legal documents to assist them. (Id. at para. 4; Ex. L, Rule 308.) However, the Department's rules prohibit an inmate from possessing any property belonging to other inmates. Moreover, Plaintiff has never alleged that he asked anyone for permission to possess another inmate's legal documents to assist them. (Rule 308, Ex. L; Orientation Manual Rule 60, Ex. D2.)
4. The Department rules for unauthorized possession or solicitation of personal information infers that inmates may possess certain personal information only if it is authorized. The rule does not specify the type of information intended for public use or interest, such as that contained in legal documents, documents already filed or intended to be filed. The rules does not specify what constitutes authorization. (Plaintiff's Affidavit, Exh. A, para. 6, Exh. L, Rule 211.) However, the Department's rules prohibit an inmate from possessing any property belonging to other inmates without authorization. Moreover, Plaintiff has never alleged that he asked anyone for permission to possess another inmate's legal documents to assist them. (Ex. L; Rule 308.)
5. Inmates' names and identification numbers are of public record, found on acout documents, in case law and on websites. (Plaintiff's Affidavit, Exh. A, para. 7.)
6. Defendant Jennings told Plaintiff that he could no longer possess another inmates' name, number or legal work. (Exh. E.)
7. Defendant Walker claims that rules and policies at IDOC do not conflict. (Defendants' response to Interrogatories, Exh. G attached to Plaintiff's response.)
8. Defendant Jennings admitted in his July 25, 2005 disciplinary report that Plaintiff was "assisting" inmates with their "legal paperwork" which is consistent with language in Department 430.30 authorizing legal assistance by committed persons. (See disciplinary ticket attached to Exh. D.) However, Rule 430.30 does not authorize an inmate to have other inmates' legal property without authorization.
9. Specific Department rules exist to place an inmate on notice that discipline will be impsed for bartering legal services or otherwise seeking compensation by any means. (Plaintiff's Exh. A, para. 5; Exh. L.) The fact that inmates may be disciplined if they are caught bartering for legal services should not prevent the Department from maintaining policies that help prevent inmates from engaging in that activity.
10. Safeguards are in place to prevent theft or unauthorized commissary purchases by using other inmates' numbers. (Plaintiff's Affidavit.) An inmate is required to show his ID card, which contains a bar code, and provide a copy of his fingerprint in order to make commissary purchases. However, there is no mechanism at Western for scanning the inmate's bar code or fingerprint before the purchase is made. Consequently, Defendants dispute that these measure prevent all unauthorized commissary purchases. (Affidavit of

7

Steve Ashcraft, attached reply [59] as Ex. A, para. 6.)
11. Specific Department Rules exist to place inmates on notice that discipline would be imposed for theft or attempted illegal commissary purchases using other inmates' information[2]. (Plaintiff's Exh. A para. 8.) An inmate caught making commissary purchases using another inmate's number can be disciplined for doing so.
12. Only the Plaintiff was disciplined for possessing the legal documents. Defendant Jennings did not charge any of the inmates who owned the documents with offenses relative to giving their documents to Plaintiff[3]. (Plaintiff's Affidavit, Exh. A., para. 25; Exh. E; Exh. H, para. 9.)
13. Department rules, the grievance forms and disciplinary reports encourage inmates to provide the identities of witnesses involved in the matter complained of, and to attach pertinent documents.
14. Illinois law prohibits the IDOC staff from disciplining an inmate for filing a grievance
15. Defendant Watkins shook Plaintiff's down four days after he was restored t Grade A status following the sanctions imposed from Defendant Jennings' disciplinary report. Exh. D-4.)
16. The documents Defendant Watkins confiscated did not belong to other inmates. The documents were Plaintiff's, as he drafted them the inmates signed them, and Plaintiff turned copies of them over to the Administration, via the August 18, 2005 grievance. (Plaintiff's Affidavit, Exh. A, para. A, Plaintiff's Exhs. E, J, K, L, and M.) In response Defendants assert that they cannot admit or deny whether the documents attached to Plaintiff's response are the legal documents that were confiscated by Defendant Watkins on October 2, 2005. However, Plaintiff admitted to the Adjustment Committee four days later that he was in possession of other inmate's property. (Ex. D-4.) Further, had he told Defendant Watkins what he claims in this allegation, he would have admitted to violating Rule 309 by passing affidavits he drafted to other inmates to sign, unless he was authorized to do so, and he likely would have been charged with that offense. (Ex. L, Rule 308.)
17. During the course of the shakedown, Defendant Watkins communicated with Defendant Jennings.
18. Defendants admit that Jennings and Watkins exercised their discretion, in determining that Plaintiff had violated prison rules.
19. Pertaining to the inmates' statements, Plaintiff was not assisting them. They were assisting Plaintiff by providing the statements. (Plaintiff's Affidavit, Exh. A, para. 28.)

---

[2]Defendants dispute that this prevents all unauthorized commissary purchases.

[3]In response Defendants assert Plaintiff is not the only inmate ever disciplined for possessing other inmates' legal property. Further, Defendants state they do not dispute that the inmates whose legal property Plaintiff was found to be illegally in possession of were disciplined. The Defendants seem to state the other inmates were disciplined, but do not support it any affidavit or other competent evidence.

In response, Defendants state that none of the Defendants can confirm or deny that the affidavits attached to Plaintiff's Response were the documents confiscated on October 2, 2005. It should also be noted that Plaintiff would have violated Rule 309 by passing affidavits he drafted to other inmates to sign, unless he was authorized to do so. (Ex. L, Rule 308.)

20. It is not a standard practice at Western to charge inmates with disciplinary offenses who submit another inmate's name and number in support of a grievance. (Exh. Para. 3.)

Disputed Material Facts

1. Defendants have not and cannot cite any rules at Western that allows only inmates assigned as law clerk to assist other inmates in law matters or permits only law clerks to possess other inmates' legal documents in order to provide legal assistance. (Plaintiff's Exh. A, para. 16.) In response, Defendants assert that Rule 308 explicitly prohibits inmates from possessing other inmates' property without authority. (Ex. L.)
2. Western law library rules actually recognize non-clerks are allowed to help other inmates with their work. (Plaintiff's Exhibits B and C.) In response, Defendants admit that the law library rule indicates that inmates who are not on court deadline may assist other inmates with their legal work. However, they do not authorize an inmate helping other inmates to possess other inmates's legal documents. (Ex. B to Plaintiff's Response.)
3. Department Rule 430.30 does not include a rule banning the trade of legal documents to render legal assistance. Defendants assert that there is another Department Rule prohibiting trading and trafficking.
4. In order for Plaintiff to meaningfully assist other inmates, Plaintiff often required extended access to legal documents generated in their particular case to perform research, to draft legal documents to be filed, or make a decision not to draft such documents. (Plaintiff's Affidavit, Exh. A, para. 18.) In response, Defendants assert the Department's rules allow Plaintiff to discuss an inmate's case with him and to give him the benefit of his legal knowledge.
5. Inmates assigned as law clerks and inmates assigned as janitors or other jobs pose equal security risk at Western, as it is pertains to temporarily possessing other inmates legal documents and information whether assisting or exploiting them. In response, Defendants assert that Inmates whose jobs require them to have access to other inmate's legal documents can be monitored to make sure they are not creating security problems. (Affidavit of Steve Ashcraft, attached to reply as Exh. A, para. 4.)
6. The same rule another inmate wax charged with in 1999 and 2000 was the same rule that existed in 2005 when Plaintiff was charged with possessing other inmates' legal materials. (Plaintiff's. Affidavit, Exh. A, para. 23.) In response, Defendants state the he rule was amended in 2003. (See 20 Ill. Reg. 6214.)
7. Plaintiff submitted copies of the inmates' statements to Committee, Defendants Ashby and Pool to support his defense pertaining to Defendant Jennings' disciplinary report. Neither Defendant objected to the statements, nor took steps to discipline Plaintiff for retaining copies of the statements that contained the inmates' names and numbers. (Plaintiff's Affidavit, Exh. A, para. 25.) Defendants have stated that they don't recall

9

whether Plaintiff tried to submit any affidavits at his disciplinary hearing. Further, the Adjustment Committee Summary does not indicate that Plaintiff presented any evidence other than his own statements. (Ex. D, para. 2; Ex. D1; Ex. I, para. 5.)

8. Defendant Watkins was aware that Plaintiff was active in litigation and attended the law library regularly. (Plaintiff's Affidavit, Exh. A, para. 27.) Defendants respond that this allegation is vague as to the meaning of "active in litigation." To the extent that Plaintiff means active in his own ligation, Defendants dispute this allegation. (Ex H, para. 12.) If

9. When Defendant Watkins shook Plaintiff down, he confiscated the original inmate statements. When Plaintiff explained their use, produced a copy of the grievance with the statements attached, Watkins told Plaintiff that he could keep copies, but not the originals. Watkins also told Plaintiff that he did not care and "could tell the Committee." In response, Defendants state they have no way of knowing whether the legal documents confiscated six years ago were original inmate statements, and they deny that Defendant Watkins made the statement.

10. Disputed. Although Defendants do not dispute that Defendant Watkins' did not contact the print shop before writing Plaintiff a ticket, Defendants do dispute that his decision was based solely on the fact that it was in Plaintiff's property box. Defendant Watkins' decision was based on the paper's texture. (Ex. H, para. 4.)

11. The issue of purported stolen printshop paper was never verbally addressed at the hearing before Defendants Ashby and Vincent. The inmate statements were the only issue that was considered. In response, Defendants assert the Adjustment Committee reduced the theft charge to violation of Rule 60 after Plaintiff said he obtained the paper from another inmate. (Ex. D, para. 8; Ex. D4; Ex. F, para. 4-5.)

12. Plaintiff did not tell Defendants Ashby and Vincent that the documents Defendant Watkins confiscated belonged to other inmates. Defendants dispute and points to Exh. D, para. 9; Exh. D-4; Ex. F, para. 4-5.

13. Plaintiff specifically told Defendants Ashby and Vincent that the documents Defendant Watkins confiscated were part of a grievance filed on April 18, 2005. Plaintiff produced a copy of the grievance and requested that his counselor be contacted to verify the grievance. Defendants dispute and point to Exh. D, para. 9; Exh. D-4; Ex. F, para. 4-5.

14. Although Plaintiff was not charged by Defendant Watkins for possessing the Administrative Review Board's decision pertaining to Inmate Coleman (Exh. F.) Defendants sustained the charges in part after Plaintiff submitted it in support of his defense. (Final Summary Report attached to Dfts, Exh. D-4.) In response, none of the Defendants can confirm or deny that Plaintiff submitted an ARB report from Inmate Coleman. However, the 2000 summary would have had no bearing on their decision, because the rule Plaintiff was charged with violating was not enacted until 2003. Further, Plaintiff was found guilty of possessing other inmates' legal work. The two deleted charges dealt with possession of drugs and dangerous paraphernalia (pills and excess razors.) (Ex. D-4.)

15. Defendants Ashby and Vincent also sustained the charges by Defendant Watkins on the basis that Plaintiff was not permitted to assist other inmates with their legal work since he was not a law clerk. This is a broader basis than for merely possessing other inmates' legal documents. (Final Summary Report, Exh. D-4.) In response Defendants admit that

10

Plaintiff was found guilty of the theft and contraband charges and that their summary indicated that allowing Plaintiff to assist other inmates with their legal work was not consistent with institutional security. However, the summary refers to DR 430.30, which explicitly allows inmates to assist one another "to the extent consistent with institutional security." Additionally, Plaintiff was found guilty of contraband, and the Adjustment Committee took notice of the fact that Plaintiff had been previously disciplined for contraband or trading and trafficking on four previous occasions. These factors make it clear that the basis for the guilty finding was that Plaintiff illegally possessed documents so that he could help them with their legal work.

16. As to the October 2, 2005 disciplinary ticket, at the Adjustment Committee hearing, Plaintiff admitted to having the other inmate's legal documents. (Ex. D-4.)
17. Plaintiff is deterred from filing grievances or assisting other inmates without taking possession of their legal property. (Plaintiff's Affidavit, Exh. A, para. 29.)
18. The Defendants' actions were taken because of Plaintiff's mutual legal assistance to other inmates, filing the prior lawsuit, and filing the August 18, 2005 grievance, not because they believed in good faith that Plaintiff violated Department contraband rules. In response, Defendants assert their actions were taken solely because Plaintiff violated prison rules. (Ex. C, para. 10; Ex. D, para. 13; Ex. E, para. 14; Ex. F, para. 6-10; 10; Ex. G, para. 13-14; Ex. H, para. 9-12; Ex. I, para. 7-9.)
19. Western correctional staff were aware of the lawsuit, via numerous letters sent to Western Clinical Services prior to the July 25, 2005 confiscation of legal documents. The letters were authored by Plaintiff's attorney. (Plaintiff's Affidavit, Exh. A, para. 13.) In response, Defendants assert that none of the Defendants were aware of Plaintiff's lawsuits until they were served with this one. (Ex. C, para. 9; Ex, D, para. 13; Ex. E, para. 14; Ex. F, para. 14; Ex. G, para. 14; Ex. H, para. 1; Ex. I, para. 9.) It should also be noted that the four letters from Plaintiff's criminal lawyer that Plaintiff claims proves that Defendants knew about his previous lawsuit does not prove anything. First, these letters are addressed "To Whom It May Concern," and they only request attorney phone calls with Plaintiff. These letters would have been handled by the prison's litigation coordinator, whose job it is to handle such requests, not any of the Defendants. Second, none of these letters contain any of the Defendants' names, except for Defendant Walker. (Ex. A-4 to Plaintiff's Response to Defendant's Motion for Summary Judgment.)


Immaterial

1. There are no rules at Western that expressly delineate the contours of "assist" as applied to Department Rule 430.30. Plaintiff's Affidavit, Exh. A, para. 16.) In response, Defendants assert Rule 308 clearly states that an inmate cannot "assist" another inmate by possessing his legal documents without authority. (Ex. L.) Whether the rule describes the word "assist" is irrelevant to whether Plaintiff was properly disciplined for possessing other inmates legal documents without authorization.
2. There are no rules at Western that expressly delineate the contours of "preparation of

11

legal documents" as applied to Department Rule 430.30. See. Defts. Exh. M. In response, Defendants assert Rule 308 clearly states that an inmate cannot "assist" another inmate in the preparation of legal documents by possessing his legal documents without authority. (Ex. L.) Whether the rule describes the "contour of 'preparation' of legal documents is irrelevant to whether Plaintiff was properly disciplined for possessing other inmates legal documents without authorization.

3. Western's Orientation Manual describes legal documents to mean "pleading, complaints, petitions, briefs, exhibits, affidavits, notice of filings, or other documents to be filed in a court of law or other forum in which a suit may be filed or which are required to be served upon opposing counsel or parties. (Orientation Manual attached to Plaintiff's response as Exh. D. Defendants do not dispute this, but adds: however, this definition is limited to the particular paragraph cited by Plaintiff, which deals with the photocopying of legal materials. (Ex. D to Plaintiff's Response.) As this descriptions relates to photocopying, it is irrelevant as to whether Plaintiff was properly disciplined for possessing them without authorization..

4. Plaintiff cannot draft legal documents without possessing at least one legal paper pertaining to the inmate who needs help. (Plaintiff's Affidavit attached to his reply) Whether Plaintiff can draft documents for other inmates without possessing their legal documents is irrelevant to whether Plaintiff was properly disciplined for possessing them without authorization.

5. Immaterial. Rules governing Taylorville Correctional Center are not relevant to whether Defendants at Western violated his constitutional rights.

6. Immaterial. What types of legal documents belonging to other inmates Plaintiff had in his possession is not relevant to whether he possessed them without authorization. Further, Plaintiff does not dispute that he possessed them.

7. Immaterial. Whether Defendant Jennings made this statement is not relevant to whether Plaintiff violated prison rules.

8. Law clerks are not allowed to possess other inmates' legal documents even if they are helping inmates. (Plaintiff's Affidavit, Exh. A, para. 22.) In response, Defendants assert that inmate law clerks are allowed to assist other inmates while they are in the law library. They are not allowed to possess other inmates' legal property outside of the law library. Whether or not law clerks are allowed to posses other inmates' legal documents is irrelevant to whether Plaintiff was properly disciplined for possessing them without authorization.

9. Immaterial. The rule prohibiting inmates from possessing the personal information of other inmates' contraband was not enacted until May 1, 2003, which is three years after the ARB's decision on Jefferson Coleman. (See 27 Ill. Reg. 6215, Rule 211. For the Court's convenience, relevant parts of this regulation are attached to Defendants' reply [59] as Ex B.) Further, the Coleman decision does not indicate why the charges were unsubstantiated. For these reasons, the ARB's decision regarding Inmate Coleman's 2000 ticket is irrelevant in this case.

10. If Plaintiff is asking wither Defendant Watkins knew Plaintiff was active in other inmates' litigation, the allegation is immaterial. Whether Defendant Watkins knew Plaintiff helped other inmates with their lawsuits is not relevant to whether Plaintiff

12

disciplined for illegally possessing their legal documents.
11. Defendant Watkins was aware that Plaintiff was discipline for possessing legal documents. Whether Defendant Watkins knew that Plaintiff had previously been disciplined for possessing other inmates' legal documents is not relevant to whether he properly wrote Plaintiff a ticket for violating the rule again.
12. Whether the other inmates were charged with giving Plaintiff the documents in question is not relevant to whether Plaintiff was charged with possessing them.
13. None of the inmates who signed the statements were ever contacted by staff to send out or destroy the documents. This is the same evidence Defendants admit to destroying. (Plaintiff's Affidavit, Ex. A, para. 11.) Whether the actual owners of the legal documents found in Plaintiff's possession where allowed to send out their documents or that the documents were destroy is not relevant to whether Plaintiff violated the Department's rules against possessing them.
14. Whether Plaintiff was given a written explanation beyond the disciplinary report and Adjustment Committee Summary is irrelevant to whether he violated prison rules.

The following facts submitted by Plaintiff will not be considered by the court for the reasons indicated.
1. No where in Plaintiff's statement to Defendants Ashby and Vincent did Plaintiff state the paper confiscated by Defendant Watkins was obtained from another inmate and Defendants' claim in the final summary report is false. Disputed. (Ex. D, para. 8; Ex. D4; Ex. F, para. 4-5.). This fact is not supported with confident evidence.
2. Defendant Ashby's demeanor at the Adjustment Committee hearing was very hostile and Defendant Vincent did not intervene to assist Plaintiff. Defendant Ashby's demeanor at the Adjustment Committee hearing is not relevant to whether Plaintiff violated prison rules.
3. The rules as applied to Plaintiff's conduct, being the possession of other inmates legal documents to render legal assistance, and possession of the inmate statements, were facially invalid and not rationally connected to the legitimate security concerns asserted by the Defendants. (Plaintiff's Affidavit, Exh. A, paras. 4, 6.) This is a legal conclusion, rather than a fact.

Discussion and Conclusion

In his response, Plaintiff asserts that he is no longer pursuing a denial of access to the courts claim because "absence of the original affidavits have not prejudiced him." See Plaintiff's response at page 6. If that is the case, Plaintiff act of pleading that claim is frivolous. That comes with a penalty. 730 ILCS 5/3-6-3(d) provides that "[i]f a lawsuit is filed by a prisoner in an Illinois or federal court against the State, the Department of Corrections, or the Prisoner Review Board, or against any of their officers or employees, and the court makes a specific finding that a pleading, motion, or other paper filed by the prisoner is frivolous, the Department of Corrections shall conduct a hearing to revoke up to 180 days of good conduct credit by bringing charges against the prisoner sought to be deprived of the good conduct credits

before the Prisoner Review Board as provided in subparagraph (a)(8) of Section 3-3-2 of this Code. If the prisoner has not accumulated 180 days of good conduct credit at the time of the finding, then the Prisoner Review Board may revoke all good conduct credit accumulated by the prisoner. The plaintiff has wasted the resources of this court, the Illinois Department of Corrections and the Office of the Illinois Attorney General. Further, in his response, at page 5, Plaintiff states he [voluntarily] dismisses Zimmerman. Plaintiff concedes he has no claim against Defendant Walker. (Ex. A, p. 54.)

Defendants in a suit brought pursuant to 42 U.S.C. 1983 can only be held liable for their own individual wrongdoing. *Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir. 1985). An individual satisfies this personal responsibility requirement if he fails to act with a deliberate or reckless disregard of the plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). Notifying prison officials in writing of alleged unconstitutional conditions of confinement does not make them personally liable for those conditions. *Id.* Defendants Walker and Zimmerman are entitled to summary judgment because they were not personally involved in the alleged constitutional violations.

In order to establish a due process violation, an inmate must demonstrate that the state deprived him of a protected liberty or property interest. *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000). A prisoner has no such protected interest in remaining in general population or in a particular grade level or in other privileges. *See Whitford v. Boglino*, 63 F.3d 527, 533 n.7 (7th Cir. 1995). Even if a protected liberty or property interest could be established, the minimum requirements necessary to satisfy the due process under the Fourteenth Amended only require that an inmate receive written notice of the charges against him, at least 24 hours to prepare a defense before a disciplinary hearing, and an impartial hearing board. *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2964 (1974). The purpose of the notice of the allegations is to allow the inmate to marshal the facts and prepare a defense. *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2964 (1974); *Northern v. Hanks*, 326 F.3d 909 (7th Cir. 2003). The inmate may also be allowed to present witnesses or documentary evidence at the discretion of the disciplinary committee, and there must be a written statement by the finders of fact as to the evidence relied on and reasons for the disciplinary action. *Id.* Due process requirements are satisfied if some evidence supports the disciplinary board's decision. *Superintendent v. Hill*, 472 U.S. 445, 105 S. Ct. 2768 (1985). Moreover, a hearing before the Adjustment Committee terminates an officer's possible liability for the filing of a false disciplinary report. *Hanrahan v. Lane*, 747 F.2d 1137 (7th cir. 1984). Finally, prison disciplinary regulations do not confer on inmates any constitutionally-protected liberty interests. *Sandin v. Conner*, 515 U.S. 472 (1995).

Plaintiff has not established his due process claim. He can't. He did not lose any good time and he was afforded all the process to which he was entitled. Plaintiff alleges that his due process rights were violated during the disciplinary process associated with tickets he received on July 25, 2005, and October 2, 2005. On the first ticket, Plaintiff was disciplined after he was found in possession of legal materials belonging to several other inmates whom he was helping with their legal work. In the second ticket, he was disciplined after a random search of his cell

turned up more legal materials of other inmates. He alleges Defendants Jennings and Watkins violated his due process rights by writing him the tickets and that Adjustment Committee members Ashby, Pool and Vincent violated his due process rights by finding him guilty of the offenses. Specifically, he alleges that they should have found him not guilty because prison rules allow him to possess other inmates' legal property if he is doing legal work for them. However, Plaintiff is wrong. Prison rules do not allow him to possess other inmates legal property — at least not without authorization of prison staff. He also alleges that Defendants Ashby and Vincent improperly found him guilty of an offense with which he was not charged. Not true. Further, Plaintiff's due process rights were never implicated because he did not lose any good conduct credits as a result of either of these tickets. Both tickets only cost Plaintiff a total of two months in C-grade. Because Plaintiff only lost grade status for two months, his due process rights were never implicated. *Whitford v. Boglino*, 63 F.3d 527, 533 n.7 (7th Cir. 1995)(Demotion in grade status does not implicate federal due process rights); Consequently, he not proven a violation of his due process rights.

Further, Defendants did not violate Plaintiff's right to free speech. In this case, Plaintiff alleges that refusing to allow him to possess legal documents of other inmates so he could provide legal assistance to them violates his First Amendment free speech rights. However, as an inmate, he is entitled only to those First Amendment rights that are not inconsistent with the Department's legitimate penological objectives, and allowing inmates to possess other inmates' legal property creates security problems. Although the Department's rules allow inmates to assist each other, they are not allowed to possess other inmates' legal property because it helps prevent them from bartering legal services for contraband. Allowing inmates to do so makes it harder to enforce the Department's security measures regarding contraband and property rules. Additionally, safety concerns arise when one inmate owes another inmate something. Inmates also are not allowed to be in possession of other inmates' personal information, including inmate numbers. This rule helps prevent inmates from stealing money or charging commissary purchases from the other inmate's trust account. The court finds that because these rules are reasonably related to legitimate penological interests, they are valid. Defendants are granted summary judgment on Plaintiff's First Amendment claim.

Plaintiff has not established a retaliation claim because legitimate reasons existed for Defendants' actions and Defendants would have taken the same action regardless of Plaintiff's protected activity. Plaintiff claims that Defendants Jennings, Crary and Watkins confiscated from him other inmates' legal materials and wrote him disciplinary reports, and that Defendants Ashby, Pool and Vincent found him guilty in retaliation for a lawsuit he filed in the Northern District and because he performed legal services for other inmates. However, Plaintiff cannot establish that Plaintiff's actions were a substantially motivating factor in the Defendants' actions. First, none of the Defendants knew about Plaintiff's previous lawsuit until they were served with this one. This is supported not only by Defendants' assertions, but by the fact the previous lawsuit dealt with employees and allegations at a different prison and that the only Defendant common to both cases is Defendant Walker, and he was never ordered to be served in the Northern District case. Although Plaintiff says he *believes* claims that the Defendants in the previous case were served with summons just days before the July 25, 2005, incident, a review

of the Northern District's docket establishes that the waivers for the two Dixon Correctional Defendants were not executed until August 12, 2005. Thus Plaintiff had no basis to allege that Defendants retaliated against him because he had filed a lawsuit in the Northern District. Doing so was frivolous. Raising retaliation claims will get a prisoner in court, but doing so can result in a revocation of good time when the result shows there was no basis for bringing the claim in the first place.

More significantly, there were legitimate reasons for Defendants' actions. Defendants Jennings, Crary and Watkins confiscated the documents and wrote their tickets because Plaintiff was found to be in possession of what they believed were other inmates' legal materials and personal information, which is a violation of Departmental rules. All three Defendants would have taken these actions regardless of any lawsuit filed by Plaintiff. Defendants Ashby, Pool and Vincent found Plaintiff guilty and recommended discipline because they believed that Plaintiff had, in fact, violated the Department's rules against contraband. These Defendants would have taken these actions regardless of any lawsuits filed by Plaintiff. Because there were legitimate bases for both of these disciplinary actions, Defendants are entitled to summary judgment.

Last, Plaintiff is not entitled to injunctive relief because he has established an ongoing constitutional violation. "When there is no continuing violation of federal law, injunctive relief is not part of a federal court's remedial powers." *Al-Alamin v. Gramely*, 926 F.2d 680, 685 (7th Cir. 1991).

Based on the foregoing, it is ordered:

1. Defendants' motion for summary judgment [49] is allowed. The clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56. Any pending motions are denied as moot, and this case is terminated.
2. If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).
3. As discussed above, the court finds Plaintiff pled frivolous claims in his complaint. *See* 730 ILCS 5/3-6-3(d). The clerk of the court is directed to fax a copy of this order to Assistant Illinois Attorney General Chris Higgerson.

Enter this 30th day of March 2011.

**\s\Harold A. Baker**

_____
Harold A. Baker
United States District Judge